IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) | |
| | ) | Redacted: |
| Plaintiff, | ) | Public Version |
| | ) | |
| v. | ) | C.A. No. 19-2240-CFC |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) | ▮▮▮▮▮▮▮▮▮▮ |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF LIONEL LAVENUE IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS'S MOTION TO DISQUALIFY FISH & RICHARDSON P.C.**

OF COUNSEL:
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Dated: April 30, 2020

███████████████████████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | C.A. No. 19-02240-CFC |
| v. | ) | |
| | ) | ████████████████ |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

## DECLARATION OF LIONEL LAVENUE IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS'S MOTION TO DISQUALIFY FISH & RICHARDSON P.C.

1.     I, Lionel Lavenue, am an attorney with Finnegan, Henderson, Farabow, Garrett, & Dunner LLP, admitted *pro hac vice* before this honorable Court to represent defendant Monolithic Power Systems, Inc. in this matter. I provide this declaration based on my personal knowledge.

2.     I submit this Declaration in support of MPS's Motion to Disqualify Fish & Richardson P.C.

3.     Attached as Exhibit 16 is a true and correct copy of a letter dated January 21, 2020, from myself to Robert M. Oakes, a Fish attorney who is named as lead counsel for Volterra in this case.

4.      Attached as Exhibit 17 is a true and correct copy of a response letter that I received from Fish's general counsel, Roger Feldman, dated January 24, 2019.

5.      Attached as Exhibit 18 is a true and correct copy of a letter dated February 11, 2020 from myself to Mr. Feldman.

6.      Attached as Exhibit 19 is a true and correct copy of a letter dated February 12, 2020 from Mr. Oakes to myself.

7.      Attached as Exhibit 20 is a true and correct copy of another response letter that I received from Mr. Feldman, dated February 21, 2020 but received February 22, 2020.

8.      Attached as Exhibit 21 is a true and correct copy letter dated February 29, 2020, from myself to Mr. Feldman. The letter requests a meet-and-confer on the disqualification issues with Fish.

9.      Attached as Exhibit 22 is a true and correct copy of an email from Mr. Feldman to myself. It is dated March 10, 2020. The email states that Fish had obtained external counsel, Morris Nichols, for the disqualification matters in the case and requested permission to share the February 29 letter with them.

10.      Attached as Exhibit 23 is a true and correct copy of an email from myself to Mr. Feldman, dated March 11, 2020. The email grants permission to Fish to share the letters and related documents with their external counsel, but restricts

the permission so that the documents can be shared between Fish's external counsel and internally within the firm only due to the sensitive nature of the details discussed within the letter.

11.     Attached as Exhibit 24 is a true and correct copy of a letter from Mr. Oakes to myself, dated March 11, 2020.

12.      Attached as Exhibit 25 is a true and correct copy of a letter from Jack Blumenfeld, an attorney from Morris Nichols, to myself. It is dated on March 27, 2020. The letter notes that Morris Nichols were reviewing the disqualification issues in the case and would prepare a response shortly. The letter also notes that Fish put an ethical wall in place on this case on January 21, 2020.

13.     Attached as Exhibit 26 is a true and correct copy of an email from myself to Mr. Blumenfeld, dated March 28, 2020. The email confirms receipt of the March 27 letter.

14.     Attached as Exhibit 27 is a true and correct copy of an email from myself to Mr. Blumenfeld, dated April 4, 2020. The email notes that Morris Nichols had not yet sent a response to the February 29 letter and suggests a stipulated extension for MPS's district court response.

15.     Attached as Exhibit 28 is a true and correct copy of an email from Mr. Feldman to myself, dated April 6, 2020. The email states that Volterra was

amenable to an extension of time for MPS's district court response to April 30, 2020.

16.     Attached as Exhibit 29 is a true and correct copy of an email from Mr. Blumenfeld to myself, dated April 9, 2020. The email states that Morris Nichols expected to have a response by "early next week."

17.     Attached as Exhibit 30 is a true and correct copy of a letter from Mr. Blumenfeld to myself, dated April 14, 2020.

18.     Attached as Exhibit 31 is a true and correct copy of a letter from myself to Mr. Blumenfeld, dated April 18, 2020. The letter, again, requests for a meet-and-confer on the disqualification issues with Fish and Morris Nichols.

19.     Attached as Exhibit 32 is a true and correct copy of a letter from Mr. Blumenfeld to myself, dated April 23, 2020. The letter claims to identify all Fish attorneys who will be working on this matter.

20.     Attached as Exhibit 33 is a true and correct copy of a letter from Mr. Blumenfeld to myself, dated April 24, 2020. The letter corrects an error from Exhibit 32, identifying all Fish employees instead of attorneys who will be working on this matter.

21.     Attached as Exhibit 34 is a true and correct copy of a letter from myself to Mr. Blumenfeld, dated April 24, 2020. The letter proposes times for a meet-and-confer.

22.     Attached as Exhibit 35 is an email response from Mr. Blumenfeld to myself, confirming the meet-and-confer for 4 PM on April 28, 2020.

23.     The foregoing is true and correct to the best of my knowledge.

Executed on April 30, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Karen E. Keller, hereby certify that on April 30, 2020, this document was

served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**

Robert M. Oakes                              David M. Barkan
FISH & RICHARDSON P.C.                 FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor      500 Arguello Street, Suite 500
P.O. Box 1114                                  Redwood City, CA 94063
Wilmington, DE 19899                      (650) 839-5070
(302) 652-5070                                barkan@fr.com
oakes@fr.com


                                                   */s/ Karen E. Keller*
                                                  Karen E. Keller (No. 4489)
                                                  Andrew E. Russell (No. 5382)
                                                  Nathan R. Hoeschen (No. 6232)
                                                  SHAW KELLER LLP
                                                  I.M. Pei Building
                                                  1105 North Market Street, 12th Floor
                                                  Wilmington, DE 19801
                                                  (302) 298-0700
                                                  kkeller@shawkeller.com
                                                  arussell@shawekeller.com
                                                  nhoeschen@shawkeller.com
                                                  *Attorneys for Defendant*

Exhibit 16



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

January 21, 2020

Robert M. Oakes, Esq.                                                    VIA EMAIL
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

> *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*, No. 1:19-cv-
> 02240-CFC (Del. 2019).

Dear Mr. Oakes:

We represent Monolithic Power Systems Inc. ("MPS") in the above-captioned matter. We are writing to call your attention to the evident conflict of interest with Fish & Richardson's ("Fish") representation of Volterra Semiconductor LLC ("Volterra") against MPS.

Specifically, we are aware that Fish has represented MPS in several matters, including for example three different litigation matters, beginning as early as 2007:

> (1) *Monolithic Power Systems Inc. v. Chip Advanced Technology Inc.*, No. 2:07-cv-08065-VBF-VBK (C.D. Cal., filed on Dec. 11, 2007);
> *Monolithic Power Systems Inc. v. O2Micro International Ltd.,* No. 4:08-cv-04567-CW (N.D. Cal., filed on Oct. 01, 2008); and
> (3) *Monolithic Power Systems Inc. v. Silergy Corporation*, No. 2:10-cv-01533-CAS-AGR (C.D. Cal, filed on Mar. 02, 2010).

The three litigation matters above (as well as other matters) all involved integrated circuit technology and DC-to-DC converters. This is the same subject matter as Volterra's current case against MPS.

Under Rule 1.9(a) of the Model Rules of Professional Conduct, "[a] lawyer who has formerly represented a client in a matter **shall not thereafter represent another person in the same or a substantially related matter** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Additionally, Comment 3 to the rule provides that "matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk **that confidential factual information as would normally have been obtained in the prior**

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
January 21, 2020
Page 2


**representation** would materially advance the client's position in the subsequent matter."

As a result of Fish's prior representation of MPS, Fish had access to MPS's confidential information and litigation strategy —concerning similar issues in Volterra's current case. Thus, the current lawsuit involves the same subject matter on which Fish advised MPS. Moreover, the similarity between Fish's prior representations of MPS and its current representation of Volterra is enough to raise at least a common-sense inference that the information Fish learned in its previous representations is directly relevant and harmful to MPS in this lawsuit. This is a *prima facie* conflict of interest, and avoiding the appearance of impropriety is an important public policy consideration, as clients must feel confident that they can divulge all relevant information to their attorneys, without fear that such confidences will eventually be used against them in a later, related matter. *See Intellectual Ventures I LLC v. Checkpoint Software Techs., Inc.*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011).

Given this conflict, we would like you to promptly provide an explanation as to why Fish should not be immediately disqualified from representing Volterra in this case. Given Fish's substantial history representing MPS in matters directly related to the subject matter of this case, and its exposure to MPS's litigation strategy, the conflict issues here are unavoidable. Indeed, even if safeguards are put in place such as the establishment of an "ethical wall" between the attorneys and staff who represented MPS in the past and those that represent Volterra against MPS now, such safeguards would not be enough to adequately protect MPS given the breadth of Fish's prior representation of MPS.

We appreciate your attention to this matter, and we look forward to your prompt response.


Very truly yours,

Lionel M. Lavenue

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Exhibit 17



Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210-1878

617 542 5070 main
617 542 8906 fax

**Roger D. Feldman**
Senior Principal and General Counsel
feldman@fr.com
617 956 5924  direct

January 24, 2019

VIA EMAIL

Lionel M. Lavenue, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

Re: *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*, No. 1:19-cv-02240-CFC
    (Del. 2019)

Dear Mr. Lavenue:

I have reviewed your letter of January 21, 2020 suggesting that Fish & Richardson P.C. ("Fish"), by virtue of its prior representation of Monolithic Power Systems Inc. ("MPS"), has a conflict of interest that disqualifies Fish from representing Volterra Semiconductor LLC ("Volterra") against MPS in the above-captioned matter.

I agree that the applicable ethical rule is the American Bar Association's Model Rule of Professional Conduct 1.9(a), which, in the absence of informed consent, bars an attorney from undertaking adversity to a former client in a matter that is the same as or substantially related to the attorney's prior representation of that former client.  I further agree that Comment 3 to Rule 1.9 provides relevant further explication of this substantial relationship standard.  As your letter noted, Comment 3 makes clear that matters are substantially related for purposes of Rule 1.9 "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." I strongly disagree, however, with any suggestion that Fish's prior representation of MPS approaches being substantially related to the present case. And, I consider your letter's assertion that "the current lawsuit involves the same subject matter on which Fish advised MPS" to be quite an exaggeration.

Your letter identified three cases from a decade ago that you noted "involved integrated circuit technology and DC-to-DC converters," which you said was "the same subject matter as Volterra's current case against MPS."  Comparing matters at such a high a level of generalization and identifying a superficial categorical similarity between them does not even come close to a serious application of Rule 1.9's substantial relationship standard.  In fact, none of the products or patents that were involved in the three old cases you referenced are involved in the present case, in which the accused product was introduced just last year at the 2019 IEEE Applied Power



Electronics Conference and Exposition.  Because of the lack of any overlap in products or patents between the old cases and the present case, and in view of the elapsed time since Fish's prior representations of MPS that you've identified, it is not credible that there could be any real risk, let alone a substantial one, that confidential factual information from Fish's prior representations of MPS could somehow materially advance the interests of Volterra in the present case. Furthermore, your suggestion that Fish's representation of MPS in cases more than 10 years ago would give Fish disqualifying confidential information about MPS's litigation strategy in the present day is not realistic.

If you have more factual information to suggest the existence of a substantial relationship than you presented in your letter, we would gladly review and consider it. But, based on my review of your letter and the facts of which I am presently aware, I see no credible argument to be made for Fish's disqualification from the present case.  Should you opt to proceed with a motion to disqualify Fish in the absence of facts suggesting a substantial relationship, we would oppose such a motion vigorously, expose it as the bad faith tactical maneuver that it would be, and plan to seek all appropriate sanctions for pursuing such a non-meritorious motion.

Very truly yours,

Roger D. Feldman
Senior Principal and General Counsel

Exhibit 18



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

February 11, 2020

Roger D. Feldman
Fish & Richardson PC
One Marina Park Drive
Boston, MA 02210-1878

      Re:    *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*,
               No. 1:19-cv-02240-CFC (Del. 2019)

Dear Mr. Feldman:

I write to respond to your January 24, 2020 letter regarding Fish & Richardson's ("Fish") prior representation of Monolithic Power Systems Inc. ("MPS") and the conflict of interest that disqualifies Fish from representing Volterra Semiconductor LLC ("Volterra") against MPS in the above-referenced matter (the "Volterra Matter"). We disagree that the Volterra Matter is not "substantially related" to Fish's prior representation of MPS, and believe Fish's disqualification is necessary to avoid a prima facie conflict of interest. Please note that this letter contains highly confidential information related to the work and matters Fish performed for MPS. Therefore, this letter should be reviewed by outside counsel only and should not be shared with Volterra or anyone outside of the Fish law firm.

In Delaware, matters are "substantially related" if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. *Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, Civ. No. 10-1067-LPS, 2011 WL 2692968, at *5 (D. Del. Jun. 22, 2011) (citing Model Rules of Prof'l Conduct r. 1.9 cmt. 3 (2016)). "M.R.P.C. 1.9 exists for the purpose of preventing even the potential that a former client's confidences and secrets may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is retained." *Id.* (internal citation omitted). "Therefore, in attempting to determine whether a 'substantial relationship' exists, disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Id.* (internal citations omitted).

Roger D. Feldman
Fish & Richardson, P.C.
February 11, 2020
Page 2

Fish was MPS's outside counsel in intellectual-property-related matters from August 2007 to December 2011. During that period, █████████ Fish attorneys, practice support professionals, technology specialists and patent agents worked side-by-side with MPS in-house counsel, and had unrestricted access to MPS confidential and proprietary information regarding MPS's existing technologies and new product development, and intellectual property litigation strategies, licensing, valuation and monetization. Fish's invoices to MPS reveal that Fish attorneys became intimately familiar with all of these subject areas and more. For example, Fish worked on at least one dozen matters, including:



(viii) prosecution of U.S. and foreign MPS patent applications, re-issue applications, and reexamination proceedings

As a result of Fish's comprehensive legal work for MPS, Fish became intimately familiar with MPS's DC-to-DC converter patents and products as part of its comprehensive patent litigation strategy analysis, recommendations and execution. Because the patents asserted by Fish on behalf of Volterra are also specifically related to DC-to-DC converters, this matter is substantially related to the work Fish performed for MPS.

More troubling, however, is Fish's work for MPS in the aggregate. By allowing Fish's attorneys, practice support professionals, technology specialists and patent agents unfettered access to MPS's engineers, inventors, business professionals and lawyers, Fish gained intimate knowledge of MPS's inner-workings, litigation strategy, confidential information, and decision-making process for asserting claims, patent valuation, licensing

Roger D. Feldman
Fish & Richardson, P.C.
February 11, 2020
Page 3

and settlement including with respect to DC-to-DC converter patents, technology and products that necessarily would be of immense value to any competitor or opponent.  As a result, Fish undoubtedly was exposed to MPS confidences and privileges that are relevant in the Volterra Matter, and thus detrimental to MPS in this action.

Moreover, your view that the Volterra Matter is not substantially related to Fish's prior work for MPS because "none of the products or patents that were involved in the three old cases [MPS] referenced are involved in the present case" has been rejected in Delaware as too narrow.  There is no rule requiring that the accused products or asserted patents overlap, or that the prior representation and the current representation be factually related or that a "factual nexus" between the two matters must exist.  *Intellectual Ventures*, 2011 WL 2692968, at *9.  Nor does the fact that nearly eight years have passed since Fish last worked on an MPS matter make Fish's use of MPS's confidences in the Volterra Matter "not realistic."  At least ███████████ individuals who worked on MPS matters remain actively employed at Fish (██ are principals at the firm), and there is no evidence that Fish has instituted an ethics wall to safeguard MPS's confidential information from the attorneys and staff working on the Volterra Matter.[1]  *See Eon Corp. IP Holdings LLC v. Flo TV Inc.*, Case No., 2012 WL 4364244, at *5 (D. Del. Sept. 24, 2012) (disqualifying firm from representing defendant in current matter even though 15 years had passed between prior and current matters at issue).

Under the analysis applied by Delaware courts, Fish's representation of Volterra creates a conflict of interest, and Fish should immediately withdraw from representing Volterra in this matter.  Please confirm no later than Friday, February 14, 2020, that Fish will comply with its ethical obligations by withdrawing as counsel for Volterra in the pending action adverse to MPS.

Sincerely,

Lionel M. Lavenue

cc:   Bob Steinberg, Esq., Latham & Watkins LLP
      Matthew J. Moore, Esq., Latham & Watkins LLP
      Saria Tseng, Esq., Monolithic Power Systems Inc.

---

[1] Under M.R.P.C. 1.10, the conflict created by the ██ Fish individuals who worked on MPS matters from 2007-2011 is imputed to all attorneys at the firm.  A Delaware court is unlikely to find that a wall (to the extent Fish even created one) would adequately protect MPS's confidences under these circumstances.

Exhibit 19



Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

**VIA EMAIL**

February 12, 2020

Lionel M. Lavenue, Esquire
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

**Robert M. Oakes**
oakes@fr.com
302 778 8477  direct

Re:  *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc*., C.A. No. 19-2240-CFC (D. Del.)

Dear Mr. Lavenue:

We represent Volterra Semiconductor LLC ("Volterra") in the above-captioned matter and have received your January 28, 2020 letter.  The assertion in your letter that the Complaint filed by Volterra is somehow deficient is wrong and your threat of seeking Rule 11 sanctions is unwarranted. Moreover, your letter contains misstatements of law and fact that we address below.  Nonetheless, to avoid an unnecessary early dispute about whether the Complaint sufficiently explains the technical reasoning that supports the infringement allegations, Volterra has now filed a First Amended Complaint which provides additional detail regarding its infringement theories.  The First Amended Complaint asserts the following claims:

- '986 patent: claims 17-18, 20-21 and 23;
- '408 patent: claims 14 and 20; and
- '955 patent:  claims 12–21 and 23-28.

The Court will set a scheduling order which will specify the exchange of various contentions and discovery.  Volterra reserves the right to add additional accused products and additional claims as warranted by discovery and the Court's schedule.

Turning back to your letter, you state that Volterra has "no basis" for its claims, because the accused MPS product "is not even on the market yet, and information about its design is not publicly available."  This is demonstrably false.  MPS demonstrated the 48V-1V Power Solution at APEC 2019 in Anaheim, California.  (D.I. 11 at ¶ 18)  At this conference, MPS displayed the 48V-1V Power Solution on the show floor and publicized it in two YouTube videos.  Monolithic Power Systems, *APEC 2019 | Telecom Demo by Monolithic Power Systems*, YouTube (Jul. 24, 2019), https://www.youtube.com/watch?v=w7CmBr1t3Ns; EE World Online, *APEC 2019: Monolithic*

fr.com



Lionel M. Lavenue, Esquire
February 12, 2020

*Power Systems New 48V-1V solution for CPU, SOC, or ASIC*, YouTube (May 30, 2019) (https://www.youtube.com/watch?v= WIC2SDWSins).  The allegations of the Complaint (and the First Amended Complaint) are based on the two YouTube videos that MPS published to market the Accused Product in connection with the 2019 APEC trade show.

As to the technical assertions in your letter, they are incorrect in the context of the infringement allegations, but in any event we see no need to address the errors in your letter regarding the technology at issue since the recently filed First Amended Complaint provides additional technical details and now frames the issues in the case.

Finally, we note that your letter never denies that the 48V-1V Power Solution infringes the patents-in-suit and is specifically silent on the question.  Certainly, if MPS believes that its product lacks any specific element of the asserted claims, your letter could have provided that information with a detailed technical explanation of the support for MPS' belief.  The absence of this information in your letter speaks volumes about the merits of MPS' position.


Very truly yours,

*/s/ Robert M. Oakes*

Robert M. Oakes


Cc: David Barkan, Fish & Richardson P.C.

Exhibit 20



Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210-1878

617 542 5070 main
617 542 8906 fax

**Roger D. Feldman**
Senior Principal and General Counsel
feldman@fr.com
617 956 5924  direct

February 21, 2020


VIA EMAIL


Lionel M. Lavenue, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

Re: *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*, No. 1:19-cv-02240-CFC
     (Del. 2019)

Dear Mr. Lavenue:

I write in response to your letter of February 11, 2020, in which you repeated your assertion that
Fish & Richardson P.C. ("Fish")'s prior representation of Monolithic Power Systems Inc.
("MPS") was "substantially related" to the present case. We continue to disagree.

Your letter of February 11, like your prior letter, contains no factual basis for disqualification.  It
paints with a broad brush, suggesting that Fish performed "comprehensive legal work for MPS,"
that Fish had "unrestricted access" to MPS information and "unfettered access" to MPS
personnel, and also that Fish "became intimately familiar with MPS's DC-to-DC converter
patents and products as part of its comprehensive patent litigation strategy analysis,
recommendations and execution."  Putting aside the accuracy of those statements, after the
passage of more than eight years since Fish's last representation of MPS, this kind of generic
description of an attorney-client relationship does not satisfy the relevant substantial relationship
test.

The District of Delaware "approaches motions to disqualify counsel with 'cautious scrutiny,'
mindful of a litigant's right to the counsel of its choice" Intellectual Ventures I LLC v.
Checkpoint Software Technologies Ltd., Civ. No. 10-1067-LPS, 2011 WL 2692968, at *6 (D.
Del. 2011)  As a result, motions to disqualify are "generally disfavored," and the moving party
must "show clearly that continued representation would be impermissible" *Conley v. Chaffinch*,
431 F. Supp.2d 494, 496 (D. Del. 2006).   "[V]ague and unsupported allegations are not sufficient
to meet this standard." *Id.* This approach is supported by M.R.P.C. Rule 1.9, Comment 3's
guidance, which notes that "[i]n the case of an organizational client, general knowledge of the
[former] client's policies and practices ordinarily will not preclude a subsequent representation."
Indeed, "judges in this District have tended not to give great weight in [substantial relationship]
analysis to unfocused concerns that a party's former counsel knows that party's 'playbook'"
*Regalo International, LLC v. Munchkin, Inc.* 211 F. Supp.3d 682, 689 (D. Del. 2016).  Rather,
"they tend to require a party who is moving to disqualify counsel in a patent matter to
demonstrate a fairly close legal and factual nexus between the present and prior representations."



*Id.* This is because, "if the generalized citation to counsel's knowledge of a prior client's 'litigation philosophies,' 'strategies' and 'risk tolerances' necessarily demonstrated that the past representations were [to be deemed] 'substantially related' to any new matter where an attorney is adverse to the prior client, the floodgates for disqualification would open wide," and "almost any kind of prior representation could be said to provide a window into a client's litigation 'philosophy' or 'strategy.'" *Id.*

Your letter of February 11 uses expansive language and hyperbolic adjectives to suggest the breadth of Fish's work, access to MPS information and personnel, and familiarity with MPS's DC-to-DC converter patents and products  Even if these assertions contained no such exaggeration, your letter makes no effort to show a legal and factual nexus between the 2007-2011 work and the present case, which involves a brand new product as well as patents and parties that were never the subject of Fish's work for MPS.

Very truly yours,

Roger D. Feldman
Senior Principal and General Counsel

Exhibit 21



**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

February 29, 2020

Roger D. Feldman                                           <u>**Via Email**</u>
Fish & Richardson PC
One Marina Park Drive
Boston, MA 02210-1878

    Re:    *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*
           No. 1:19-cv-02240-CFC (Del. 2019)

Dear Mr. Feldman:

    Please note from the outset that this letter contains highly confidential information related to the work and matters Fish performed for MPS. Therefore, this letter should be reviewed by outside counsel only and should not be shared with Volterra or anyone outside of the Fish law firm.

    I write to respond to your letter marked February 19, 2020 but sent February 20, 2020 regarding Fish & Richardson's ("Fish") prior representation of Monolithic Power Systems Inc. ("MPS") and the conflict of interest that disqualifies Fish from representing Volterra Semiconductor LLC ("Volterra") against MPS in the above-referenced matter ("the Volterra Matter"). I further direct your attention to MPS's original letter raising this issue, sent on January 21, 2020, your initial response to that letter, sent January 24, 2020, MPS's February 11, 2020 response to you that identifies and describes ten (10) specific examples of Fish's former representation of MPS and explains why those ten (10) examples are substantially related to the Volterra matter, creating the conflict of interest.

    We disagree with your statement that our February 11 letter "contains no factual basis for disqualification." To the contrary, we described ten (10) specific matters where Fish represented MPS that are substantially related to the Volterra matter and create conflicts. We also informed you of the fact that ███████████ Fish attorneys and staff worked on MPS matters, at least ███████ of whom are still employed at Fish, and of which at least ███████ are principals. Thus, far from your claim that MPS "paints with a broad brush," we provided specifics about Fish's broad and far reaching representation of MPS. Your letter, however, addressed none of them. Regardless, we have provided more detail regarding each of these matters below to further illustrate the prejudice to MPS if Fish continues to represent Volterra now but, of course, Fish presumably has this information in the billing records and files of its former client, MPS.

Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 2

       While the conflict within each of the matters listed in our February 11 letter presents is clear on its face, we offer an example explanation for each:



Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 3



(viii)  **Fish's Conflicting Matter #8**: Fish prosecuting U.S. and foreign MPS patent applications, re-issue applications, and reexamination proceedings

**Reason for Substantial Conflict-Creating Relationship**: Fish's prosecution of MPS patent applications involved technologies in the same

Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 4

DC-to-DC converters space as Volterra's asserted patents and thus this matter is substantially related to the Volterra matter.



In addition to the above examples from our previous letter, we bring particular attention to three specific actions which demonstrate how Fish directed MPS's legal actions with regards to DC-DC convertor technology:



**<u>Additional Example of Fish's Conflict #2</u>**: Fish prosecuted patents on MPS's behalf in the DC-DC convertor space, the same technology now at issue in the Volterra matter. We point you to ███████████████ ███████ regarding "A dual-mode buck converter with integrated automatic mode" and ██████████, regarding "A boost converter with integrated inductor peak current."

Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 5

**<ins>Additional Example of Fish's Conflict #</ins>**1: Fish sought reexamination of U.S. Pat. No. 7,714,558, another patent related to DC-DC converter technology, the same technology now at issue in the Volterra matter. The '558 patent is entitled "Short circuit current ratcheting in switch mode DC/DC voltage regulators." ███████████████████████████████████████
██████████

Additionally, we were alarmed by Fish and Volterra's contradictory representations of the scope of the instant action. Your February 19 letter claims that this case is limited to a single "brand new product." However, in both Volterra's initial complaint and its amended complaint, Volterra represents that the identified accused product is only exemplary. Likewise, in your firm's February 12, 2020 response to our warning letter regarding Volterra's lack of a Rule 11 basis to assert infringement, you maintain that Volterra believes the scope of the case covers a wide range of products and it intends to use discovery to add additional accused products. Fish cannot represent that the case will be narrowly limited to a single, "brand new" product for the purposes of conflicts and disqualification, while its client maintains the case is not limited to a single product and intends to seek discovery into MPS's products and technology dating back years. It is troubling that Fish and its client Volterra are taking inconsistent positions regarding the scope of accused products to serve their individual needs.

Moreover, the cases you cite in your letter illustrate why disqualification is proper now. As we already stated in our previous letter, the rules laid out in *Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, Civ. No. 10-1067-LPS, 2011 WL 2692968, at *5 (D. Del. Jun. 22, 2011) illustrate why Fish must withdraw. Nothing in your letter disputes this, citing only the general caution that disqualification is "generally disfavored." We do not disagree, and we are approaching this issue cautiously and have been forthcoming regarding the considerable evidence of Fish's conflict of interest that makes disqualification appropriate here.

Further, Fish's reliance on *Conley v. Chaffinch*, 431 F. Supp.2d 494 (D. Del. 2006) is inapposite. That case involved a separate area of law, regarding gender discrimination in the matter of promotions. Nonetheless, the Court still found a Rule 1.9 violation based on three nearly 20-year-old prior representations. The Court only declined to disqualify counsel because the moving party waived the conflict through delay, waiting nine months after her former attorney made an appearance to file the motion to disqualify. Here, MPS has been clear from the beginning of the action that it does not waive the conflict of interest and requests that its former counsel, Fish, withdraw.

Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 6

*Regalo International, LLC v. Munchikin, Inc.* 211 F. Supp.3d 682 (D. Del. 2016) similarly does not indicate that Fish's representation of Volterra is proper here. In *Regalo*, the former representation was limited only to trademark counseling, but the instant case was related to patent infringement. Here, Fish worked extensively on patent prosecution, litigation, and counseling matters for MPS in the same technological area, DC-to-DC convertors. Further, in *Regalo*, even though over 90% of the work had been conducted by three legal professionals who had since left the firm, the court was clear that their conflict would still apply to their former firm under MRPC 1.10. Here, ten partners who worked on matters for MPS are still at Fish, creating a much larger conflicts issue.

As we indicated in our original letter, a close analog to Fish's current representation of Volterra in the Volterra matter can be found in *EON Corp. IP Holdings LLC v. FLO TV Inc.*, Civil Action No. 10-812-RGA, 2012 U.S. Dist. LEXIS 136388 (D. Del. Sep. 24, 2012). In fact, the facts in this case weigh heavier in favor of disqualification than the facts from *EON Corp*. For example:

(1) In *Eon Corp*, the disqualified firm had 34 attorneys billing time to the client, with 7 out of the 34 remaining as active attorneys at the firm. ████████ ████████████████████████████████████ and at least █ of those attorneys are still presently at Fish.

(2) In *Eon Corp*, there was a 15-year gap between the disqualified firm's last representation of their former client and the instant action. Here, Fish represented MPS since at least 2007, which was only 13 years ago, and that work continued until at least 2011, leaving only 8-year gap before the filing of this case.

(3) In *Eon Corp.*, the disqualified firm had put up an ethical wall as a safeguard and did not have the same attorneys working on the case. Here, Fish has not responded to our repeated requests to identify any ethical wall it may have put in place, so it can be assumed there is no such ethical wall.

(4) In *Eon Corp*, the disqualified firm represented a different company than the represented plaintiff in the case. Rather, it was a subsidiary of the parent company that the disqualified firm represented, which was not even in existence at the time of the former representation of the parent. However, in this case, Fish directly represented MPS in their prior work, and the current litigation directly involves MPS.

(5) Finally, in *Eon Corp*, the disqualified firm's former representation was "corporate and regulatory," not patent related and not litigation. Here, Fish's

Roger D. Feldman, Esq.
Fish & Richardson, P.C.
February 29, 2020
Page 7

former representation was directly related to patents in the same
technological area, including multiple patent litigations.

Finally, in your recent response you again did not say if Fish has put an ethical
wall in place. We ask you for a third time to please identify what if any actions Fish has
taken to attempt to protect its former client, including implementation of an ethical wall.
We also ask for a list of all Fish employees working on this matter so we may compare
that list to the attorneys and staff who previously worked for MPS.

Unless Fish will honor its ethical obligation to its former client and agree to
withdraw from representation of Volterra in this action, please provide your availability to
meet and confer regarding a motion to disqualify Fish as counsel for Volterra on or
before March 29, 2020.

Sincerely,

Lionel M. Lavenue

cc:    Saria Tseng, Esq., Monolithic Power Systems Inc.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Exhibit 22

| | |
|---|---|
| **From:** | Roger D. Feldman |
| **To:** | Lavenue, Lionel |
| **Cc:** | Lin, Leon; Robert Oakes; David Barkan; Nathanael Clauser |
| **Subject:** | FW: (PRIVILEGED - Internal Fish only) Please read - FW: Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence |
| **Date:** | Tuesday, March 10, 2020 9:57:13 AM |

*EXTERNAL* Email:

Fish has retained Morris Nichols as its counsel in this matter, and I would like permission to share your letter with them. Please conform that this is acceptable.

**Roger D. Feldman ::** Senior Principal and General Counsel :: Fish & Richardson P.C.
One Marina Park Drive, Boston, MA 02210-1878
617 956 5924 direct :: 617 542 5070 main :: 617 542 8906 fax

---

**From:** Lin, Leon <Yunzhi.Lin@finnegan.com>
**Sent:** Saturday, February 29, 2020 6:37 PM
**To:** Roger D. Feldman <Feldman@fr.com>; Robert Oakes <RMO@FR.com>; David Barkan <Barkan@fr.com>
**Cc:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; 'arussell@shawkeller.com' <arussell@shawkeller.com>; kkeller@shawkeller.com; 'nhoeschen@shawkeller.com' <nhoeschen@shawkeller.com>; saria.tseng@monolithicpower.com
**Subject:** Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence

Counsel,

Please see another attached correspondence from Lionel Lavenue in the above referenced case.

Regards,
Leon

**Y. Leon Lin**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
271 17th Street, NW, Suite 1400, Atlanta, GA 30363-6209
404.653.6472 | fax 404.653.6444 | **leon.lin@finnegan.com** | www.finnegan.com

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

&lt;2020.02.29 Letter from L. Lavenue to R. Feldman.pdf&gt;

**************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
**************************************************************************

Exhibit 23

| From: | Lavenue, Lionel |
|---|---|
| To: | Roger D. Feldman |
| Cc: | Lin, Leon; Robert Oakes; David Barkan; Nathanael Clauser |
| Subject: | RE: (PRIVILEGED - Internal Fish only) Please read - FW: Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence |
| Date: | Wednesday, March 11, 2020 5:58:38 PM |
| Attachments: | image001.png |

Roger:

We do not have an issue with Fish sharing the February 29, 2020 letter with its outside counsel, Morris Nichols, provided that Fish restricts access to the letter (and any and/ all its related documents and information related thereto) to Fish's outside counsel and internally within the Fish law firm only. As you know, the letter contains confidential information relating to the work Fish has done for MPS and should not be shared with Volterra/Maxim or any other party external to the Fish law firm and its outside counsel.

Additionally, as noted in the February 29, 2020 letter, please provide availability to meet and confer regarding a motion to disqualify Fish as counsel for Volterra on or before March 29, 2020.

Regards,

Lionel

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Wednesday, March 11, 2020 11:18 AM
**To:** Roger D. Feldman <Feldman@fr.com>
**Cc:** Lin, Leon <Yunzhi.Lin@finnegan.com>; Robert Oakes <RMO@FR.com>; David Barkan <Barkan@fr.com>; Nathanael Clauser <clauser@fr.com>
**Subject:** RE: (PRIVILEGED - Internal Fish only) Please read - FW: Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence

Roger -

I will respond later today on this request.

Regards,

Lionel

**Lionel M. Lavenue** | Bio
Patent Attorney, Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square, 11955 Freedom Drive, Suite 800, Reston, VA 20190-5675
571.203.2750 | fax: 202.408.4400 | Lionel.Lavenue@finnegan.com | www.finnegan.com | LinkedIn profile



**From:** Roger D. Feldman <Feldman@fr.com>
**Sent:** Tuesday, March 10, 2020 9:57 AM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Cc:** Lin, Leon <Yunzhi.Lin@finnegan.com>; Robert Oakes <RMO@FR.com>; David Barkan <Barkan@fr.com>; Nathanael Clauser <clauser@fr.com>
**Subject:** FW: (PRIVILEGED - Internal Fish only) Please read - FW: Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence

*EXTERNAL* Email:

Fish has retained Morris Nichols as its counsel in this matter, and I would like permission to share your letter with them. Please conform that this is acceptable.

**Roger D. Feldman ::** Senior Principal and General Counsel :: Fish & Richardson P.C.
One Marina Park Drive, Boston, MA 02210-1878
617 956 5924 direct :: 617 542 5070 main :: 617 542 8906 fax

**From:** Lin, Leon <Yunzhi.Lin@finnegan.com>
**Sent:** Saturday, February 29, 2020 6:37 PM
**To:** Roger D. Feldman <Feldman@fr.com>; Robert Oakes <RMO@FR.com>; David Barkan <Barkan@fr.com>
**Cc:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; 'arussell@shawkeller.com' <arussell@shawkeller.com>;
kkeller@shawkeller.com; 'nhoeschen@shawkeller.com' <nhoeschen@shawkeller.com>; saria.tseng@monolithicpower.com
**Subject:** Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence

Counsel,

Please see another attached correspondence from Lionel Lavenue in the above referenced case.

Regards,
Leon

**Y. Leon Lin**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
271 17th Street, NW, Suite 1400, Atlanta, GA 30363-6209
404.653.6472 | fax 404.653.6444 | **leon.lin@finnegan.com** | **www.finnegan.com**

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

<2020.02.29 Letter from L. Lavenue to R. Feldman.pdf>

************************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message. ****************************************************

Exhibit 24



Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

**VIA EMAIL**

March 11, 2020

**Robert M. Oakes**
oakes@fr.com
302 778 8477  direct

Lionel M. Lavenue, Esquire
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re: *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc.*, C.A. No. 19-2240-CFC
(D. Del.)

Dear Mr. Lavenue:

Your February 29, 2020 letter confuses evidence used to prove claims at trial with the kind
of information sufficient to support allegations in a complaint.  The Federal Circuit has long
held that complaints may be based upon the public information that is reasonably available to
a plaintiff prior to filing suit.  *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093
(Fed. Cir. 1997).  In the present case, the accused product is not currently available for
purchase by the general public, but MPS displayed the product at a trade show in California.
During the trade show MPS created videos showing the structure and describing the function
of the product and these were released publicly on the Internet.  Indeed, one of the videos is
presented in the form of an interview conducted by an Executive Editor for EE World Online
with an MPS product marketing manager.  In the video, the MPS product marketing manager
describes the operation of the accused product, shows the components of the accused product
as viewed from multiple different angles, and presents slides that include a schematic layout
of the components and include written descriptions which assist in understanding the
structure and operation of the accused product.  In a second published video, MPS includes
slides that identify specific properties of the accused product and those properties inform an
engineer skilled in the relevant technology about how the components connect and interact
with each other.

Volterra is entitled to rely on MPS's own published representation that: (a) the accused
product is a "buck" type voltage converter; (b) the buck converter is "modular" and "dual
phase"; and (c) the dual phases are used with a "coupled inductor" configuration.  Engineers
in this field know exactly what those terms mean and it provides context for how engineers
in this field interpret the schematic drawings and the various physical views of the product
shown in the video.  Contrary to the assertions in your letters, this publicly distributed



Lionel M. Lavenue, Esquire
Page 2

information provides more than a good faith basis for an engineer skilled in this field to conclude that the accused product infringes the asserted claims.

Your letter then proceeds to rely on assumptions about what constitutes a proper investigation that are contrary to the Federal Rules and related caselaw. For example, MPS argues that any allegations on "information and belief," demonstrate a lack of "proper investigation required by Rule 11." MPS is wrong. According to Rule 11, in submitting papers to the court, one certifies that a filing is "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[.]" Fed. R. Civ. P. 11(b). Contrary to the assertions in your letter, "[t]he rule also expressly permits factual allegations that 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Amgen Inc. v. Hospira, Inc.*, 866 F.3d 1355, 1362 (Fed. Cir. 2017) (quoting Fed. R. Civ. P. 11(b)(3)).

The Third Circuit, whose law governs Rule 11 motions in the District of Delaware,[1] applies a "reasonableness under the circumstances" standard to conduct alleged to violate Rule 11. *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991). Reasonableness is "defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Id.* (citations omitted). In the context of patent infringement, the Federal Circuit "ha[s] interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004) (citations omitted). Trial courts have identified a number of ways in which a plaintiff may conduct pre-suit investigations of patent infringement, including "researching the target's infringing instrumentalities . . . [,] consulting with technical experts[,]" *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys.*, No. 14-617-GMS, 2018 U.S. Dist. LEXIS 125627, at *13 (D. Del. July 27, 2018), preparing "infringement claim charts," and discussing these with "company engineers in the field[,]" *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 569 F. Supp. 2d 819, 832 (W.D. Wis. 2008).

To the extent that your letter argues that the First Amended Complaint ("FAC") does not satisfy Rule 11 because Volterra did not "observe the operation of the accused prototype controller" as part of its pre-suit investigation, that is also incorrect as a matter of law. Pre-suit investigations can satisfy the rules, *even when no product is available* to the plaintiff. *E.g.*, *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000). Furthermore, the Federal Circuit has specifically rejected the argument MPS makes in its letter "that because [the plaintiff was] . . . unable to obtain and set forth in their complaint facts showing infringement, they should not have filed suit at all." *Id.* at 1364. Thus, if a

---

[1] In patent cases, purely procedural issues are governed by the law of the regional circuit. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).



Lionel M. Lavenue, Esquire
Page 3

plaintiff forms a belief as to infringement even without access to the allegedly infringing product, the plaintiff "has still satisfied Rule 11." *Amgen*, 866 F.3d at 1362.  Given that the 48V-1V Power Solution is "not publicly available," it is by no means a violation of the rules for Volterra to file suit by relying on MPS's own published descriptions of the structure and operation of the product.

Moreover, to the extent that MPS argues that the FAC is deficient for failure to explain each step of each inference to the satisfaction of a lay audience, such detail has never been required at the pleading stage.  For example, your letter argues that the FAC "does not include any explanation for **how** the YouTube videos provide a factual basis to support Volterra's allegations." (emphasis in original).  In fact, the original complaint and the FAC did exactly that using screenshots from the MPS videos and using those screenshots to illustrate how each claim element is found in the accused product.  As for the pleading itself, the rules require "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), which the Supreme Court has interpreted to mean that a plaintiff "plead[] factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citation omitted).  Even as a matter of pleading, an inference is sufficient, but by no means, must a plaintiff "prove its case at the pleading stage." *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citing *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011)).  This is what your letter suggests, and it is certainly not the law.

MPS has offered a product for sale in the United States, demonstrated it at a trade show, and published videos about the product but nonetheless seeks dismissal of all claims on the basis that the prototype is "not publicly available."  The Federal Circuit has prohibited exactly this conduct stating, "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013).  MPS has now written two letters asserting that Volterra's allegations are deficient – but not once in either letter has MPS affirmatively denied the factual allegations.  Despite the obvious opportunity for MPS to provide some evidence – or even a representation – that the accused product works differently from the way Volterra describes, MPS has failed to do so.  Volterra intends to proceed with the lawsuit for all the reasons stated in the FAC.

Very truly yours,

*/s/ Robert M. Oakes*

Robert M. Oakes

Cc: David Barkan, Fish & Richardson P.C.

Exhibit 25

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

JACK B. BLUMENFELD
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

March 27, 2020

Lionel M. Lavenue, Esquire                                    *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW, GARRETT
   & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675

      Re:    *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc.*
              C.A. No. 19-2240 (CFC) (D. Del.)

Dear Lionel:

      I hope you are doing well in these difficult times.

      As you know, we have been retained by Fish & Richardson P.C. ("Fish") in connection with Monolithic's claim that Fish should withdraw from its representation of Volterra in this matter.  We are in the process of reviewing the issues raised in your February 29, 2020 letter, as well as in your earlier correspondence.  We will get back to you shortly about those issues.  In response to your requests, I can tell you that Fish did put an ethical wall in place immediately upon receipt of your January 21 letter.

      I will be back in touch with you soon.

                Sincerely,

                */s/ Jack B. Blumenfeld*

                Jack B. Blumenfeld

JBB/bac

Exhibit 26

| | |
|---|---|
| **From:** | Lavenue, Lionel |
| **To:** | EXT-JBlumenfeld@mnat.com |
| **Subject:** | RE: Volterra v. Monolithic |
| **Date:** | Saturday, March 28, 2020 11:26:43 AM |
| **Attachments:** | image001.png |

Jack,

Received with thanks.

Regards,

Lionel

**Lionel M. Lavenue** | Bio
Patent Attorney, Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square, 11955 Freedom Drive, Suite 800, Reston, VA 20190-5675
571.203.2750 | fax: 202.408.4400 | Lionel.Lavenue@finnegan.com | www.finnegan.com | 



**From:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Sent:** Friday, March 27, 2020 2:49 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Subject:** Volterra v. Monolithic

*EXTERNAL* Email:

Lionel, please see the attached letter.

Jack

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

Exhibit 27

**From:** Lavenue, Lionel [mailto:lionel.lavenue@finnegan.com]
**Sent:** Saturday, April 4, 2020 3:26 PM
**To:** Blumenfeld, Jack
**Cc:** Cassady, R. Benjamin; Jones, Forrest
**Subject:** [EXT] RE: Volterra v. Monolithic

Jack,

As you requested, we have waited for a further response on the conflict/disqualification issue (it's been now over a week, since your letter to us).

As to additional time for you to analyze Fish's conflict, we are flexible, but we suggest a further extension for our response to the First Amended Complaint.

Please let us know if Volterra will agree to a further extension (at least 2 weeks), and please let us know when we can expect a response regarding the conflict issue.

Regards,

Lionel

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Saturday, March 28, 2020 11:27 AM
**To:** EXT-JBlumenfeld@mnat.com <JBlumenfeld@mnat.com>
**Subject:** RE: Volterra v. Monolithic

Jack,

Received with thanks.

Regards,

Lionel

**Lionel M. Lavenue** | <u>Bio</u>
Patent Attorney, Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square, 11955 Freedom Drive, Suite 800, Reston, VA 20190-5675
571.203.2750 | fax: 202.408.4400 | <u>Lionel.Lavenue@finnegan.com</u> | <u>www.finnegan.com</u> |



**From:** Blumenfeld, Jack <<u>JBlumenfeld@MNAT.com</u>>
**Sent:** Friday, March 27, 2020 2:49 PM
**To:** Lavenue, Lionel <<u>lionel.lavenue@finnegan.com</u>>
**Subject:** Volterra v. Monolithic

*EXTERNAL* Email:

Lionel, please see the attached letter.

Jack

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

Exhibit 28

| | |
|---|---|
| **From:** | Robert Oakes |
| **To:** | Lavenue, Lionel |
| **Cc:** | EXT- kkeller@shawkeller.com; EXT-JBlumenfeld@mnat.com; David Barkan |
| **Subject:** | Volterra v. Monolithic - extension of time to respond to complaint |
| **Date:** | Monday, April 6, 2020 4:45:41 PM |

*EXTERNAL* Email:

Lionel,

I understand you requested from Jack a further extension of time to respond to the First Amended Complaint. Volterra is amendable to an extension of time to Thursday, April 30. If that is acceptable, please circulate a stipulation for our review.

Regards,

Bob

**Robert M. Oakes** :: Principal :: Fish & Richardson P.C.
222 Delaware Avenue 17th Floor, P.O. Box 1114, Wilmington, DE 19899
302 778 8477 direct :: oakes@fr.com

```
************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
************************************************************************************
```

Exhibit 29

| | |
|---|---|
| **From:** | EXT-JBlumenfeld@mnat.com |
| **To:** | Lavenue, Lionel |
| **Cc:** | Cassady, R. Benjamin; Jones, Forrest |
| **Subject:** | RE: Volterra v. Monolithic |
| **Date:** | Thursday, April 9, 2020 12:54:24 PM |
| **Attachments:** | image001.png |

***EXTERNAL* Email:**

Lionel, we expect to get back to you early next week.

Be well.

Jack

---

**From:** Lavenue, Lionel [mailto:lionel.lavenue@finnegan.com]
**Sent:** Saturday, April 4, 2020 3:26 PM
**To:** Blumenfeld, Jack
**Cc:** Cassady, R. Benjamin; Jones, Forrest
**Subject:** [EXT] RE: Volterra v. Monolithic

Jack,

As you requested, we have waited for a further response on the conflict/disqualification issue (it's been now over a week, since your letter to us).

As to additional time for you to analyze Fish's conflict, we are flexible, but we suggest a further extension for our response to the First Amended Complaint.

Please let us know if Volterra will agree to a further extension (at least 2 weeks), and please let us know when we can expect a response regarding the conflict issue.

Regards,

Lionel

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Saturday, March 28, 2020 11:27 AM
**To:** EXT-JBlumenfeld@mnat.com <JBlumenfeld@mnat.com>
**Subject:** RE: Volterra v. Monolithic

Jack,

Received with thanks.

Regards,

Lionel

**Lionel M. Lavenue** | Bio
Patent Attorney, Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square, 11955 Freedom Drive, Suite 800, Reston, VA 20190-5675
571.203.2750 | fax: 202.408.4400 | Lionel.Lavenue@finnegan.com | www.finnegan.com |



**From:** Blumenfeld, Jack <JBlumenfeld@MNAT.com>
**Sent:** Friday, March 27, 2020 2:49 PM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Subject:** Volterra v. Monolithic

*EXTERNAL* Email:

Lionel, please see the attached letter.

Jack

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

Exhibit 30

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

JACK B. BLUMENFELD
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

April 14, 2020

Lionel M. Lavenue, Esquire                                    *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW, GARRETT
   & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675

   Re: *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc.*
     C.A. No. 19-2240 (CFC) (D. Del.)

Dear Lionel:

   I write in response to your letters asserting that Fish & Richardson, P.C. ("Fish") should withdraw from its representation of Volterra Semiconductor LLC ("Volterra") in this litigation against your client Monolithic Power Systems ("MPS") based on legal work that Fish did for MPS between 2007 and 2012 involving different patents and different products than are involved in this litigation. We have reviewed your assertions and the facts underlying them and see no basis for the disqualification of Fish from its representation of Volterra in this matter.

   As a preliminary matter, there are a number of relevant facts that we believe cannot be subject to any disagreement. First, Fish was never general counsel for MPS, but instead handled a number of discrete patent matters for it. Second, that work started in 2007 and was completed approximately eight years ago, in 2012. Fish has had no attorney-client relationship with MPS whatsoever since 2012. Third, none of the work that Fish did for MPS involved any Volterra patents or involved Volterra in any way. ███████████████████████████████████████████████

███████████████████████████████████████████████████
████████████████████████████████████████ Fourth, Fish never gave MPS any advice with respect to the products that are accused of infringement in this action. Indeed, those products were not announced until 2019. Fifth, the Fish Principal who was the primary MPS contact left the firm in May 2010.

   Ignoring all of these facts, the basis for your allegation appears to be that the prior matters that Fish worked on for MPS and the current litigation both involve "DC-to-DC converters." But the

Lionel M. Lavenue, Esquire
April 14, 2020
Page 2

term "DC-to-DC converters" encompasses broad, general categories of devices with varied topologies and operations that are used in numerous types of systems. Indeed, the product catalog on MPS's website lists hundreds of different products under the category of "DC-DC Power Converters," including devices having different topologies, properties and voltages. Further, a search of the PTO's patent database returned tens of thousands of patents that mention "dc-to-dc converters" (or variations thereof), thousands of which include those terms in the claims. Many of those patents issued after Fish's representation of MPS ended. Thus, that different matters may have involved dc-to-dc converters is not surprising, but that does not make them substantially related, and it is not a basis for disqualification.

As your letters acknowledge, unless the matters involve the same transaction or legal dispute, a matter is only substantially related if there "is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Cmt. 3 to MRPC Rule 1.9(a). Courts consider three questions in determining whether two matters are "substantially related:"

> (1) What is the nature and scope of the prior representation at issue?
> (2) What is the nature of the present lawsuit against the former client?
> [and] (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

*Sonos, Inc. v. D & M Holdings Inc.*, C.A. No. 14-1330-RGA, 2015 WL 5277194, at \*2 (D. Del. Sept. 9, 2015) (quoting *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp.1281, 1283 (D. Del. 1987)).

There is no question that Fish's prior representation involved different subject matter unrelated to the Volterra lawsuit. Your letters do not attempt to set forth any client confidences that were disclosed to Fish that could be detrimental in this litigation. Instead, the ten supposedly "specific matters" you have listed are vague, usually one-sentence descriptions of the matters followed by a conclusory statement that the matters are (or "are clearly") substantially related because the former matters involved "DC-to-DC converters," even though they involved different parties, different patents and different products. There is in fact nothing that indicates that any of them are related to this litigation in any way.

Turning to the matters you have cited to "bring particular attention to three specific actions," you have again provided nothing to suggest that any of them are related in any way to this action (simply repeating that they involve technology relating to DC-to-DC converters):

Lionel M. Lavenue, Esquire
April 14, 2020
Page 3

(1)   MPS's assertion of U.S. Patent 6,897,643 against two companies from 2007 to 2011 had nothing to do with Volterra or the accused MPS products. Moreover, it appears that only one Fish lawyer who worked on that matter (for only a few hours) is still at the firm.

(2)   Fish's prosecution of MPS patent applications in 2008-2010, again, had nothing to do with Volterra or with the accused MPS products.   We understand that the files for those matters were returned to MPS in 2012.

(3)   Fish's representation of MPS in the reexamination of U.S. Patent No. 7,714,558 ending in 2012 also had nothing to do with Volterra or with the accused MPS products.  The files for that matter were also returned to MPS in 2012.

In short, none of the matters you have cited involved Volterra or the patents or products involved in this lawsuit, and that work was done many years ago.  Moreover, all of those matters involved technology very different from the technology involved in the Volterra litigation.

Much more than the mantra "related to DC-to-DC converter technology" in a number of matters for MPS in the 2007-2012 timeframe is required to create a disqualifying conflict of interest. *See Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 689–90, 692, 694 (D. Del. 2016) ("[H]owever 'broad and deep' [the] representation of Munchkin may have been [], Munchkin's general description of that representation has not conveyed how [the challenged firm] learned confidential information that would prove relevant to the issues in this particular case.").  In addition, most of the Fish attorneys who worked on MPS matters are no longer with Fish, and all of the attorneys who previously did work for MPS and who remain at Fish have been walled off from this litigation.  Thus, no confidences could have been disclosed during the prior matters for MPS that could be relevant to this litigation, let alone detrimental to MPS.

Finally, your repeated reliance on *Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.*, C.A. No. 10-1067-LPS, 2011 WL 2692968 (D. Del. June 22, 2011), is misplaced. That case involved a unique set of facts not applicable here.  There, Intellectual Ventures's entire business involved the monetization of patents and the disqualified law firm had handled the formation and structure of Intellectual Ventures as an entity to achieve that purpose, as well as the drafting of the licenses that were the core of Intellectual Ventures's business—including licenses to the patents at issue. *Id.* at, *e.g.*, *10–11. *EON Corp. IP Holdings LLC v. FLO TV Inc.*, C.A. No. 10-812-RGA, 2012 WL 4364244, at *4–6 (D. Del. Sept. 24, 2012), similarly involved "rather unusual circumstances" (*id.* at *6), including a representation broad enough to be more akin to that of general counsel, where the regulatory issues the disqualified firm worked on "includ[ed] the technology that is at least partially reflected in the patent at issue." *Id.* at *4.  There were no circumstances remotely similar to the ones present here.

I hope that this will resolve the matter set forth in your letters. In any event, I am happy to discuss these matters if you would like to do so.

Lionel M. Lavenue, Esquire
April 14, 2020
Page 4

Sincerely,

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld

JBB/bac

Exhibit 31



**FINNEGAN** | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

April 18, 2020

Jack B. Blumenfeld                                          <u>**Via Email**</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:     *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*
        No. 1:19-cv-02240-CFC (Del. 2019)

Dear Mr. Blumenfeld:

I write to respond to your letter of April 14, 2020, which was sent in response to our multiple previous letters, the last of which we sent on February 29, 2020.

Since it appears the parties have reached an impasse, I will not address every point of disagreement in your letter. However, a few of the points raised in your letter are particularly concerning so I'll address them here.

You say that Fish "handled a number of discrete patent matters for [MPS]" and thus was not general counsel for MPS. We disagree. Fish was MPS's general counsel in all of its IP matters for years, advising the company on how to effectively develop MPS's IP portfolio, litigation and business strategies,



Jack B. Blumenfeld
Morris, Nichols, Arsht & Tunnell LLP
April 18, 2020
Page 2

You say that the "Fish Principal who was the primary MPS contact left the firm in May 2010." First, Fish continued to represent MPS and do substantive work for MPS well after this attorney left the firm, and he was far from the only Fish attorney who represented MPS. Moreover, at least ██ Fish Principals who represented MPS and obtained MPS protected information still remain at Fish.

Fish's refusal to acknowledge the conflict appears to stem from an argument that this is not the same "case or controversy" as any earlier matter. This myopic view however is belied by the breadth of the accusations Fish has levied against MPS and Fish's representation of MPS that touched all of MPS's business and products substantially related to the lawsuit it now brings against MPS.

As you yourself state, cases are substantially related not just if "they involve the same transaction or legal dispute" but *also* if there "is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Cmt. 3 to MRPC Rule 1.9(a). The model rule comments are also clear that, contrary to your letter, "[a] former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.*

Additionally, Fish's adverse use of confidential information is not limited to disclosures to Fish. "It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." *Webb v. E.I. Du Pont de Nemours & Co, Inc.*, 811 F. Supp. 8 158, 160 (D. Del. 1992) (*quoting Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992)). Given the long list of related matters identified, there is no question that Fish gained this kind of knowledge through its representation of MPS. Thus, our client—and particularly the employees who disclosed confidences directly to Fish attorneys during the scope of the relationship—remains highly distressed that Fish will not simply acknowledge its ethical duties and withdraw.

Assuming Fish will not withdraw from representing Volterra, we have offered  to conduct a telephone meet and confer before filing our motion to disqualify. If you do not see a need for the meet and confer in view of our extensive correspondence, then neither do we. Please let us know by no later than April 24, 2020 whether a meet and confer is necessary.

Jack B. Blumenfeld
Morris, Nichols, Arsht & Tunnell LLP
April 18, 2020
Page 3


      Finally, we ask once more for a list of all Fish employees who worked on this matter (or any related investigations) before the ethical wall was put in place in January, and a list of all Fish employees who plan to work on this matter going forward. Further, we ask for more specific information about who is being screened by this ethical wall.

      Sincerely,

Lionel M. Lavenue


cc:    Saria Tseng, Esq., Monolithic Power Systems Inc.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Exhibit 32

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

JACK B. BLUMENFELD
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

April 23, 2020

Lionel M. Lavenue, Esquire                                    *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW, GARRETT
   & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675

        Re:    *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc.*
               C.A. No. 19-2240 (CFC) (D. Del.)

Dear Lionel:

        In your April 18 letter, you asked for a list of the Fish attorneys who have worked on this matter or who plan to do so going forward.  Those attorneys are:

- David Z. Barkan
- Thomas L. Halkowski
- Christie Horsley
- Teresa Myers
- Robert Oakes
- Aaron Pirouznia
- Courtney Suvie
- Daniel Taylor
- Julie M. Wheeler

None of these lawyers did any work for MPS on any matter.  And, as noted in my April 14 letter, all of the attorneys who previously worked on any matter for MPS who remain at Fish have been walled off from this litigation.  To be clear, none of those attorneys worked on this litigation before or after the ethical wall was put in place.

        I hope that this information will resolve this matter.  But I remain available to meet and confer at any time.

Lionel M. Lavenue, Esquire
April 23, 2020
Page 2

Sincerely,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld

JBB/bac

Exhibit 33

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

Jack B. Blumenfeld
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@mnat.com

April 24, 2020
CORRECTED

Lionel M. Lavenue, Esquire                          *VIA ELECTRONIC MAIL*
Finnegan, Henderson, Farabow, Garrett
   & Dunner, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675

      Re:    *Volterra Semiconductor LLC v. Monolithic Power Systems, Inc.*
               C.A. No. 19-2240 (CFC) (D. Del.)

Dear Lionel:

      In your April 18 letter, you asked for a list of the Fish employees who have worked on this matter or who plan to do so going forward.  The Fish lawyers who have worked on this matter are:

- David Z. Barkan
- Thomas L. Halkowski
- Robert Oakes
- Aaron Pirouznia
- Daniel Taylor
- Julie M. Wheeler

Staff members from Fish who have worked on this matter are:

- Christie Horsley
- Teresa Myers
- Courtney Suvie
- Julie M. Wheeler

None of these lawyers or staff members did any work for MPS on any matter.

Lionel M. Lavenue, Esquire
April 24, 2020
Page 2

And, as noted in my April 14 letter, all of the attorneys who previously worked on any matter for MPS who remain at Fish have been walled off from this litigation.  To be clear, none of those attorneys worked on this litigation before or after the ethical wall was put in place.

I hope that this information will resolve this matter.  But I remain available to meet and confer at any time.

Sincerely,

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld

JBB/bac

Exhibit 34



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**LIONEL M. LAVENUE**
571.203.2750
lionel.lavenue@finnegan.com

April 24, 2020

Jack B. Blumenfeld                                                    **Via Email**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:   *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*
      No. 1:19-cv-02240-CFC (Del. 2019)

Dear Mr. Blumenfeld:

I write to respond to your letter of April 23, 2020, and your corrected letter sent on April 24, 2020. Contrary to your representation, providing the list of employees after months of correspondence does not "resolve the matter." Conflicts under MRPC 1.9 are imputed to the firm under MRPC 1.10, except in very specific circumstance which do not apply here. The only appropriate resolution, as we have made clear, is for Fish to withdraw.

You say you are available to meet and confer at any time. We are available to meet and confer next week, either on Monday, April 27, or Tuesday, April 28, at 4:00 PM EDT. Please confirm your availability.

Sincerely,

Lionel M. Lavenue

cc:   Saria Tseng, Esq., Monolithic Power Systems Inc.

Exhibit 35

| | |
|---|---|
| **From:** | EXT-JBlumenfeld@mnat.com |
| **To:** | Hines, Lisa |
| **Cc:** | Lavenue, Lionel; saria.tseng@monolithicpower.com |
| **Subject:** | RE: Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence |
| **Date:** | Saturday, April 25, 2020 10:42:17 AM |

***EXTERNAL* Email:**

Lionel, Tuesday at 4:00 will work.

We can use:
877-434-2295
Code 302-351-9291

Roger Feldman may join us.  BTW, I see that my letter of yesterday listed Julie Wheeler twice. She is not a lawyer.

Jack

**From:** Hines, Lisa [mailto:Lisa.Hines@finnegan.com]
**Sent:** Friday, April 24, 2020 6:55 PM
**To:** Blumenfeld, Jack
**Cc:** Lavenue, Lionel; saria.tseng@monolithicpower.com
**Subject:** [EXT] Volterra Semiconductor LLC v. Monolithic Power Systems Inc., No. 1:19-cv-02240-CFC: Service of Correspondence

Counsel,

Please see attached correspondence from Lionel Lavenue in the above referenced case.

Regards,

Lisa


Lisa Hines
Litigation Legal Assistant
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
11955 Freedom Drive, Reston, VA  20190
571.203.2743| cell 202.236.1267| fax 202.408.4400|
lisa.hines@finnegan.com | www.finnegan.com



This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.