IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | C.A. No. 19-02240-CFC |
| v. | ) | |
| | ) | █████████████████████ |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | Redacted: |
| | ) | Public Version |
| | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION TO STRIKE UNSPECIFIED ACCUSED PRODUCTS FROM THE FIRST AMENDED COMPLAINT**

OF COUNSEL:
Bob Steinberg
Matthew J. Moore
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
bob.steinberg@lw.com
matthew.moore@lw.com

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Lionel M. Lavenue
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

R. Benjamin Cassady
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: June 1, 2020

# **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF PROCEEDINGS...............................................1

II.  SUMMARY OF THE ARGUMENT ...................................................3

III.  STATEMENT OF THE FACTS ...................................................6

    A.  Volterra's Reliance Solely on Information About the 48V-1V
        Power Solution Does Not Support Its Broader Allegations
        Against MPS's Entire DC-to-DC Power Converter Line. ...................6

    B.  Volterra Refuses to Clarify or Amend the Scope of Its Claims............6

    C.  Volterra's Recent Actions Clarify That the FAC Only Accuses
        the 48V-1V Power Solution. .................................................8

    D.  Fish Acknowledges That the FAC's Definition of Accused
        Products Is Too Broad. .......................................................9

IV.  ARGUMENT...........................................................................11

    A.  Legal Standards .............................................................11

    B.  Volterra Admits That This Case Is Limited to the 48V-1V
        Power Solution. ...............................................................12

    C.  Volterra's Oppositions Admit That the "Accused Products"
        Encompass MPS Products That Are Immaterial to This Case. ..........13

    D.  MPS Continues to be Prejudiced by Volterra's Overbroad
        Allegation of Infringement Against DC-to-DC Power
        Converters Generally.........................................................14

V.  CONCLUSION.........................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Babul v. Relmada Therapeutics, Inc.*,
  No. CV 15-2937, 2016 WL 233699 (E.D. Pa. Jan. 20, 2016) ............................16

*Coach, Inc. v. Kmart Corps.*,
  756 F. Supp. 2d 421 (S.D.N.Y. 2010) ..................................15

*Delaware Health Care, Inc. v. MCD Holding Co.*,
  893 F. Supp. 1279 (D. Del. 1995) ..................................12, 14

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
  189 F.R.D. 269 (S.D.N.Y. 1999) ..................................15

*Gen. Cas. Ins. Co. of Wis. v. Penn-Co Const., Inc.*,
  No. C03-2031-MWB, 2005 WL 1843462 (N.D. Iowa July 29,
  2005) ..................................11

*Invensas Corp. v. Renesas Elecs. Corp.*,
  287 F.R.D. 273 (D. Del. 2012) ..................................15

*Micro Motion, Inc. v. Kane Steel Co.*,
  894 F.2d 1318 (Fed. Cir. 1990) ..................................15

*Nationwide Ins. Co. v. Cent. Missouri Elec. Co-op., Inc.*,
  278 F.3d 742 (8th Cir. 2001) ..................................11

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009) ..................................12, 15

*Thornhill v. Aylor*,
  No. 3:15-CV-00024, 2016 WL 258645 (W.D. Va. Jan. 20, 2016) ......................2

## RULES

Fed. R. Civ. P. 12(f) ..................................1, 2, 11, 16

Fed. R. Civ. P. 12(f)(1) ..................................2

Fed. R. Civ. P. 12(g)(1) ..................................2

ii

## TREATISES

5C Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, § 1380 (3d ed. 2020) ........................................................................16

## OTHER AUTHORITIES

Maxim Integrated, *Maxim Integrated Files Patent Infringement Lawsuit Against Monolithic Power Systems* (January 7, 2020), https://investor.maximintegrated.com/press-releases/press-release-details/2020/Maxim-Integrated-Files-Patent-Infringement-Lawsuit-Against-Monolithic-Power-Systems/default.aspx ............................................16

## I.     NATURE AND STAGE OF PROCEEDINGS

On December 9, 2019, Plaintiff Volterra Semiconductor LLC ("Volterra")

filed its original Complaint against Defendant Monolithic Power Systems, Inc.

("MPS") for alleged infringement of U.S. Patent Nos. 6,362,986 ("the '986

patent"), 7,525,408 ("the '408 patent"), and 7,772,955 ("the '955 patent")

(collectively, the "Asserted Patents").  D.I. 1.  Volterra filed its First Amended

Complaint ("FAC") on February 12, 2020.  D.I. 11.

On April 30, 2020, MPS concurrently filed a motion to dismiss the FAC,

D.I. 15, and a separate motion to disqualify Fish & Richardson P.C. ("Fish") as

Volterra's counsel, D.I. 17.  Volterra filed an opposition to MPS's motion to

dismiss on May 14, 2020, D.I. 31, and MPS filed its reply on May 21, 2020, D.I.

32.  Most recently, on May 28, 2020, Morris, Nichols, Arsht & Tunnell LLP, on

behalf of Fish, filed an opposition to MPS's motion to disqualify.[1]  D.I. 35.  Both

of MPS's motions are currently pending before the court.

Prompted by Volterra's refusal to amend the scope of the FAC, and

contradictory statements made in these Oppositions and during the parties' recent

May 26, 2020 meet-and-confer, MPS now moves the Court to strike the portions of

the FAC under Federal Rule of Civil Procedure 12(f) that overstate the scope of

---

[1] For brevity, we refer to the opposition to the motion to dismiss and the opposition to the motion to disqualify jointly as the "Oppositions."

(continued…)

Volterra's patent infringement allegations.[2] This remedy is requested as an alternative remedy to the relief requested in the motion to dismiss.

Volterra's FAC broadly names all of MPS's DC-to-DC power converters as the "Accused Products," including the "48V-1V Power Solution for CPU, SoC or ASIC Controller" as but one "non-exhaustive example" (hereinafter, "48V-1V Power Solution").  FAC ¶ 18.  But Volterra's recently-filed Oppositions make clear that the scope of the Accused Products does not include all of MPS's DC-to-DC power converters and instead is clearly limited to just the 48V-1V Power Solution.  D.I. 31 at 2, 3; D.I. 35 at 1, 6, 7, 13, 17 (referring to a single "accused product" introduced in 2019).  Despite Volterra's admissions as to the narrow scope of its actual infringement allegations, Volterra refused to amend the FAC accordingly.  Meanwhile, Volterra and its parent company Maxim are currently using the overbroad scope of the Accused Products in the FAC ███████████ ████████████████████████████████████████████.  Most alarmingly, these overbroad assertions have been and are still being used ████████████████ ████████████████.  Zhou Decl. ¶ 2.

---

[2] This motion to strike is being filed pursuant to Fed. R. Civ. P. 12(f), and to the extent necessary, joined with MPS's motion to dismiss pursuant to Fed. R. Civ. P. 12(g)(1), as the statements in the Oppositions filed after MPS's motion to dismiss make clear this relief is necessary.  Alternatively, MPS requests the court exercise its right to consider a motion to strike at any time pursuant to Rule 12(f)(1).  *See, e.g., Thornhill v. Aylor*, No. 3:15-CV-00024, 2016 WL 258645, at *1–2 (W.D. Va. Jan. 20, 2016) (The court exercised its right to consider an otherwise untimely motion to strike under Rule 12(f)(1)).

## II.    SUMMARY OF THE ARGUMENT

Based on Volterra's and Fish's recent Oppositions, their admissions to the

court, deceptive press statements, and recent contact with MPS customers, three

things are now clear: 1) Volterra continues to accuse *all* of MPS's DC-to-DC

power converters even though it admits its allegations are limited, 2) Volterra

refuses to narrow the scope of this case, and 3) it (and its parent company)

continue to ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████   issuing a misleading press release.  *See, e.g.*, D.I. 27, Ex. 17 at 1;

D.I. 27, Ex. 24 at 1; D.I. 27, Ex. 19 at 1–2; D.I. 31 at 2; Zhou Decl. ¶¶ 2–3.

As defined in the FAC, the "Accused Products" "include but are not limited

to DC-to-DC power converters."  FAC ¶ 18.  But Volterra's pleaded allegations are

much narrower.  Volterra's Oppositions finally make clear, its infringement theory

for MPS's entire line of DC-to-DC power converter products hinges solely on

information about a single example—the 48V-1V Power Solution.  *See, e.g.*, D.I.

31 at 2, 3; D.I. 35 at 1, 6, 7, 13, 17.  Volterra blatantly admits it too.  In its recent

opposition to the motion to disqualify, Volterra states that "[t]he characterization

of the scope of the technology in this case as 'DC-to-DC converters' comes from

MPS, not from Volterra."  D.I. 35 at 12.  If this statement were true, Volterra

should be willing to amend the FAC and remove all instances of DC-to-DC converters.  It is not.

Further, Volterra acknowledges that MPS's DC-to-DC converter line includes hundreds of products having nothing to do with the accused technology in the 48V-1V Power Solution.  Volterra states, "***MPS sells hundreds of different DC-to-DC converters***," D.I. 35 at 3 (emphasis added), and DC-to-DC converters are "***so varied in their topologies and operations that the diversity of dc-to-dc converters is seemingly amazing, even mysterious***."  *Id.* (emphasis in original). Because of this sheer diversity, Volterra insists that the 48V-1V Power Solution is not substantially related to DC-to-DC converters generally.  D.I. 35 at 7, 12, 17; D.I. 27, Ex. 17 at 1.  How, then, can "Accused Products" be defined to include all of MPS's DC-to-DC converters? Despite the clear mismatch between the scope of the FAC and the narrow scope of Volterra's infringement allegations, Volterra refuses to amend.  Though MPS has repeatedly asked Volterra to identify support for alleging infringement against other MPS DC-to-DC power converters, Volterra rebuffed MPS each time, and did not narrow the FAC.  *See, e.g.*, D.I. 16, Ex. A at 2; D.I. 27, Ex. 19 at 1–2; D.I. 27, Ex. 24 at 1, 3; Ex. A at 1–2.  MPS finally

requested that Volterra amend the FAC during the parties' recent May 26, 2020 meet-and-confer, but Volterra refused.[3]

To make matters worse, Volterra is continuing to use the FAC to mislead MPS customers into thinking that the scope of this case is broader than it actually is. ██████████████████████████████████████████████████ ████████████████████████████████████████████. Zhou Decl. ¶ 3. Volterra should not be allowed to keep its allegations falsely broad ████████████ ██████████████████████████████.

Furthermore, Volterra's overly broad scope will unfairly require MPS to produce documents and witnesses on hundreds of other MPS products not properly accused of infringement. Left unchecked, Volterra will go on a wide-ranging fishing expedition of discovery. This is exactly what a motion to strike was designed to prevent. Should the Court decide not to grant MPS's pending motion to dismiss, MPS moves to strike those portions of the FAC that expand the case beyond Volterra's baseless allegations.[4]

---

[3] During the May 26, 2020 meet-and-confer, MPS's counsel notified Volterra's counsel, Robert Oakes of Fish, about its intention to file this motion to strike. In attempting to reach agreement, MPS gave Volterra one last chance to amend the FAC, asking Volterra to remove the overbroad reference to "DC-to-DC power converters" and replace the accused products with the 48V-1V Power Solution. Volterra refused.

[4] The specific remedy requested by MPS is proposed *infra* at n. 9.

## III.   STATEMENT OF THE FACTS

### A.   Volterra's Reliance Solely on Information About the 48V-1V Power Solution Does Not Support Its Broader Allegations Against MPS's Entire DC-to-DC Power Converter Line.

The original Complaint and FAC accuse the general category of MPS's

"DC-to-DC power converters" as the allegedly infringing "Accused Products,"

naming the 48V-1V Power Solution as but one "example":

> *The infringing products include, but are not limited to Monolithic DC-to-DC power converters*, including converters manufactured by Monolithic, designed by Monolithic, or designed with the assistance of Monolithic.  *One non-exhaustive example of the Accused Products includes the 48V-1V Power Solution for CPU, SoC or ASIC Controller* that Monolithic demonstrated at the 2019 IEEE Applied Power Electronics Conference and Exposition ("APEC 2019") in Anaheim, CA.

Compl. ¶ 18; FAC ¶ 18 (emphases added).  However, the rest of the FAC only

discusses the 48V-1V Power Solution and does not provide any basis to allege

infringement for any other MPS products.  *See* Compl. ¶¶ 22–36, 42–51, 57–68;

FAC ¶¶ 22–38, 44–56, 62–110.

### B.   Volterra Refuses to Clarify or Amend the Scope of Its Claims.

Given the discrepancy between the scope of "Accused Products" named in

the FAC and Volterra's actual infringement allegations, MPS has repeatedly

sought clarification from Volterra about the scope of its allegations.  But Volterra

has refused to answer in its correspondences.

After the original Complaint was filed, MPS sent a letter to Volterra pointing out that the complaint lacked sufficient factual basis to support infringement.  D.I. 16, Ex. A (1/28/20 Letter from Lavenue to Oakes).  Based on the facts alleged in the original Complaint, MPS questioned whether only the "48V-1V Power Solution" was accused and asked Volterra to "[p]lease let [MPS] know if [it] disagree[d]."  *Id.* at 2.

On February 12, 2020, Volterra responded, concurrently filing the FAC. D.I. 27, Ex. 19 (2/12/20 Letter from Oakes to Lavenue); D.I. 11.  Though Volterra argued its infringement allegations were sufficient, it failed to address or clarify whether the FAC was actually limited to the 48V-1V Power Solution.  However, in defending the sufficiency of its pleadings, Volterra did explain that "[t]he allegations of the Complaint (and the First Amended Complaint) ***are based on the two YouTube videos*** that MPS published to market ***the Accused Product in connection with the 2019 APEC trade show***."  D.I. 27, Ex. 19 at 1–2 (emphases added).  The only MPS offering that fits this description is the 48V-1V Power Solution.

MPS wrote back that the FAC was still deficient.  D.I. 16, Ex. B (2/29/2020 Letter from Lavenue to Oakes).  In response, Volterra explained why it believed the information about the "48V-1V Power Solution" presented at the 2019 California trade show was sufficient to allege infringement, but again did not

7

address why the FAC's definition of Accused Products includes a broader category of MPS products.  *See* D.I. 27, Ex. 24 (3/11/20 Letter from Oakes to Lavenue) at 1–2.

## C.    Volterra's Recent Actions Clarify That the FAC Only Accuses the 48V-1V Power Solution.

Though Volterra has repeatedly resisted clarifying or amending the scope of its allegations, its recent actions demonstrate that it has no basis to allege infringement of any other MPS products.  In opposing MPS's motion to dismiss, Volterra continued to rely solely on information about "***two public videos***" about the 48V-1V Power Solution to purportedly "***illustrate exactly*** how each element of each asserted claim is present in the Accused Products, and ***explain Volterra's theory of infringement for each claim***."  D.I. 31 at 2 (emphases added).  In opposing MPS's motion to disqualify, Volterra reiterated that only the 48V-1V Power Solution was implicated in this case, not MPS's DC-to-DC converters in general.  *See* D.I. 35 at 1, 3–4, 6, 7, 12, 13, 17 (referring to a single accused product announced in 2019).  Nevertheless, when MPS requested that Volterra amend the scope of the FAC to match the actual scope of its allegations, Volterra refused, preferring to keep it open-ended so that it could obtain more discovery and commercial advantages.

### D.    Fish Acknowledges That the FAC's Definition of Accused Products Is Too Broad.

Concurrent with their correspondences about the insufficiency of the pleadings, the parties also separately communicated about whether Volterra's counsel, Fish, should be disqualified based on its prior presentation of MPS involving DC-to-DC power converters.  On January 24, 2020, Fish answered that its prior representation of MPS involving DC-to-DC converters did not warrant disqualification, explaining that "[c]omparing matters at ***such a high a level of generalization and identifying a superficial categorical similarity***" was insufficient to show that its prior representation of MPS was substantially related to the subject matter of the present case, which involves "***the*** accused product" (singular) that "was introduced just last year at the 2019 IEEE [APEC]" trade show.  D.I. 27, Ex. 17 (1/24/20 Letter from Feldman to Lavenue) at 1–2 (emphases added).

MPS disagreed, providing numerous examples of confidential information provided to Fish during its years of representation regarding MPS's DC-to-DC converter patents and products.  D.I. 27, Ex. 18 (2/11/20 Letter from Lavenue to Feldman) at 1.  But Fish argued that any familiarity it had "with MPS's DC-to-DC converter patents" was too "generic" to be substantially related to the "present case, which involves a brand new product" that was never the subject of Fish's work for MPS.  D.I. 27, Ex. 20 (2/21/20 Letter from Feldman to Lavenue) at 1–2.

MPS called out "Fish and Volterra's contradictory representations of the scope of the instant action"—on the one hand, Volterra's counsel, Fish, was claiming that the accused DC-to-DC power converters were limited to a "brand new product" to avoid disqualification, but on the other, Volterra was insisting that the scope of MPS's DC-to-DC power converter technology "covers a wide range of products" to  obtain discovery on additional accused products.  D.I. 27, Ex. 21 (2/29/20 Letter from Lavenue to Feldman) at 5.  Fish made no attempt to reconcile these inconsistent positions.  D.I. 27, Ex. 30 (4/14/20 Letter from Blumenfeld to Lavenue) at 1–2.  Rather, Fish continued with its narrow reading of the scope of this case, noting "that different matters may have involved dc-to-dc converters is not surprising, but that does not make them substantially related" to the present case, which involves a product not announced until 2019.  *Id.* at 2.  Given the definition of Accused Products in the FAC, the position taken by Volterra is contradictory to that of its counsel, Fish, and the expressed scope of the FAC.

Fish's recent opposition to MPS's motion to disqualify further elaborated on the breadth and diversity of MPS's DC-to-DC power converters.  D.I. 35 at 1, 3–4, 6, 12.  Fish admitted that "***MPS sells hundreds of different DC-to-DC converters***," including 514 switching regulations, 101 power modules, and over 300 products devoted to "DC/DC Power Conversion."  D.I. 35 at 3–4 (emphasis added).  Not only is this category broad, it is also diverse.  According to Fish, DC-

to-DC converters "look *so varied in their topologies and operations that the*

*diversity of dc-to-dc converters is seemingly amazing, even mysterious*."  *Id.* at 3

(emphasis in original).

Despite Fish's admission as to the broad scope of MPS's DC-to-DC

converter products and Volterra's admission that the FAC does not actually accuse

MPS's DC-to-DC power converters generally, Volterra refuses to amend the

complaint to remove any references to DC-to-DC power converters as being the

Accused Products.[5]

## IV.   ARGUMENT

### A.   Legal Standards

"The court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

"The court has considerable discretion in ruling on a Rule 12(f) motion to strike."

*Gen. Cas. Ins. Co. of Wis. v. Penn-Co Const., Inc.*, No. C03-2031-MWB, 2005 WL

1843462, at *2 (N.D. Iowa July 29, 2005) (citing *Nationwide Ins. Co. v. Cent.*

---

[5] To the extent this motion to strike is granted, MPS's pending motion to disqualify still stands.  As just one example, as noted in the opening brief of MPS's motion to disqualify, limiting the FAC to the 48V-1V Power Solution will not ameliorate Fish's conflict of interest because Fish's knowledge about MPS's personnel, internal operations, and litigation strategy will allow Fish to unfairly and materially advance Volterra's position.  *See, e.g.*, D.I. 25 at 5 ("Fish encouraged MPS to disclose to Fish its most strategic, sensitive, and confidential know-how and business operations so that Fish could most effectively develop MPS's IP portfolio, litigation, and business strategies"), 18-19 (explaining that "Fish will be able to exploit its familiarity with MPS's witnesses' demeanor, prior deposition training, knowledge, experience, weaknesses, and insecurities").

*Missouri Elec. Co-op., Inc.*, 278 F.3d 742 (8th Cir. 2001)).  "Immaterial matter is that which has no essential important relationship to the claim for relief or the defenses being pleaded."  *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291–12 (D. Del. 1995).  "Motions to strike serve 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'"  *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009).

### B.   Volterra Admits That This Case Is Limited to the 48V-1V Power Solution.

Volterra's recent filings conclusively establish that Volterra's infringement allegations are limited to the 48V-1V Power Solution.  *See generally* D.I. 31; D.I. 35.  As Volterra explained in its opposition to MPS's motion to dismiss, the FAC relies on "***two public videos***" to "***illustrate exactly*** how each element of each asserted claim is present in the Accused Products, and ***explain Volterra's theory of infringement for each claim***."  D.I. 31. at 2 (emphases added).  From these statements, it is clear that the 48V-1V Power Solution is the only accused offering in this case.[6]

---

[6] ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████  Zhou Decl. ¶ 5.  In a letter dated June 1, 2020, MPS identifies various overstatements made in Volterra's FAC, including its identification of the 48V-1V Power Solution offering.  Ex. C (6/1/20 Letter from Lavenue to Oakes).

Volterra has not amended its FAC to plead additional allegations directed to MPS's other DC-to-DC power converter products.  And Volterra's repeated failure to point to anything other than information about the 48V-1V Power Solution, both in its correspondence with MPS and its recent submissions to the Court, demonstrates there is no factual basis for alleging infringement of any other DC-to-DC power converter product.  On multiple occasions, MPS expressed concern that the allegations in the FAC were overbroad and asked that Volterra clarify its position.  *See* D.I. 16, Ex. A at 2; Ex. A at 1–2.  Instead of addressing this issue, Volterra continues to rely on its allegations about the 48V-1V Power Solution without amending its pleading to reflect that narrow scope.  *See* D.I. 27, Ex. 19 at 1–2; D.I. 27, Ex. 24 at 1–2; D.I. 31 at 2; D.I. 35 at 1, 6, 7, 13, 17.

### C.   Volterra's Oppositions Admit That the "Accused Products" Encompass MPS Products That Are Immaterial to This Case.

Volterra's identification of the Accused Products as "DC-to-DC power converters" in the FAC improperly includes many MPS products that are immaterial and well beyond the scope of its infringement allegations.  As Volterra's counsel, Fish, acknowledges, "***MPS sells hundreds of different DC-to-DC converters***."  D.I. 35 at 3 (emphasis added); D.I. 27, Ex. 30 at 2.  These products are vastly diverse, differing in structure, feature, or operation from the 48V-1V Power Solution, because they are "***so varied in their topologies and operations***."  D.I. 35 at 3 (emphasis in original); D.I. 27, Ex. 30 at 2; Zhou

13

Decl. ¶ 4.  Further, Volterra never argues or even suggests that its infringement theory against the 48V-1V Power Solution may apply to other DC-to-DC power converter products.  To the contrary, Fish insists that superficial categorical similarity is insufficient to show that one DC-to-DC converter product is substantially related to another.  D.I. 35 at 6, 7, 12; D.I. 27, Ex. 17 at 1. Identifying "over 8,000 patents" that use the term "dc-to-dc converter," Fish acknowledges that claiming a DC-to-DC converter is not enough to sweep in each of MPS's offerings related to DC-to-DC converters.  *See* D.I. 35 at 3–4, 6, 12. Thus, by Fish's own reasoning, these other DC-to-DC power converter products, which vary widely in structure and operation, are immaterial to Volterra's infringement allegations against the 48V-1V Power Solution and should be stricken from the pleadings.  *See Delaware Health Care, Inc.*, 893 F. Supp. at 1292 (granting motion to strike "immaterial matter" because it bore "no important relationship or essentiality to the matters" pleaded in the complaint).

### D. MPS Continues to be Prejudiced by Volterra's Overbroad Allegation of Infringement Against DC-to-DC Power Converters Generally.

The court should strike the immaterial products from the FAC because MPS is prejudiced by the overbroad allegations of infringement.  As discussed, MPS sells hundreds of DC-to-DC converter products.  Permitting discovery into each one of these products without a sufficient basis of infringement prejudices MPS

because it will "needlessly increase the duration and expense of litigation." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010); *Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (explaining that when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate delay and unnecessary expense from litigating the invalid claim").  To "avoid unnecessary forays into immaterial" products lacking any basis for infringement, the Court should grant MPS's motion to strike.  *See Sun Microsystems*, 630 F. Supp. 2d at 402.

The law does not permit Volterra to obtain discovery on hundreds of MPS products when its factual allegations are only directed to the 48V-1V Power Solution.  *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim."); *Invensas Corp. v. Renesas Elecs. Corp.,* 287 F.R.D. 273, 281 (D. Del. 2012) (acknowledging that courts "have been focused on whether plaintiffs 'had a basis for believing that [certain unaccused products] are infringing' before allowing plaintiffs to obtain broad discovery of those products"). Because Volterra has failed to provide any factual basis linking the 48V-1V Power Solution to MPS's other DC-to-DC converters, permitting discovery into the entire product line would allow discovery to "devolve[] into a fishing expedition or a

15

method to harass or embarrass the defendant."  5C Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, § 1380 (3d ed. 2020) (citing *Babul v. Relmada Therapeutics, Inc.,* No. CV 15-2937, 2016 WL 233699 (E.D. Pa. Jan. 20, 2016)).  In such cases, "a Rule 12(f) motion is warranted to prevent abuse of the discovery process."  *Id.*

█████████████████████████████████████████████████████████████

Recently, the FAC has been used to mislead MPS's customers into thinking that MPS's entire product line of DC-to-DC converters is threatened by this lawsuit.  *See* Zhou Decl. ¶ 2.  For example, MPS customers have been referring to a press release issued by Volterra's parent company, Maxim, which falsely characterizes the scope of this case as being broader than Volterra says it actually is.  *See id.*  The press release names "MPS DC-to-DC power converter products" as "infringing products" (plural) in this lawsuit, while conveniently omitting any mention of the 48V-1V Power Solution that is the focus of Volterra's complaint.[7]  As a result of the ambiguity created by these intentionally misleading statements,

███████████████████████████████████████   *See* Zhou Decl. ¶¶ 2–3.  ██████

█████████████████████████████████████████████████████████████

---

[7] *See* Maxim Integrated, *Maxim Integrated Files Patent Infringement Lawsuit Against Monolithic Power Systems* (January 7, 2020), https://investor.maximintegrated.com/press-releases/press-release-details/2020/Maxim-Integrated-Files-Patent-Infringement-Lawsuit-Against-Monolithic-Power-Systems/default.aspx.



. *Id.* ¶ 3.

[8]

It is disingenuous and unfair for Volterra to only identify *a single product offering* in filings before the court, while misleading MPS's customers, the press, and the public into thinking that MPS's *entire product line* for DC-to-DC power converters is under attack.  Volterra should not be permitted to use the overbroad language in the FAC ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓.

## V.   CONCLUSION

MPS's motion to dismiss is currently pending before the court.  In the event the FAC is not dismissed in its entirety, MPS respectfully requests that the Court

---

[8] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(continued…)

strike the categorical identification of "DC-to-DC power converters" in the FAC so

that the accusations are limited to the 48V-1V Power Solution upon which all of

Volterra's allegations rest.[9]

---

[9] Specifically, MPS proposes that: 1) all instances of "Accused Products" in the FAC be replaced by "48V-1V Power Solution for CPU, SoC or ASIC Controller," 2) "DC-to-DC power converters" be replaced by "48V-1V Power Solution for CPU, SoC or ASIC Controller" in paragraphs 2 and 6 of the FAC, and 3) paragraph 18 of the FAC be corrected as follows: "The infringing products include, but are limited to, Monolithic DC-to-DC power converters, including converters manufactured by Monolithic, designed by Monolithic, or designed with the assistance of Monolithic. One non-exhaustive example of the Accused Products includes are the 48V-1V Power Solution for CPU, SoC or ASIC Controller that Monolithic demonstrated at the 2019 IEEE Applied Power Electronics Conference and Exposition ('APEC 2019') in Anaheim, CA."

OF COUNSEL:

Bob Steinberg
Matthew J. Moore
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
bob.steinberg@lw.com
matthew.moore@lw.com

Lionel M. Lavenue
Finnegan, Henderson, Farabow, Garrett
& Dunner, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

R. Benjamin Cassady
Finnegan, Henderson, Farabow, Garrett
& Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: June 1, 2020

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th
Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER
## <u>REGARDING BRIEFING</u>

Pursuant to the November 6, 2019 Standing Order Regarding Briefing in

All Cases, I certify that the font of this brief is Times New Roman, the type is

14-point, and the total word count is 4,219 words as calculated by the word-

processing system used to prepare the filing.


*/s/Nathan R. Hoeschen*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1.1, I certify that the parties met and conferred by telephone on May 26, 2020 and were unable to resolve the dispute.


*/s/ Nathan R. Hoeschen*

## <u>CERTIFICATE OF SERVICE</u>

I, Nathan R. Hoeschen, hereby certify that on June 1, 2020, this document

was served on the persons listed below in the manner indicated:

**<u>BY EMAIL</u>**
Robert M. Oakes
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19801
(302) 778-8477
oakes@fr.com

David Barkan
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
(650) 839-5070
barkan@fr.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*
