IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | C.A. No. 19-02240-CFC |
| v. | ) | |
| | ) | |
| | ) | ▮▮▮▮▮▮▮▮▮▮ |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | Redacted: |
| | ) | Public Version |
| | ) | |

## DECLARATION OF LIONEL LAVENUE IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION TO STRIKE THE FIRST AMENDED COMPLAINT

OF COUNSEL:
Bob Steinberg
Matthew J. Moore
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
bob.steinberg@lw.com
matthew.moore@lw.com

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Lionel M. Lavenue
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

R. Benjamin Cassady
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: June 1, 2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR LLC,              )<br>                                                                   )<br>                    *Plaintiff,*                              )       C.A. No. 19-02240-CFC<br>          v.                                                    )       **CONFIDENTIAL—**<br>                                                                   )       **FILED UNDER SEAL**<br>MONOLITHIC POWER SYSTEMS, INC.,   )<br>                                                                   )<br>                    *Defendant.*                            )<br>                                                                   )<br>                                                                   ) | |

### DECLARATION OF LIONEL LAVENUE IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION TO STRIKE THE FIRST AMENDED COMPLAINT

1. I, Lionel Lavenue, am an attorney with Finnegan, Henderson, Farabow, Garrett & Dunner LLP, admitted *pro hac vice* before this honorable Court to represent defendant Monolithic Power Systems, Inc. ("MPS") in this matter. I provide this declaration based on my personal knowledge.

2. Attached as Exhibit A is a true and correct copy of a letter dated March 20, 2020, from myself to Robert M. Oakes, a Fish and Richardson P.C. attorney who is named as lead counsel for Volterra in this case.

3. Attached as Exhibit B is a true and correct copy of a news article entitled "Maxim Integrated Sues Monolithic for Converter Patent Royalties" published by Bloomberg Law® on December 9, 2019 by Christopher Yasiejko.

4. Attached as Exhibit C is a true and correct copy of a letter dated June 1, 2020, from myself to the aforementioned Robert M. Oakes.

5. The foregoing is true and correct to the best of my knowledge.

Executed on June 1, 2020.

*/s/ Lionel M. Lavenue*

Lionel M. Lavenue

## **CERTIFICATE OF SERVICE**

I, Nathan R. Hoeschen, hereby certify that on June 1, 2020, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**
Robert M. Oakes
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19801
(302) 778-8477
oakes@fr.com

David Barkan
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
(650) 839-5070
barkan@fr.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

# EXHIBIT A



| | **LIONEL M. LAVENUE** |
|---|---|
| | 571.203.2750 |
| | lionel.lavenue@finnegan.com |

March 20, 2020

Robert M. Oakes, Esq.                                                                           <u>**Via Email**</u>
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

      Re:     *Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*
                 No. 1:19-cv-02240-CFC (Del. 2019)

Dear Mr. Oakes:

      We first raised our concerns about the sufficiency of Volterra's pleading in this case and about the apparent lack of a pre-suit investigation in an initial letter dated January 28, 2020. You responded on February 12, 2020, concurrent with the filing of a first Amended Complaint (FAC), arguing that the FAC addressed the concerns that we had raised in our initial letter, by allegedly providing some "additional detail." We then responded on February 29, 2020, explaining that the FAC contains no further detail, relying instead only on the same two general YouTube videos, which as we have explained, do not support the allegations of infringement or the conclusory statements in both pleadings.

      Now, we respond to your most recent communication, dated March 11, 2020. We note that MPS's concerns remain the same: that Volterra bases its infringement allegations on two YouTube videos that do not contain the details necessary to assert that MPS's product is constructed in an infringing manner, and that Volterra's infringement allegations appear to be entirely hypothetical and, consequently, in violation of Rule 11. Volterra has continued to ignore that these issues do not justify Volterra's premature (at best) lawsuit. The March 11, 2020 letter cites to cases with no relation to the facts at issue, and is similarly unavailing.

      As an initial matter, we note that the March 11, 2020 letter finally confirms that there is only one (1) single product at issue in this case, which is directly contrary to positions of your previous letters. You now refer to "an" or "the" accused product (singular), not to "accused products" (plural). This is inconsistent with Volterra's previous communications regarding the scope of accused products in the context of the sufficiency of the case pleadings. Thus, while we now appear to agree that the accused product is limited to the one, single identified product in the FAC, that is, the 48V-1V

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
March 20, 2020
Page 2

Power Solution for CPU, SoC, or ASIC Controller, the FAC is still defective by its broad definition of accused products.  Therefore, we ask that Volterra correct this defect.

Otherwise, as to Volterra's allegations against the 48V-1V Power Solution, your March 11, 2020 letter makes the same unsupported claims as the FAC.  In particular, you represent that Volterra's claims are based on the two YouTube videos, specifically pointing to statements that the accused product is a "modular" and "dual phase" buck-type converter with a coupled inductor.  A buck converter is a basic converter type, and it could be constructed in multiple ways that are described as "modular," "dual phase," or with "coupled inductors."  But, Volterra's general allegations do not provide details about how the inductors are structured, and as we have already identified, such general allegations cannot support claims of infringement.  Yet, you nonetheless claim that such generic descriptions have meanings that "provide[] context for how engineers in this field interpret the schematic drawings and the various physical views of the product shown in the video" and that such "publicly distributed information provides more than a good faith basis for an engineer skilled in this field to conclude that the accused product infringes the asserted claims."  Such positions are simply incorrect.  Rule 11 requires an "objective analysis," and an objective engineer or counsel would not base infringement allegations of detailed structural and functional claims of three different patents on the non-specific descriptions that are given in the context of general promotional materials.  *See EonNet LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) (a reasonable pre-suit investigation, per Rule 11, "requires counsel to perform an objective evaluation of the claim terms when reading those terms on the accused device").

In your March 11, 2020 letter, you also cite a number of cases regarding what steps a party *"may"* take to conduct a pre-suit investigation, including "researching the target's infringing instrumentalities . . . [,] consulting with technical experts[,]" preparing "infringement claim charts," and discussing these with "company engineers in the field."  However, you do not say that Volterra has in fact done *any* of these things.  Indeed, Volterra does not appear to have investigated the accused product (singular) at all, beyond its viewing of the two YouTube videos.  And, you identify no technical expert, who was consulted prior to the filing of the lawsuit.  Further, you have also provided no infringement claim charts (indeed, the very limited disclosures of the FAC fail to plead a case for infringement on their face).  Finally, you have identified no information or discussions with engineers in the field.  Thus, Volterra's actual investigation seems to have been limited to its viewing of the two YouTube videos.  This, by itself, is not enough, even where the product is not yet available.  *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 984-985 (Fed. Cir. 2000) (confirming that a patent owner who relied on knowledge of the asserted patents, the accused infringer's advertising, and statements the accused infringer made to its customers had "no factual basis" for its claims).

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
March 20, 2020
Page 3

As to your reliance on *Hoffman-La Rouche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000), the idea that products that are not available to the public can still satisfy a pre-suit investigation is misplaced for several reasons.  First, you misstate our position.  We do not assert that every investigation fails to satisfy the requirements of Rule 11 for an unavailable product.  Instead, our position is that Volterra has failed to conduct *any* investigation, other than its watching of the two YouTube videos.  Second, you ignore differentiating factors that distinguish the facts here from *Hoffman*.  Most notably, *Hoffman* was an ANDA case, which, as you are likely aware, requires the generic manufacturer to declare that the replacement product is medically equivalent to the plaintiff's product before the replacement product is publicly available.  Here, MPS has made no representations that its products are the same as Volterra's patents.  Given the very different factual situations, *Hoffman* provides no support for Volterra's defective pleading.

Finally, you again state you do not believe that MPS has denied infringement, as if that issue is a defense to Volterra's lack of a pre-suit investigation.  As we have already pointed out multiple times, whether MPS denies infringement is not the issue.  The issue is that Volterra has failed to *plead* infringement.  Volterra's original complaint, FAC, and your letters do nothing to explain how Volterra can allege infringement of claims regarding detailed structures of inductors by relying only on general descriptive labels.  Nonetheless, to be clear, MPS denies infringing Volterra's patents, and will vigorously defend itself against these allegations.

Therefore, once again, we urge Volterra one final time to voluntarily withdraw its defective pleading.  Otherwise, MPS will seek dismissal of Volterra's meritless case.

MPS also reserves all of its rights and remedies, including not only the recovery of fees and costs under Section 285, but also all remedies available under Rule 11.

Sincerely,

Lionel M. Lavenue

cc:   Bob Steinberg, Esq., Latham & Watkins LLP
      Matthew J. Moore, Esq., Latham & Watkins LLP
      Saria Tseng, Esq., Monolithic Power Systems Inc.

# EXHIBIT B

# Maxim Integrated Sues Monolithic for Converter Patent Royalties

Published: Dec 09 2019 15:47:14

News Story

By      Christopher Yasiejko

(Bloomberg) --
Maxim Integrated's Volterra unit said  Monolithic Power Systems' DC-to-DC power converters infringe three of its patents for the technology.

- Volterra is seeking cash compensation and a court order blocking further unauthorized use of its inventions, according to  complaint filed Monday in federal court in Wilmington, Delaware
- Targets include the 48V-1V Power Solution for CPU, SoC or ASIC Controller, complaint says
- Monolithic's DC-to-DC division had $432.1 million in sales during the first nine months of 2019, up from $394.5 million a year earlier, Monolithic said Nov. 1 in its quarterly earnings report
    - Most of Monolithic's revenue comes from sales of DC-to-DC converter products, which serve the computing and storage, automotive, industrial, communications and consumer markets; last year, such sales accounted for more than 92% of revenue, according to data compiled by Bloomberg
- CASE: Volterra Semiconductor LLC v. Monolithic Power Systems Inc.,  19-cv-2240, U.S. District Court, District of Delaware (Wilmington)

To contact the reporter on this story:
Christopher Yasiejko in Wilmington, Delaware, at  cyasiejko1@bloomberg.net

To contact the editors responsible for this story:
David Glovin at  dglovin@bloomberg.net
Steve Stroth



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# EXHIBIT C



FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

LIONEL M. LAVENUE
571.203.2750
lionel.lavenue@finnegan.com

June 1, 2020

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

Redacted:
Public Version

VIA EMAIL

*Volterra Semiconductor LLC v. Monolithic Power Systems Inc.*, No. 1:19-cv-02240-CFC (Del. 2019).

**Contains Confidential Business Information**

Dear Mr. Oakes:

The purpose of this letter is to provide formal notice of Volterra's violation of Federal Rule of Civil Procedure 11(b), as Volterra appears to have filed its complaint and first amended complaint ("FAC") against MPS without conducting an objectively reasonable pre-suit investigation.

We have repeatedly raised our concerns regarding the sufficiency of Volterra's allegations based on two YouTube videos, and its accompanying pre-suit investigation, in three previous letters, on January 28, 2020, February 29, 2020, and March 20, 2020. Despite having multiple opportunities to provide an objectively reasonable basis for this lawsuit and explain what pre-suit investigation Volterra undertook before levelling unsupported allegations against MPS, Volterra has not done so.

In our prior correspondences, we have also repeatedly expressed our concern that the FAC is too broad. Though the FAC names all MPS DC-to-DC power converters as the "Accused Product," its infringement allegations appeared to be limited only to MPS's "48V-1V Power Solution for CPU, SoC or ASIC Controller" (referred to herein as "48V-1V Power Solution" for short). *See* January 28, 2020 Letter from Lavenue to Oakes; March 20, 2020 Letter from Lavenue. In responding to these letters, Volterra never clarified its positions. Nor did it amend the FAC.

Volterra's recent actions make clear that its infringement allegations are solely limited to the 48V-1V Power Solution. *See* D.I. 31 at 2, 3; D.I. 1, 6, 7, 13, 17. In its opposition to MPS's motion to dismiss, Volterra relied exclusively on two YouTube videos about the 48V-1V Power Solution to defend the sufficiency of its infringement pleadings. *See* D.I. 31 at 2, 3, 11. On our Tuesday, May 26, 2020 meet-and-confer, MPS gave Volterra one more opportunity to correct the overbroad statements in the

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
June 1, 2020
Page 2

**Contains Confidential Business Information**

FAC, explicitly requesting that Volterra remove the references to all MPS "DC-to-DC power converters." Volterra refused. Yet, two days later, Fish filed an opposition to the motion to disqualify, once again repeating that only the 48V-1V Power Solution is implicated, not MPS's DC-to-DC converters in general. D.I. 35 at 1, 6, 7, 13, 17. Fish further states that "[t]he characterization of the scope of the technology in this case as 'DC-to-DC converters' comes from MPS, not from Volterra." D.I. 35 at 12. If this statement was true, Volterra should be willing to amend the FAC and remove all instances of DC-to-DC converters. It is not.



By not conducting an adequate pre-suit investigation, Volterra further sweeps up products ▇▇▇ that have nothing to do with this lawsuit.

To make matters worse, while Volterra and Fish take one position in their recent filings, Volterra continues to exploit the purposeful ambiguity in the FAC ▇▇▇ Despite Volterra's recent admissions about its limited infringement theory, Volterra and/or Maxim continue to communicate with MPS customers claiming the lawsuit broadly covers all of MPS's DC to DC power converter products. We understand that Maxim's press release mischaracterizing the scope and impact of this case is being referenced as part of these communications.[1] In it, Maxim claims that the "complaint asserts that MPS DC-to-DC power converter products infringe multiple Volterra patents related to coupled inductor technology" and that "Volterra is seeking damages from MPS and an order prohibiting MPS from selling the infringing products." This press release indicates that all of MPS's DC-to-DC power converters are implicated by this case. The "48V-1V Power Solution" is not mentioned anywhere in the press release. As such, the press release and any reference to it is intentionally misleading.

With Volterra's insufficient investigation and implausible infringement claims, and with the continued false comments by Volterra about MPS's products, ▇▇▇. This is a violation of Rule 11(b), as the initial Complaint and FAC were made for an improper purpose.

In sum, the inadequacy of the YouTube videos, and the overbroad identification of "Accused Products" that have nothing to do with the technology that Volterra actually accuses in the FAC, raise serious doubts as to the reasonableness of Volterra's Rule 11 investigation. Volterra's insufficient investigation ▇▇▇.

---

[1] *See* https://investor.maximintegrated.com/press-releases/press-release-details/2020/Maxim-Integrated-Files-Patent-Infringement-Lawsuit-Against-Monolithic-Power-Systems/default.aspx.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Robert M. Oakes, Esq.
Fish & Richardson, P.C.
June 1, 2020
Page 3

**Contains Confidential Business Information**



      We ask once more that Volterra withdraw its pending pleading. If Volterra contends it has some investigative support for why its allegations meet the standard of Rule 11(b) please ***identify it now***.² However, if Volterra will not withdraw its pending pleading, and cannot identify any evidence of an objectively reasonable pre-suit investigation, we may have no choice but to proceed with sanctions, under at least Federal Rule of Civil Procedure 11(c)(2).

Very truly yours,

*Lionel M. Lavenue*

Lionel M. Lavenue

cc:    Bob Steinberg, Esq., Latham & Watkins LLP
        Matthew J. Moore, Esq., Latham & Watkins LLP
        Saria Tseng, Esq., Monolithic Power Systems Inc.

---

² Volterra cannot remain silent in view of the concerns MPS has repeatedly raised. Volterra must explain the bases for its claims. *See Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim.").

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP