IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-2240-CFC |
| | ) |
| MONOLITHIC POWER SYSTEMS, INC., | ) Redacted: |
| | ) Public Version |
| | ) |
| Defendant. | ) |

**OPENING BRIEF IN SUPPORT OF DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION FOR RECONSIDERATION**

OF COUNSEL:
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Dated: September 9, 2020

## Table of Contents

                                                                                                         **Page**

I.    NATURE AND STAGE OF PROCEEDINGS: RECONSIDERATION ......................... 1

II.   SUMMARY OF ARGUMENTS: *INTER ALIA*, THE UNDISPUTED BROAD SCOPE OF THE ACCUSED PRODUCTS REQUIRES RECONSIDERATION OF MPS'S DISQUALIFICATION MOTION ........................................................... 1

III.  STATEMENT OF FACTS: FISH REPRESENTED MPS IN MATTERS SUBSTANTIALLY RELATED TO THIS CASE ......................................................... 2

IV.  LEGAL STANDARD (FOR RECONSIDERATION) ................................................... 3

V.   ARGUMENT: RECONSIDERATION IS NECESSARY TO DISQUALIFY FISH BASED ON ERRORS OF FACT AND LAW ...................................................... 3

      A.     Error 1 of 3:  Clear Error of Fact ..................................................................... 4

      B.     Error 2 of 3:  Clear Error of Law ..................................................................... 8

      C.     Error 3 of 3:  Preventing Manifest Injustice .................................................. 10

VI.  SECOND REQUEST FOR *IN CAMERA* REVIEW OF DOCUMENTS PREVIOUSLY MADE AVAILABLE ..................................................................... 11

VII. CONCLUSION ............................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Sabatini v. Its Amore Corp.*,
   455 F. App'x 251 (3d Cir. 2011)........................................................................11

*Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington*,
   652 F. Supp. 1281 (D. Del. 1987).........................................................................9

*Schering-Plough Healthcare Prods. v. Neutrogena Corp.*,
   No. 09-642-SLR, 2010 U.S. Dist. LEXIS 71003 (D. Del. July 15,
   2010) ..................................................................................................................3, 4

*Quantico Tactical Inc. v. United States*,
   2020 WL 2763964 (Fed. Cl. May 8, 2020) .......................................................10

**Rules**

Fed. R. Civ. P. 59(e).................................................................................................3

MRPC Rule 1.9 ......................................................................................................10

MRPC Rule 1.10....................................................................................................10

**I.       NATURE AND STAGE OF PROCEEDINGS: RECONSIDERATION**

After Volterra filed a Complaint on December 9, 2019 and a First Amended Complaint ("FAC") on February 12, 2020, MPS filed a Motion to Disqualify (D.I. 17). Fish opposed (D.I. 35), and MPS replied (D.I. 48). On August 26, 2020, the Court denied the motion. D.I. 60. MPS respectfully now seeks reconsideration.

**II.      SUMMARY OF ARGUMENTS: *INTER ALIA*, THE UNDISPUTED BROAD SCOPE OF THE ACCUSED PRODUCTS REQUIRES RECONSIDERATION**

Due to factual and legal errors advanced by Fish, the Court denied MPS's disqualification motion. Regarding the factual error, Fish misdirected the Court about the scope of the accused products, insisting that they are narrowly confined to "the 48V-1V Power Solution" products (a new MPS product unveiled last year). In reality, Fish's allegations are much broader. Both the Complaint and the FAC more generally—*and expressly*—accuse not only "the 48V-1V Power Solution," but all MPS "DC-to-DC power converters" of infringement. D.I. 11, ¶ 2, 18. The 48V-1V Power Solution is just one product, but, as the Court acknowledged, MPS offers over 700 DC-to-DC converters. D.I. 59, 9. This is a distinction with a difference, because Fish's prior representation of MPS (for five years, from 2007 to 2012) *unquestionably involved DC-to-DC power converters*. Now, Fish has sued MPS on this exact technology. When the scope of the accused products is properly applied, there are significant material facts presented—i.e., ▇ specific issues of

1

fact, ▮ of which this Court has not yet considered—that compel a conflict-of-interest finding. That so many material facts were not considered constitutes the primary error of fact.

Regarding the legal error, the Court's requirement that MPS "identify specific information" is inconsistent with the Rules for disqualification, where identification of specific information is not required. *Id.*, 10. Therein lies the error of law.

Disqualification is also necessary to avoid manifest injustice. For *five years*, Fish was privy to the confidential development of MPS's DC-to-DC converter products. Now, Fish is adverse to MPS on the *same technology* it helped MPS develop. This is the type of unfair advantage conflicts law is meant to prevent, and it is difficult to imagine a greater manifest injustice, as conflicts go. Reconsideration is required here to correct these errors of fact and law. Thus, MPS respectfully requests that the Court amend its Order and disqualify Fish.

### III. STATEMENT OF FACTS: FISH REPRESENTED MPS IN MATTERS SUBSTANTIALLY RELATED

Fish represented MPS from 2007 through 2012 in all IP matters, including all MPS matters involving DC-to-DC power converters. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 20, ¶¶ 15-22, 26-28. Fish even

2

represented MPS in infringement actions involving DC-to-DC converters. *Id*. ¶¶ 35-53. Fish obtained patents for MPS on DC-to-DC converters. *Id*. ¶¶ 54-56.

Now, Fish represents Volterra in a patent infringement action against MPS *on the same DC-to-DC converter technology it helped MPS develop*. D.I. 11, ¶ 18 (alleging that "the infringing products include . . . Monolithic DC-to-DC Power Converters").[1] After MPS filed its original Complaint, MPS alerted Fish of the direct conflict. D.I. 18, Ex. 16. Fish responded, by stating it saw no conflict. D.I. 18, Ex. 17. Thereafter, counsel for MPS and Volterra exchanged emails and letters (throughout February 2020), and MPS finally requested a meet-and-confer on February 29, 2020 regarding disqualification, without resolution. D.I. 18, Ex. 21.

## IV.   LEGAL STANDARD

A motion for reconsideration should be granted under Fed. R. Civ. P. 59(e), when there is "a need to correct a clear error of law or fact or to prevent manifest injustice." *Schering-Plough Healthcare Prods. v. Neutrogena Corp.,* No. 09-642-SLR, 2010 U.S. Dist. LEXIS 71003 at *4-*5 (D. Del. July 15, 2010).

## V.   ARGUMENT: RECONSIDERATION IS NECESSARY BASED ON ERRORS OF FACT AND LAW

---

[1] Volterra's refusal to clarify the scope of its infringement has impacted the case: (1) this refusal is at the core MPS's Motion to Dismiss, and Volterra's response (*See* D.I. 16; D.I. 31); (2) it necessitated MPS's Motion to Strike, as Fish insists that it may accuse all DC-to-DC converters, despite representing in the disqualification motion that the only accused products are the Power Solution (*See* D.I. 38).; (3) it is at the core of the disqualification motion, as described herein.

A.     **Error 1 of 3:  Clear Error of Fact**

Volterra boldly—and incorrectly—states that "[t]he characterization of the scope of the technology in this case as 'DC-to-DC converters' comes from MPS, not from Volterra." D.I. 35 at 12. This is error. First, this allegation contradicts the plain language of the FAC, as described above. Second, if Volterra truly believed this case was confined to the "48V-1V Power Solution" product, it would have dropped all other DC-to-DC converter products from the case, but it did not and has not (although MPS requested it). As explained below, when the proper scope of Volterra's allegations is applied, factual issues (errors) compelling disqualification become relevant—i.e. facts that must be considered.

As this Court recognized, Fish represented MPS in legal matters from 2007-2012. D.I. 59, 1-2. ███████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████ ████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████ But, the Court did not address other important facts, especially those relating to Fish's broad representation of MPS regarding DC-to-DC power converters, which show that Fish did not merely represent MPS generally—it obtained specific confidential information from MPS on the

4

technology now at issue in this case. ▮

▮

▮ These must be considered.

The information Fish acquired in its representation of MPS spans three categories: (1) general advice and portfolio analysis; (2) litigation and litigation strategy; and (3) patent-prosecution strategy. *See id.* Every category implicates— and is thus tied to—*Fish's work on MPS's DC-to-DC converter technology.*

Regarding category one, Fish:



▮

Regarding category two (litigation and litigation strategy), Fish:



---

[2] These ▮ were in the original briefing. For reference, they are summarized in Exhibit A, which cites to the previously-submitted exhibits.

5

██████████████████████████████████████

████████████████

Regarding category three (patent prosecution), Fish:

- ███████████████████████████████████████

For matters falling into this third category, at least █████████████████

██████████████████████████████, Fish is deeply familiar with MPS's DC-to-DC converter technology.

Next, the Court referenced interviews between Fish and MPS personnel. D.I. 59, 2. ████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████   ████████████████████

██████████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████

Although the Court found that "Fish's representation of Monolithic never involved Volterra, Volterra patents, or the accused Power Solution product," D.I. 59 at 7, this is of limited relevance, because this case is about patent infringement and validity of DC-to-DC converter technologies. Fish counseled MPS on multiple matters on DC-to-DC converters—i.e., the same technology at issue here. ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fish represented MPS in several infringement actions. *Id*. ¶¶ 35-53. Fish even prosecuted MPS's inventions on DC-to-DC converters. *Id*. ¶¶ 54-56.

These points of conflict provide specific confidential information that would be detrimental to MPS in this case, which the Court did not address. The Court should address Fish's expansive representation of MPS, in view of the broad range of accused products *actually at issue in this case*, e.g., the DC-to-DC power converters. This Court cannot—factually and/or legally—simultaneously deny MPS's Motion to Disqualify on a limited scope for the alleged infringement, while allowing Fish to continue to assert infringement against all MPS "DC-to-DC power

7

converters." *See* D.I. 11, ¶ 18. Doing so would allow Fish to litigate against products and technologies that are the same as, or substantially related to, Fish's prior representation of MPS.

### B.     Error 2 of 3:  Clear Error of Law

Due to Volterra's misdirection on the scope of the case, the Court has misapplied the Model Rules of Professional Conduct ("MRPC") and the relevant caselaw, by not considering material facts that compel disqualification. Of note, the Court found that MPS did "not identify specific confidential information or even a specific type of confidential information that Fish likely obtained" that could be used to its detriment in this case. D.I. 59, 10. Further, the Court also noted that it "should not allow its imagination to run free" to hypothesize "conceivable but unlikely situations" where confidential information "might have been disclosed." *Id*. (citing *Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington,* 652 F. Supp. 1281, 1284 (D. Del. 1987) (internal quotations omitted)).

But, the comments to MRPC 1.10 make clear that "[a] former **client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk** that the lawyer has confidential information to use in the subsequent matter." (Emphasis added). The pertinent question is only, "might the client have disclosed to his attorney confidences which could be

8

relevant to the present action?… [C]ould … such confidences be detrimental to the former client in the current litigation?" *Satellite*, at 1283. Here, the answer is "yes."

And while the Court referenced "prior work done in a superficially similar area," (D.I. 59 at 8), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. These were all presented to the Court, but the Court did not consider the significance of each, relative to the broad allegations regarding DC-to-DC power converters. Instead, due to Volterra's misdirection, the Court erroneously found that the accused products were confined to the "48V-1V Power Solution." This is error because Fish alleged in its FAC that "[t]he infringing products **include, but are not limited to, Monolithic DC-to-DC power converters**," and that "[o]ne non-exhaustive example" includes "the 48V-1V Power Solution." D.I. 11, ¶ 18 (emphasis added); *see also Quantico Tactical Inc. v. United States*, 2020 WL 2763964, at *10 (Fed. Cl. May 8, 2020) ( "amended complaint" is plaintiff's "position in litigation").

The Court must consider each of the ▮ factual points to avoid an error of law. Otherwise, the Court's ruling creates a double standard—i.e., a denial of a disqualification request on the assumption that that the case is limited to one product, while Volterra continues to assert, and expressly refuses to drop, its broad claim to DC-to-DC power converters. Indeed, Volterra, as the Court even recognizes, alleges infringement of products *in addition to* the 48V-1V Power

9

Solution, meaning that all MPS "DC-to-DC Power Converters" are at least at risk in this case, including MPS's products that were developed or available—or derivatives of these products—when Fish represented MPS. Given what Volterra *expressly* accused of infringing in its FAC—i.e., "DC-to-DC power converters"—Fish's representation of Volterra undoubtably violates MRPC 1.9 and 1.10.

### C. Error 3 of 3: Preventing Manifest Injustice

It is undeniable that MPS disclosed "heart of the company" confidences to Fish concerning DC-to-DC converter technology during Fish's five-year representation of MPS, and Fish's representation of Volterra against MPS would be detrimental to MPS in this litigation. While there may be an ethical wall in place now—albeit an undefined one—there was no ethical wall in place when Fish performed its pre-suit investigations. D.I. 35, 13-14. The damage has been done. Allowing Fish to continue against MPS would perpetuate the manifest injustice associated with allowing a law firm that *had a fiduciary duty* to help MPS develop DC-to-DC converter technology—i.e., a firm that had access to MPS's entire patent and product portfolio and all levels of the company on DC-to-DC converters *for five years*—to sue MPS on the same subject matter it helped develop. *See Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 254-55 (3d Cir. 2011) (finding no abuse of discretion in reconsideration order where "a refusal to reconsider would result in manifest injustice"). The harm in allowing Fish to sue its former client

10

while possessing client confidences it accumulated over five years would be a manifest injustice. This injustice is further magnified by the fact that MPS never consented to Fish representing Volterra in opposition to MPS. *See* D.I. 48, 7-8.

## VI.     SECOND REQUEST FOR *IN CAMERA* REVIEW

In its opening brief, MPS explained that specific privileged work product relating to this case was available to the Court for *in camera* inspection upon request. D.I. 18, n.4; D.I. 20, ¶¶ 76-78. Because of the importance to the issues herein, and because the Court has not requested that these documents be made available, MPS again respectfully requests *in camera* review thereof.

## VII.    CONCLUSION

MPS respectfully requests that the Court grant its motion for reconsideration and disqualify Fish in this case. Fish wrongly suggests that MPS must identify a "silver bullet" for disqualification—this is not the standard for disqualification. Here, disqualification is necessary due to a "death by thousand cuts," ▮

|  |  |
|---|---|
| | */s/ Karen E. Keller* |
| | Karen E. Keller (No. 4489) |
| | Andrew E. Russell (No. 5382) |
| | Nathan R. Hoeschen (No. 6232) |
| | SHAW KELLER LLP |
| OF COUNSEL: | I.M. Pei Building |
| | 1105 North Market Street, 12th Floor |
| Lionel M. Lavenue | Wilmington, DE 19801 |
| FINNEGAN, HENDERSON, FARABOW, | (302) 298-0700 |
| GARRETT & DUNNER, LLP | kkeller@shawkeller.com |
| Two Freedom Square | arussell@shawekeller.com |
| Reston, VA 20190-5675 | nhoeschen@shawkeller.com |
| (571) 203-2750 | *Attorneys for Defendant* |

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000


Dated: September 9, 2020

12

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER
<u>REGARDING BRIEFING</u>

Pursuant to the November 6, 2019 Standing Order Regarding Briefing in All Cases, I certify that the font of this brief is Times New Roman, the type is 14-point, and the total word count is 2482 words as calculated by the word-processing system used to prepare the filing.

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1.1, I certify that defendant was waiting to hear back from plaintiff at the time of filing and therefore the parties were unable to reach agreement on the motion at the time of the filing of this motion.

> */s/ Karen E. Keller*
> Karen E. Keller (No. 4489)
> SHAW KELLER LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> (302) 298-0700
> kkeller@shawkeller.com
> arussell@shawekeller.com
> nhoeschen@shawkeller.com
> *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, hereby certify that on September 9, 2020, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**
Jack B. Blumenfeld
Megan E. Dellinger
Andrew M. Moshos
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mdellinger@mnat.com
amoshos@mnat.com

                                           */s/ Karen E. Keller*
                                           Karen E. Keller (No. 4489)
                                           Andrew E. Russell (No. 5382)
                                           Nathan R. Hoeschen (No. 6232)
                                           SHAW KELLER LLP
                                           I.M. Pei Building
                                           1105 North Market Street, 12th Floor
                                           Wilmington, DE 19801
                                           (302) 298-0700
                                           kkeller@shawkeller.com
                                           arussell@shawekeller.com
                                           nhoeschen@shawkeller.com
                                           *Attorneys for Defendant*

# EXHIBIT A

Redacted In Its Entirety