IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-2240 (CFC) |
| | ) | |
| MONOLITHIC POWER SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FISH & RICHARDSON P.C.'S ANSWER TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mdellinger@mnat.com
amoshos@mnat.com

*Attorneys for Fish & Richardson P.C.*

October 2, 2020

This case involves allegations by Volterra Semiconductor LLC ("Volterra") that Monolithic Power Systems, Inc.'s ("Monolithic's") 48V-1V DC-to-DC Power Solution (released in 2019) infringes three Volterra patents.  Monolithic moved to disqualify Fish & Richardson P.C. ("Fish") from representing Volterra based on work Fish did for Monolithic concerning other patents and other products between 2007-2012.  On August 26 (D.I. 59-60), Monolithic's motion was denied.  After careful review of the facts and law, the Court concluded that "Monolithic has not clearly demonstrated that Fish's representation of Volterra in this case is substantially related to Fish's prior work for Monolithic."  D.I. 59 at 10.

On September 9, Monolithic moved for reconsideration.   D.I. 63-64.  Monolithic's reconsideration motion relies on the same incorrect position in its motion to disqualify – that this case involves "all" Monolithic DC-to-DC converters.  D.I. 64 at 1.  Monolithic rehashes the same arguments the Court already rejected.

Monolithic did not meet and confer before filing this motion for reconsideration, as required by D. Del. LR 7.1.1.  Instead, at 5:28 p.m., Monolithic sent an email saying it "intend[ed] to file a motion for reconsideration … by 6:00" and asking whether Volterra opposes.  Ex. A.  Monolithic then certified it "was waiting to hear back … and therefore the parties were unable to reach agreement on the motion …." D.I. 64 at 14.  A meet and confer might have at least narrowed the issues without the need for Court involvement.

The next day, at a scheduling conference, the Court discussed with the parties a path to resolve the motion – Volterra would file a Second Amended Complaint ("SAC") clarifying the limited scope of the accused products, and Monolithic would withdraw this motion.  Sept. 10 Tr. ("Tr."), *e.g.*, 34:10-23.  A week later, Volterra filed the SAC (D.I. 71), but Monolithic nevertheless declined to withdraw its motion. D.I. 79 at 2.

## I.    THE MOTION SHOULD BE DENIED AS MOOT

The Court spent much of the September 10 scheduling conference discussing this motion with the parties.  The parties agreed that Volterra would amend the complaint to clarify the accused products, and Monolithic would withdraw this motion.  Tr., *e.g.*, 28:7-17, 34:4-35:7.  The Court also permitted Volterra to add new allegations of pre-complaint knowledge to support its indirect infringement allegations.  Tr., 31:7-32:12.

Specifically, Monolithic agreed as follows:

> THE COURT: I am going to inject….  They're going to limit the accused products to the products specifically identified in the currently operative complaint … plus products that are "substantially similar to those products."
> MR. STEINBERG: Agreed.
> THE COURT: All right.
> MR. STEINBERG: We would then withdraw the motion for disqualification ….

Tr., 34:14-35:3.

Pursuant to the agreement, Volterra filed the SAC, clarifying that "[t]he Accused Products are the 48V-1V Power Solution for CPU, SoC or ASIC Controller that Monolithic demonstrated at ['APEC 2019'], as well as any other substantially similar products." D.I. 71, ¶18; *see also id.*, ¶¶22, 44, 62.

For indirect infringement, Volterra pointed to Monolithic's teaching that two of its newer controller chips (MP2888A and MP2965) can operate in "couple inductor" mode (how the chips would be used to form the 48V-1V Power Solution):

- "Monolithic also … induces infringement …. Monolithic designs controllers that operate in a Couple Inductor mode, including the MP2888A controller and the MP2965 controller…. Monolithic makes the datasheets for each of these controllers publicly available, and these datasheets describe Couple Inductor mode and instruct customers how to program the controllers to operate in Couple Inductor mode…. [S]ince 2018, Monolithic has sold the MP2888A Digital, Multi-Phase PWM Controller with PMBus and PWM-VID, which 'supports couple-inductor mode to reduce the overshoot during load releasing.'" *Id.*, ¶¶24, 46, 64;

- "Monolithic further contributes to the infringement … by offering to sell, selling, and/or importing … a component of the Accused Products….

  - a. … Monolithic contributes to its customers' infringement … when it manufactures, designs, or assists in the design of a material part of the Accused Products…. Monolithic manufactures the MP2888A and MP2965 controllers that are designed to operate in Couple Inductor mode. Monolithic makes the datasheets for each of these controllers publicly available, and these datasheets describe Couple Inductor mode and instruct customers how to program the controllers to operate in Couple Inductor mode." *Id.*, ¶¶25, 47, 65.

Volterra cited YouTube videos where Monolithic describes the accused 48V-1V Power Solution. *See, e.g.,* D.I. 1 & 71, ¶24; *APEC 2019 Telecom Demo by*

*Monolithic Power Systems*, YOUTUBE (Jul. 24, 2019), https://www.youtube.com/watch?v=w7CmBr1t3Ns; *APEC 2019 Monolithic Power Systems New 48V-1V Solution for CPU, SOC, or ASIC*, YOUTUBE (May 30, 2019), https://www.youtube.com/watch?v=WIC2SDWSins. In one video, Monolithic identifies an unlabeled Monolithic digital controller as part of the second stage of the power solution. https://www.youtube.com/watch?v=WIC2SDWSins at 2:30. When Monolithic describes this same digital controller in its other YouTube video, it displays a technical drawing that indicates the controller is part of the "2nd stage: Modular Dual-phase Buck with Coupled Inductor." https://www.youtube.com/watch?v=w7CmBr1t3Ns at 1:14. That controller is thus either one of the two controller chips that support "couple inductor" mode or may have a different part number because it has been customized for a particular customer. During the status conference, Volterra identified this scenario. Tr., 7:23-8:2. At minimum, the MP2888A or MP2965 controllers are components of substantially similar products and are used to induce infringement of the agreed-upon accused products. D.I. 71, ¶¶24(b),(c)-25, 46(b),(c)-47, 64(b),(c)-65.

Monolithic declined to withdraw this motion, asserting that Volterra had gone outside the scope of the agreement by "identif[ying] two new [Monolithic]

products."[1]  But the MP2888A and MP2965 controllers are components used in the agreed-upon accused products – the 48V-1V Power Solution and substantially similar products.  Moreover, these products are relatively new, released at least five years after Fish's representation of Monolithic ended, and thus cannot themselves raise any new issues relevant to disqualification.  The SAC does not broaden the scope of the accused products, or change the facts relating to the Court's opinion denying Monolithic's motion to disqualify.  Volterra has upheld its end of the agreement, and Monolithic should be required to do the same.  Thus, the motion should be denied as moot.

## II.    IN ANY EVENT, THERE IS NO BASIS FOR THE MOTION

"[A] party seeking reconsideration must show at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion …; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *See Boston Sci. Corp. v. Nevro Corp.*, C.A. No. 16-1163-CFC, D.I. 257 at 2 (D. Del. Nov. 13, 2018) (Ex. B).  "Pursuant to Local Rule 7.1.5, a motion for reconsideration should be granted only 'sparingly.' The decision to grant such a motion lies squarely within

---

[1]    Monolithic also declined to update its motion to address the allegations of the SAC, even though it does not get a reply on a motion for reconsideration.  D. Del. LR 7.1.5.  Given Monolithic's position, Fish must address (1) a motion based on a superseded version of the complaint and (2) facts not included in the motion.

the discretion of the district court." *Softview LLC v. Apple, Inc.*, 2011 WL 6100421, at *1 (D. Del. Dec. 7, 2011). "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009). Re-argument of the same position is "not a proper basis for reconsideration." *Softview*, 2011 WL 6100421 at *2.

### 1.    The Court Made No Errors of Fact

The facts underlying the denial of the disqualification motion have not changed. Fish's work for Monolithic ended in 2012 and was not substantially related to the patents or products involved in this case. Fish was not Monolithic's "IP General Counsel." *See* D.I. 35 at 5-6; D.I. 59 at 10. Fish never worked on matters involving Volterra, Volterra patents, or the accused products. *See* D.I. 35 at 6-7; D.I. 59 at 7. Monolithic continues to point to DC-to-DC converters, a category that is too broad to support a finding of a substantial relationship, as the Court found. *See* D.I. 35 at 2-4, 12, 16-17; D.I. 59 at 9. And Monolithic's "all DC-to-DC converters" argument has clearly been overcome by the SAC, which clarifies that the accused product is the 48V-1V Power Solution (and substantially similar products) (D.I. 71, ¶¶18, 22, 44, 62), and for purposes of indirect infringement, components thereof (*id.*, ¶¶24-25, 46-47, 64-65).

The Court found Fish was not Monolithic's "IP general counsel." D.I. 59 at 10. Contrary to the facts and the Court's findings (*id.*), Monolithic argues that from

2007-2012, "Fish represented [it] … in all IP matters." D.I. 64 at 2. That is simply wrong. D.I. 35 at 5-6. Monolithic also continues to argue for disqualification based on the total amount of work done, not on any showing that any particular work might have involved the disclosure of confidences that could "be detrimental to the former client in the current litigation" (*Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987)). *See* D.I. 64 at 1-3, 4-7, 9-10 (listing matters Fish worked on for Monolithic, which were addressed during briefing (*see* D.I. 18 at 4-10; D.I. 35 at 15-20)).

Monolithic also argues that the scope of the accused products is "all [Monolithic] 'DC-to-DC power converters'" (D.I. 64 at 1): "The Court should address Fish's expansive representation of [Monolithic], in view of the broad range of accused products *actually at issue in this case*, e.g., the DC-to-DC power converters." D.I. 64 at 7 (emphasis original). Again, that is contrary to the facts and the Court's findings. *See* Tr., 9:16-22; D.I. 71, ¶18; D.I. 59 at 8-9. The Court did not err in determining that the 48V-1V Power Solution was the accused product (D.I. 59 at 8), as the SAC has now clarified. And contrary to Monolithic's assertions, the Court did not fail to consider 98.5% of the evidence raised by Monolithic. D.I. 64 at 1-2, 4-5, 9-11. The Court found Monolithic's list of matters Fish worked on overly broad and insufficient to show disclosure of confidences that could be detrimental in this matter. D.I. 59 at 10-11.

The identification of the MP2965 and MP2888A controllers, developed many years after Fish's representation of Monolithic ended in 2012,[2] in the SAC does not change the factual landscape.  These controllers are a component of the product the Court already determined was not "substantially related" to Fish's prior representation of Monolithic. The identification of these two controllers, to support claims of indirect infringement that the Court permitted Volterra to plead, provides no basis to reconsider the Court's ruling or to disqualify Fish.

Monolithic inappropriately uses a joint status report to introduce additional facts and argument (D.I. 79 at 2) – none of these statements should be considered. But if considered, they are simply the newest version of Monolithic's rejected "IP general counsel" argument.   *See id.* ("Fish's work from 2007 to 2012 was pervasive ….").   Monolithic's jumble of dates, product and patent numbers boils down to:

- 2007:  Fish reviews Monolithic's technology, interviews employees

- 2011-12:  Some of those employees develop controllers, Perkins Coie prosecutes those patents;[3] Monolithic still a Fish client

---

[2]    With release dates of April 2018 (MP2965 (Ex. C at 4)) and July 2018 (MP2888A (Ex. D at 3)).

[3]    Ex. E at 1-5.

That is, Monolithic tries to link controllers from 2018 to projects that existed during Fish's representation of Monolithic but (1) fails to provide any evidence that these 2011/2012 products were the basis for the 2018 controllers named in the SAC and (2) fails to connect them to any work that Fish performed for Monolithic.[4] *Id.*; *see also generally* Exhibits to D.I. 19-21 (no mention of these controllers). "[J]udges in this District … tend to require a party who is moving to disqualify counsel in a patent matter to demonstrate a fairly close legal and factual nexus between the present and prior representations." *Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 689 (D. Del. 2016). Monolithic's latest vague generalizations do not establish that nexus.

## 2. The Court Correctly Applied the Law

Nor did the Court make a clear error of law. Here, Monolithic cites an incorrect legal standard. D.I. 64 at 2, 8-9. Monolithic had to identify evidence that there were confidences disclosed that could prove detrimental in this litigation. *See Walker Digital, LLC v. Axis Commc'ns AB*, 2012 WL 5878668, at *1 (D. Del. Nov. 21, 2012) ("Motions to disqualify are 'generally disfavored' and, therefore, require the moving party to show clearly that 'continued representation would be

---

[4] Monolithic's implication that a Technology Review in 2007 involved disclosure of confidences regarding a product not developed until 2011 is facially illogical.

impermissible.'").  The movant must show "[m]ore facts of a relationship [] than a simple statement of prior work done in a superficially similar area." *Satellite*, 652 F. Supp. at 1284.  Monolithic merely lists matters Fish previously worked on and relies on volume to argue for a conflict.  Knowledge of a party's general strategy, without more, is insufficient to support a substantial relationship. *See Sonos, Inc. v. D&M Holdings Inc.*, 2015 WL 5277194, at *4 (D. Del. Sep. 9, 2015) ("At most, Defendants disclosed their general strategy for handling patent litigation, which is not enough to warrant disqualification.").  Nor did the Court require Monolithic to identify "the confidential information learned by the lawyer," as Monolithic asserts. D.I. 64 at 8.  Rather, the Court correctly looked for, and failed to find, more "than a simple statement of prior work done in a superficially similar area" (*Satellite*, 652 F. Supp. at 1284), or even a "specific *type* of confidential information" that could be detrimental to Monolithic (D.I. 59 at 10 (emphasis added)).

### 3.    There Is No Manifest Injustice

Finally, there is no manifest injustice.  Monolithic re-hashes its rejected "IP general counsel" position, vaguely asserting that Fish had access to "all levels of the company" and the "entire patent and product portfolio."  D.I. 64 at 10.  But Fish ended its representation of Monolithic in 2012. D.I. 59 at 4.  The accused product

(and its components) were not released until 2018-19.  D.I. 64 at 1; Exs. C & D.[5]

Monolithic has pointed to no confidential information possessed by Fish that could

be used to Monolithic's detriment (*see* D.I. 59 at 10), and an ethical wall is in place.

Monolithic asserts that "[t]he damage has been done," because that wall was not in

place during pre-suit investigations.  D.I. 64 at 10.  But in its motion to dismiss,

Monolithic argued that Volterra's pleadings were deficient because they were based

only on publicly available YouTube videos (*see, e.g.*, D.I. 16 at 11-13), and any

claim of manifest injustice is belied by Monolithic's agreement at the scheduling

conference to withdraw this motion in exchange for clarification on scope of the

case. Tr., *e.g.*, 28:7-17, 34:4-35:7.

## III.    CONCLUSION

Fish respectfully requests that the Court deny Monolithic's motion for

reconsideration.

---

[5]      The two controllers included in the SAC do not alter the analysis.  *Supra* §II.1.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mdellinger@mnat.com
amoshos@mnat.com

*Attorneys for Fish & Richardson P.C.*

October 2, 2020

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 2,498 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the brief.  The word count does not include the cover page or the counsel blocks.

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 2, 2020, upon the following in the manner indicated:

Karen E. Keller, Esquire                    *VIA ELECTRONIC MAIL*
Andrew Russell, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Monolithic Power*
*Systems, Inc.*

Bob Steinberg, Esquire                     *VIA ELECTRONIC MAIL*
Matthew J. Moore, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
*Attorneys for Defendant Monolithic Power*
*Systems, Inc.*

Lionel M. Lavenue, Esquire             *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW,
GARRETT
    & DUNNER, LLP
Two Freedom Square
Reston, VA  20190-5675
*Attorneys for Defendant Monolithic Power*
*Systems, Inc.*

Surendra K. Ravula, Esquire                    *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
*Attorneys for Defendant Monolithic Power*
*Systems, Inc.*

R. Benjamin Cassady, Esquire                   *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW,
GARRETT
   & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
*Attorneys for Defendant Monolithic Power*
*Systems, Inc.*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)

2