IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 19-2240-CFC-SRF |
| MONOLITHIC POWER SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE THE SCHEDULED
TRIAL DATE OR, IN THE ALTERNATIVE, STAY THE CASE**

OF COUNSEL:
Bob Steinberg
Matthew J. Moore
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
(571) 203-2750

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: February 12, 2021

# **TABLE OF CONTENTS**

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ................................................1

II.  SUMMARY OF THE ARGUMENT ............................................................2

III. STATEMENT OF FACTS .........................................................................5

    A.   PTAB Proceedings Status ..................................................................5

    B.   District Court Status ...........................................................................7

IV.  LEGAL STANDARDS .............................................................................7

V.   ARGUMENT ...........................................................................................9

    A.   MPS Is Seeking To Vacate The Trial Date Or, In The
          Alternative, Stay The Case Because This Relief Will Increase
          The Likelihood The PTAB Will Review Its Diligently Filed,
          Meritorious Petitions ..........................................................................10

    B.   All Three Factors Weigh Towards A Stay or Vacated Trial Date
          In This Case .....................................................................................13

          1.   A Stay Will Resolve the Case or Simplify the Issues for
                  Trial ....................................................................................14

          2.   The Early Stage of This Case Favors a Stay .............................16

          3.   A Stay Will Not Unduly Prejudice or Tactically
                  Disadvantage Volterra ...........................................................20

VI.  CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*454 Life Sciences Corp. v. Ion Torrent Systems, Inc.*,
  C.A. No. 15-595, 2016 WL 6594083 (D. Del. Nov. 7, 2016) ............................7

*Allergan v. Prollenium*,
  1:20-cv-00104-CFC (D. Del. July 16, 2020) ......................................................9

*Allergan v. Prollenium*,
  1:19-cv-00126-CFC (D. Del. May 20, 2020) ......................................................9

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 11 .................................................................................10

*Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*,
  C.A. Nos. 12-1107, 12-1109, 12-1110, 2014 WL 1369721 (D. Del.
  Apr. 7, 2014) ...............................................................................................20, 21

*British Telecommunications PLC v. IAC/InterActiveCorp*,
  C.A. No. 18-366-WCB, 2020 WL 5517283 (D. Del. Sept. 11,
  2020) ..................................................................................................................7

*Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  No. CV 18-1510, 2020 WL 3470473 (D. Del. June 25, 2020) ....................1, 22

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
  C.A. No. 12-1701, 2015 WL 1284203 (D. Del. Mar. 18, 2015) ....................8, 9

*Chestnut Hill Sound Inc. v. Apple Inc.*,
  C.A. No. 15-261, D.I. 46 (D. Del. Dec. 3, 2015) ................................................8

*Deere & Company v. AGCO Corp.*,
  1:18-cv-00827-CFC (D. Del. Dec. 18, 2019) ......................................................9

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  C.A. No. 18-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ......................8, 9

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
  C.A. No. 14-803, 2015 WL 9854845 (D. Del. Aug. 11, 2015) ....................8, 19

*Monolithic Power Systems, Inc. v. Volterra Semiconductor, LLC*,
    IPR2020-01368 (PTAB December 9, 2020) ...................................................3, 4

*Monolithic Power Systems, Inc. v. Volterra Semiconductor, LLC*,
    IPR2020-01368 (PTAB December 23, 2020) ....................................................3

*Murata Mach. USA v. Daifuku Co.*,
    830 F.3d 1357 (Fed. Cir. 2016) ..........................................................................8

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    C.A. No. 12-1744, 2013 WL 3353984 (D. Del. July 2, 2013) ......................8, 14

*Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*,
    IPR2020-00921, Paper 9 (PTAB Nov. 16, 2020)...................................3, 10, 11

*Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*,
    PGR2020-00071, Paper 11 (PTAB January 13, 2021)...................................3, 11

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
    C.A. No. 12-1461, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ..............8, 14, 20

*RAI Strategic Holdings, Inc. v. Altria Client Services LLC*,
    No. 1:20-cv-393 (E.D. Va. filed Apr. 9, 2020)...................................................2

*Sand Revolution II, LLC v. Continental Intermodal Group - Trucking
    LLC*,
    IPR2019-01393 Paper 12 (PTAB Feb. 5, 2020)................................................12

*Sand Revolution II, LLC v. Continental Intermodal Group - Trucking
    LLC*,
    IPR2019-01393, Paper 24 (June 16, 2020)..................................................12, 13

*Uniloc 2017 LLC v. Vudu, Inc.*,
    1:19-cv-00183-CFC (D. Del. Mar. 26, 2020).....................................................9

*VirtualAgility Inc. v. Salesforce.com*,
    759 F.3d 1307 (Fed. Cir. 2014) ........................................................................22

## STATUTES

35 U.S.C. § 315(b) ..................................................................................................21

35 U.S.C. § 315(e)(2)...............................................................................................15

35 U.S.C. § 325(e) ................................................................................12

## I.    NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement dispute between Monolithic Power Systems, Inc. ("MPS" or "Defendant") and Volterra Semiconductor LLC ("Volterra" or "Plaintiff").  MPS filed *inter partes* review (IPR) petitions at the Patent Trial and Appeal Board (PTAB) in July 2020, challenging the validity of the patents that Volterra has asserted against MPS—U.S. Patent Nos. 6,362,986 ("the '986 patent"); 7,525,408 ("the '408 patent"); and 7,772,955 ("the '955 patent") (collectively, the "Asserted Patents").  The statutory deadline for the PTAB's decision to institute IPR proceedings is March 9, 2021, and if instituted, a final ruling on the validity of the Asserted Patents would be due on March 9, 2022.  While MPS has yet to answer Volterra's Complaint, the Court entered a Scheduling Order on September 17, 2020, setting a trial date of February 14, 2022.  D.I. 69.  MPS now moves to vacate this scheduled trial date or, in the alternative, to stay the case pending the PTAB's institution decisions for the IPRs.  A short pause for about a month is fully justified here because the "relatively short" stay would not unduly prejudice Volterra. *Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV 18-1510, 2020 WL 3470473, at *6 (D. Del. June 25, 2020).

MPS respectfully requests the Court grant this motion expeditiously before March 9, 2021, to enable the PTAB to fully consider the Court's order and determine whether IPR proceedings should be instituted on the merits.

## II.    SUMMARY OF THE ARGUMENT

This case and the pending IPRs present issues concerning a change in PTAB practice, first identified during the Court's status conference in this case on September 10, 2020.  Under the PTAB's new practice, PTAB petitioners are more likely precluded from seeking PTAB review for patents asserted in forums that schedule a trial date prior to the PTAB's final decision (even if that trial date is not likely to hold and regardless of how diligent a petitioner is in filing a meritorious PTAB petition) unless the forum sets a later trial date, grants a pre-institution stay, or vacates the trial date pending the PTAB's institution of review.  Because of the current trial date, it is now apparent that the PTAB will likely not institute IPR proceedings in this case, regardless of the merits, unless the Court (1) vacates the scheduled trial date to indicate that it will stay the case after PTAB proceedings are instituted, or (2) actually stays the case.  Because consideration of the IPR petitions on the merits could greatly simplify the case, MPS asks the Court to grant either of these options for relief.

A recent case in the Eastern District of Virginia highlights the importance of the relief MPS now seeks.[1]  There, the PTAB denied institution of a first petition because the district court's projected trial date preceded the date for the PTAB's

---

[1] *See RAI Strategic Holdings, Inc. v. Altria Client Services LLC*, No. 1:20-cv-393 (E.D. Va. filed Apr. 9, 2020).

final decision.[2]  The defendant then immediately moved for a stay in the Virginia

court to force the PTAB to evaluate the merits of a second IPR arising from the same

litigation and subject matter.  Reasoning that the scheduled trial date will likely slip,

the Virginia court proactively granted the stay. The PTAB reversed course with the

second IPR.  No longer having to consider the competing trial date, the PTAB

focused on the merits and granted institution.[3]  If the Court grants the requested

relief, the PTAB will likely reach the merits of MPS's IPR petitions here as well,

and completely resolve (or materially simplify) the issues in this case.

MPS stated that Volterra was likely to use the Court's anticipated schedule to

argue that MPS's IPRs should be denied on a procedural basis.  Exhibit C (Hr'g

Transcript) at 39:22-42:1.  Volterra's  filings with the PTAB show MPS's concerns

were justified.  Volterra argues that MPS's petitions should be denied because "[t]he

[Delaware] jury trial would be completed before the projected date of a final decision

[at the PTAB]."[4]  Even though the Court has previously indicated that it typically

---

[2] *See Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, IPR2020-00921, Paper 9 (PTAB Nov. 16, 2020) (Exhibit A).

[3] *See Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, PGR2020-00071, Paper 11 (PTAB Jan. 13, 2021) (Exhibit B).

[4] *See Monolithic Power Systems, Inc. v. Volterra Semiconductor, LLC*, IPR2020-01368, Patent Owner Preliminary Response at 5 (PTAB December 9, 2020) (Exhibit D).  *See generally Monolithic Power Systems, Inc. v. Volterra Semiconductor, LLC*, IPR2020-01368, Reply Brief (PTAB December 23, 2020) (Exhibit E).

has granted post-institution stays pending resolution of IPR proceedings,[5] Volterra claims the opposite in its PTAB pleading stating that "it is unlikely for Judge Connolly to stay the Related Litigation" and concludes that "litigation will occur contemporaneously on *two fronts* at the District of Delaware and the PTAB" after the PTAB institutes MPS's IPRs.[6]  By latching onto this procedural loophole, Volterra hopes to avoid the merits of MPS's IPRs, thereby foreclosing the possibility of a timely resolution of a significant portion of this case.

The likely resolution or simplification of issues is particularly important in this case because it involves patents related to highly technical, complex technology, power conversion using coupled inductors—a subject that is especially suited for adjudication by the PTAB.  Indeed, one of the primary reasons the PTAB was created was to have technically trained administrative patent judges (with specific subject matter expertise) adjudicate the validity of patents.

As discussed below, each of the stay factors justify granting the relief sought by MPS.  First, by granting the requested relief, the case is more likely to be resolved or simplified, reducing the costs and burden of this litigation to the parties and the

---

[5] Exhibit C (Hr'g Transcript) at 42:25-43:1  ("If there was an institution of review, I've granted stays in such circumstances.")

[6] *See Monolithic Power Systems, Inc. v. Volterra Semiconductor, LLC*, IPR2020-01368, Patent Owner Preliminary Response at 7 (PTAB December 9, 2020) (Exhibit D).

Court and obviating the need for this Court to consider the subject matter particularly well-suited for the PTAB.[7] Second, this case is still in its early stages. MPS's motion to dismiss is still pending, and as such it still has not answered Volterra's complaint or asserted its counterclaims. Finally, vacating the trial date for about a month will not prejudice Volterra, given the Court can choose to reset the trial date if the PTAB denies institution on the merits.

MPS's five IPR petitions challenge the validity of all issued claims in the Asserted Patents. By granting the requested relief, the Court would increase the likelihood that MPS's well-founded and diligently-filed petitions receive consideration on the merits, and are not effectively barred on *pro forma* procedural grounds by virtue of this Court's scheduled trial date.

## III. STATEMENT OF FACTS

### A. PTAB Proceedings Status

Although the statute permits IPR petitions challenging the validity of the Asserted Patents to be filed up to one year from the filing of the Complaint, MPS filed IPR petitions on July 28, 2020, nearly five months before the deadline. MPS

---

[7] The petitions include distinct invalidity theories and MPS stipulated that it will not pursue any invalidity grounds that it actually raised or any grounds that it reasonably could have raised in the IPRs, effectively removing any potential overlap in the invalidity arguments presented to the PTAB and this Court. Exhibit F (December 23, 2020 Letter from Counsel for MPS to Counsel for Volterra).

addressed all three Asserted Patents in five detailed petitions.  Volterra filed a Patent Owner Preliminary Response for each petition on December 9, 2020.  MPS filed a reply brief on December 23, 2020 and Volterra filed a sur-reply on December 31, 2020.  The statutory deadline for the PTAB's decision to institute IPR proceedings is March 9, 2021, and if instituted, a final ruling on the validity of the Asserted Patents is due on March 9, 2022.

_The '986 Patent_.  MPS filed two petitions, with each petition challenging all 40 claims of the '986 patent.  Each petition includes five grounds relying on a different primary prior art reference.  The two petitions for the '986 patent are comprised of 75 and 86 pages of in-depth analysis showing why each of the 40 issued claims (including all the asserted claims) are invalid.  Each petition is supported by almost two dozen exhibits, including detailed expert declarations of 159 and 170 pages.

_The '955 Patent_.  MPS filed two petitions that together challenge all 29 claims of the '955 patent.  Each petition includes multiple grounds relying on several different primary prior art references.  The two petitions for the '955 patent are comprised of 104 and 118 pages of in-depth analysis showing why each of the 29 issued claims (including all the asserted claims) are invalid.  Each petition is supported by more than two dozen exhibits, including detailed expert declarations of 143 and 158 pages.

*The '408 Patent.*  MPS filed one petition challenging all 20 claims of the '408 patent.  The petition includes five grounds that collectively rely on two different primary prior art references.  The petition for the '408 patent is comprised of 119 pages of in-depth analysis showing why each of the 20 issued claims (including all the asserted claims) are invalid.  The petition is supported by more than two dozen exhibits, including a detailed expert declaration of 177 pages.

### B.  District Court Status

Volterra filed its Complaint on December 9, 2019.  D.I. 1.  The Court entered a Scheduling Order on September 17, 2020, setting a tentative trial date of February 14, 2022.  D.I. 69.  Because the Court is currently considering MPS's Motion to Dismiss the Second Amended Complaint (SAC) and a Motion to Disqualify Volterra's counsel, MPS has not yet answered Volterra's SAC or asserted its counterclaims (which it plans to include in its answer).  D.I. 83, 100.  While the parties have exchanged invalidity and infringement contentions, the Court has not made any substantive determinations and the claim construction process will not begin until late March 2021.  *Id.*

### IV.  LEGAL STANDARDS

District courts have the inherent power and discretion to stay proceedings or vacate the trial date.  *454 Life Sciences Corp. v. Ion Torrent Systems, Inc.*, C.A. No. 15-595, 2016 WL 6594083, at *2 (D. Del. Nov. 7, 2016); *see also British*

Telecommunications PLC v. IAC/InterActiveCorp, C.A. No. 18-366-WCB, 2020 WL 5517283, at *2 (D. Del. Sept. 11, 2020) (the court has inherent power to control its docket). Moreover, courts in this District use a three-factor test to decide whether a stay is appropriate for a case pending IPR. Courts analyze: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay or a clear tactical disadvantage." *CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, C.A. No. 12-1701, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015). However, the Court has the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452, 2019 WL 3943058, at *4 (D. Del. Aug. 21, 2019) (quoting *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016)).

This Court has previously granted pre-institution stays where such a stay would similarly promote judicial efficiency. *See, e.g.*, *Miics & Partners Am. Inc. v. Toshiba Corp.*, C.A. No. 14-803, 2015 WL 9854845, at *1-*2 (D. Del. Aug. 11, 2015) (granting pre-institution stay); *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461, 2014 WL 3819458, at *2, *6 (D. Del. Jan. 15, 2014) (same); *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744, 2013 WL 3353984, at*2, *5 (D. Del. July 2, 2013) (same); *Chestnut Hill Sound Inc. v.*

8

*Apple Inc.*, C.A. No. 15-261, D.I. 46 (D. Del. Dec. 3, 2015) (staying the case until at least the PTAB decides whether to institute an IPR).

## V.    ARGUMENT

Although the PTAB has not yet instituted review, the Court should grant MPS's motion.  Volterra's recent arguments at the PTAB confirm its attempt to use a procedural loophole to prevent the PTAB from reaching the merits of MPS's IPR petitions.  Unless this motion is granted, the PTAB may not decide the petitions on the merits, unnecessarily complicating this case.

This Court has routinely granted stays after an IPR has been instituted.[8] Numerous considerations supporting granting of this relief prior to institution in this instance, including MPS's diligence in filing its IPR petitions, the strength of those petitions, and the PTAB's decisions against instituting based solely on the scheduled district court trial date, are particularly compelling in this case.  *See IOENGINE*, 2019 WL 3943058, at *4.  Additionally, all three of the traditional stay factors likewise strongly favor a stay, as discussed below.  *CallWave Commc'ns*, 2015 WL 1284203, at *1.

---

[8] *See Deere & Company v. AGCO Corp.*, 1:18-cv-00827-CFC (D. Del. Dec. 18, 2019); *Allergan v. Prollenium*, 1:20-cv-00104-CFC (D. Del. July 16, 2020); *Allergan v. Prollenium*, 1:19-cv-00126-CFC (D. Del. May 20, 2020); *Uniloc 2017 LLC v. Vudu, Inc.*, 1:19-cv-00183-CFC (D. Del. Mar. 26, 2020).

**A.**   **MPS Is Seeking To Vacate The Trial Date Or, In The Alternative, Stay The Case Because This Relief Will Increase The Likelihood The PTAB Will Review Its Diligently Filed, Meritorious Petitions**

Based on a change in PTAB practice, the PTAB will likely not consider instituting MPS's IPR petitions unless this motion is granted because this Court's projected trial date is less than a month before the PTAB's projected final decision date. *Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, IPR2020-00921, Paper 9 (PTAB Nov. 16, 2020) (Exhibit A).

The PTAB precedential[9] guidance instructs PTAB panels to balance six "non-dispositive factors" relating to "efficiency, fairness, and the merits" when deciding whether to institute review in light of a parallel district court proceeding. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 at 5-6 (Exhibit G). Nonetheless, one particular factor has proved dispositive in this changed PTAB practice, namely Factor 2, "the proximity of the court's trial date to the Board's projected statutory deadline for a final written decision[.]" *See, e.g.*, *Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, IPR2020-00921, Paper 9 (PTAB Nov. 16, 2020) (Exhibit A). If the trial date is scheduled before the projected statutory deadline, institution is more likely denied regardless of the strength of the petition or the other five factors.

---

[9] "A precedential decision is binding Board authority in subsequent matters involving similar facts or issues." (Exhibit H, PTAB Standard Operating Procedure 2 at 11.)

*Philip Morris* illustrates both the potential harm of this new practice, and the Court's power to alleviate it.  In the *Philip Morris* case, the PTAB denied institution of a "***particularly strong***" petition filed diligently after the complaint was served because it projected that the district court would hold a trial on validity before the PTAB would issue its final decision.  *Id*.  The district court then stayed the case to allow the PTAB to decide whether to institute IPR proceedings on the merits.  *See RAI Strategic Holdings, Inc. v. Altria Client Services LLC*, No. 1:20-cv-393, Docket No. 432 (E.D. Va. filed Apr. 9, 2020).  After the stay, a second PTAB petition (which was filed after the first petition and covers the same subject matter) was instituted.  *See Philip Morris Products, S.A. v. RAI Strategic Holdings, Inc.*, PGR2020-00071, Paper 11 (PTAB Jan. 13, 2021) (Exhibit B).  In granting institution, the PTAB expressly noted that the "district court's stay of the proceeding allays concerns about inefficiency and duplication of effort."  *Id*.

Just like in *Philip Morris*, if the Court vacates the scheduled trial date or stays the case as to the Asserted Patents, the PTAB will likely institute IPR proceedings because the trial date becomes a non-issue.  This is particularly true because MPS has already alleviated any potential overlap in the issues before the PTAB and the district court. MPS stipulated to the full extent of the statutory estoppel (if instituted), precluding MPS from asserting in Court duplicative validity challenges "on any ground that the petitioner raised or reasonably could have raised" during the IPR

11

proceedings.[10]  This stipulation will save substantial Court resources and time by eliminating these issues from this case.

Stipulations of this kind have supported institution before.   In *Sand Revolution*, the Board originally denied institution because the court's trial date was nine months prior to PTAB's projected final decision date and the court would decide the exact same validity issues.  *Sand Revolution II, LLC v. Continental Intermodal Group - Trucking LLC*, IPR2019-01393 Paper 12 (PTAB Feb. 5, 2020) (Exhibit I, "*Sand Revolution I*").  On rehearing, however, the PTAB reversed course and granted institution because the petitioner reduced overlap with a narrow stipulation and the court's trial date was delayed and became uncertain due to, among other things, the COVID pandemic.  *Sand Revolution II, LLC v. Continental Intermodal Group - Trucking LLC*, IPR2019-01393, Paper 24 (June 16, 2020) (Exhibit J, "*Sand Revolution II*").

*Sand Revolution II* is not an outlier.  The Director of the USPTO designated it an "Informative" case to provide guidance to parties and counsel.  *Sand Revolution*

---

[10] To reduce the duplication of effort, MPS ***stipulated that it will not pursue any invalidity grounds that "it actually raised" or "reasonably could have raised" in the IPR***.  Exhibit F (December 23, 2020 Letter from Counsel for MPS to Counsel for Volterra) (Emphasis added.)  Therefore, this Court will not have to address any invalidity issues to the full extent of the IPR estoppel provision, even during the pendency of any instituted IPR proceeding.  *See* 35 U.S.C. 325(e).

*II* (cover page); Exhibit H (PTAB SOP 2, explaining that "Informative decisions set forth Board norms that should be followed in most cases, absent justification"). Relatively few of the PTAB's tens of thousands of IPR decisions are so designated.

MPS therefore reasonably expects that, should the Court grant its requested relief, the PTAB will institute its petitions, just as it did in its "Informative" *Sand Revolution* case. Two factors here are even more compelling than in *Sand Revolution* that warranted reconsideration and reversal. *First*, Sand Revolution stipulated that it would drop its IPR grounds from its court case if the PTAB instituted IPR. *Sand Revolution II* at 11-12. A stipulation much broader than the stipulation in *Sand Revolution* exists here (as noted in footnote 10), making the PTAB's decision to institute IPR proceedings even more likely. *Second,* the court's trial was no longer scheduled for the previous date, mainly due to COVID-related delays that do not affect the PTAB's schedule. *Sand Revolution II* at 9. By granting MPS's requested relief, that issue will be resolved with even more certainty than in *Sand Revolution*. In that case, trial was still scheduled over four months before the PTAB's final decision due date, but the schedule was uncertain due to the pandemic. *Id*.

### B. All Three Factors Weigh Towards A Stay or Vacated Trial Date In This Case

Whether the Court choses to stay the case or vacate the trial date, as addressed in detail below, all three of the factors considered in this District favor the requested

relief: (A) the stay will resolve the case or simplify the issues for trial; (B) the case is still in its infancy as discovery is not yet complete and the claim construction process is still months away; and (C) the limited stay will not unduly prejudice or tactically disadvantage Volterra.

### 1.    A Stay Will Resolve the Case or Simplify the Issues for Trial

The PTAB proceedings will resolve the case entirely or, at a minimum, will materially simplify the issues that the Court needs to resolve in this case. This factor, therefore, weighs heavily in favor of a stay. *Neste Oil OYJ*, 2013 WL 3353984, at *4 (granting a pre-institution stay to simplify the issues for trial).

The simplification factor weighs especially in favor of a stay because there are "multiple possible outcomes" of an IPR proceeding, and each of them simplify the litigation in at least some manner. *Princeton Digital*, 2014 WL 3819458, at *2. If all asserted claims are found invalid by the PTAB, then "the 'litigation would be simplified because it would be concluded.'" *Id.* If only a subset of the asserted claims are found invalid, then that would "reduce the number of issues left to be litigated." *Id.* In particular, those invalidated claims would not be the subject of further discovery, expert reports, summary judgment motions, or trial on infringement or invalidity in this action. Even if no claims are found to be invalid, "litigation should be somewhat simplified due to the estoppel effect that the IPR proceeding would have." *Id.* The statutory estoppel would preclude MPS from

14

asserting in Court any challenged "claim is invalid on any ground that the petitioner raised or reasonably could have raised" during the IPR proceedings. 35 U.S.C. § 315(e)(2). Moreover, MPS has already stipulated that it will drop any invalidity grounds that "it actually raised" or "reasonably could have raised" in the IPR, thereby guaranteeing that if the IPRs are instituted, the Court will no longer have to address a broad swath of invalidity issues once institution is decided in less than a month's time. Exhibit F (December 23, 2020 Letter from Counsel for MPS to Counsel for Volterra).

Moreover, the Court will have the benefit of the PTAB's final decision in the IPR to streamline any remaining invalidity issues even if some or all claims survive review. This consideration is all the more important because the subject matter of the Asserted Patents is highly technical and relates to power converters using coupled inductors with multiphase switching techniques with various topologies, utilizing complicated rules and science of magnetic inductance. The technically-trained administrative patent judges at the PTAB with specific subject matter expertise are particularly well-suited to fairly and efficiently adjudicate the merits of the Asserted Patents' validity.

If the Court vacates the scheduled trial date or grants a stay, the PTAB will more likely grant institution of the IPR proceedings. For the above-stated reasons, such an outcome is ***guaranteed*** to simplify the issues for trial and could lead to

resolution of the entire case.  Thus, this factor weighs strongly in favor of granting MPS's motion.

### 2.    The Early Stage of This Case Favors a Stay

This case is still in its early stages and much work remains to be done. Although the parties are now more than a year into this litigation, the case is still in its infancy due to (1) a series of extensions agreed to by the parties and (2) MPS's pre-answer motions that the Court has not yet fully resolved, including a motion to dismiss because of Volterra's failure to adequately plead infringement and a motion to disqualify Volterra's counsel.  D.I. 83, 100.  Resolution of these threshold issues will dictate how MPS answers and the counterclaims at issue in the case.  MPS plans on including its counterclaims with its answer.

The schedule adopted by the Court is as follows:

## APPENDIX A:

## CHART OF RELEVANT DEADLINES

| Deadline | Item |
|---|---|
| 09/29/2020 | Exchange rule 26(a) initial disclosures (see ¶ 2) |
| 10/1/2020 | Application to the court for protective order (see ¶ 11) |
| 10/14/2020 | Disclosure of asserted claims and infringement contentions & attendant document production (see ¶¶ 3-4) |
| 12/1/2020 | Invalidity contentions & attendant document production (see ¶¶5-6) |
| 03/19/2021 | Exchange list of claim terms/phrases for constructions and proposed constructions thereof (see ¶ 15) |
| 04/02/2021 | Parties to file joint claim construction chart (see ¶ 15) |
| 04/23/2021 | Plaintiff to serve opening claim construction brief (see ¶ 16) |
| 05/21/2021 | Defendant to serve answering claim construction brief (see ¶ 16) |
| 06/04/2021 | Plaintiff to serve its reply claim construction brief (see ¶ 16) |
| 06/08/2021 | Deadline to file motions to join other parties and amend or supplement pleadings |
| 06/11/2021 | Defendant to serve its surreply claim construction brief (see ¶ 16) |
| 06/18/2021 | Parties to file joint claim construction brief (see ¶ 16) |
| 06/25/2021 | Parties to file joint amended joint claim construction chart (see ¶ 17) |
| 07/27/2021 | Claim construction hearing |
| 05/28/2021 | Document production deadline (see ¶ 9b) |
| 08/06/2021 | Discovery cut off (see ¶ 9a) |

| 08/27/2021 | Parties with initial burden of proof to serve initial federal rule 26(a)(2) disclosure of expert testimony (see ¶ 19a) |
| 09/24/2021 | Parties to serve rebuttal expert disclosures (see ¶ 19a) |
| 10/08/2021 | Parties to serve reply expert disclosures (see ¶ 19a) |
| 10/29/2021 | Expert deposition deadline (see ¶ 19a) |
| ~~11/12/2021~~ 10/19/21 | Case dispositive motion deadline, including *Daubert* motions (see ¶¶ 19b, 20a) |
| ~~12/10/2021~~ 11/9/21 | Case dispositive answering briefs due |
| ~~12/17/2021~~ 11/23/21 | Case dispositive reply briefs due |
| 01/12/2022 | Parties to file joint proposed pretrial order, proposed voir dire questions, preliminary jury instructions, final jury instructions, and special verdict forms (see ¶¶ 22, 25) |
| 02/02/2022 | Pretrial Conference (see ¶ 22) |
| 02/14/2022 | Trial (see ¶ 26) |

D.I. 69.

As seen in the schedule above, the parties have just begun discovery, claim construction briefing begins more than two months from now, a *Markman* hearing is more than five months away, and the trial date is scheduled in a year. The parties discussed the Court's proposed trial date at the scheduling conference on September 10, 2020. Exhibit C (Hr'g Transcript). Although the Court did not, at the time, entertain MPS's concern that Volterra would likely use the Court's schedule to argue that MPS's IPR petitions should be denied without reaching the merits, it is now clear from Volterra's recent PTAB filings that is exactly what it is doing. *Id*.

18

Indeed, an objective analysis of the statistics shows that the scheduled trial date in this District is unlikely to hold. *See* Letter from counsel for MPS to Hon. Andrei Iancu (Nov. 17, 2020) at 5-6, https://beta.regulations.gov/comment/PTO-C-2020-0055-0381 (Exhibit K). Based on data compiled from over 1,000 cases filed between September 2018 to September 2019 in this District, only two cases proceeded to trial on the originally-scheduled date. *Id*. at 5. Seventy-eight percent of the originally-scheduled trial dates were shared between at least two cases and, in many instances, there were more than two cases scheduled on the same day. *Id*. at 5-6. In many instances, a rescheduled trial date was delayed for a second, third, or even fourth time. *Id*. at 6. In addition to being unreliable indicators of when a validity dispute will actually be resolved in this District, rescheduled trial dates may not appear on the Court's docket until ***after*** the PTAB has already denied institution based on the earlier trial date. *Id*. For example, trial dates in this District were not rescheduled on average until 16 months after the complaint was filed, or about 10 months after the trial date was first scheduled. *Id*.

Further still, although the parties' have served invalidity and infringement contentions, the Court has not resolved any substantive issues on those fronts. Thus, the second factor heavily favors a stay. *See, e.g.*, *Miics & Partners Am. Inc.*, 2015 WL 9854845, at *1 (granting pre-institution stay and finding that "[w]hile discovery has started and there are trial dates, there have been no depositions, claim

construction briefing has not started (although it is about to), and expert discovery is a long way off. The case is relatively young. The major expenses of the parties are yet to come."); *Princeton Digital*, 2014 WL 3819458, at *3-4 (second factor "favors a stay" even before PTAB institution where discovery had begun, certain initial disclosures had been exchanged, plaintiff's preliminary infringement contentions had been served, and an early *Markman* proceeding had been held).  In view of the substantial amount of work that lies ahead for the parties and the Court (especially with respect to the validity issues), vacating the trial date or granting a stay is appropriate in this case to allow the PTAB to review the merits of the petitions.

Thus, this factor likewise weighs strongly in favor of granting MPS's motion.

### 3.     A Stay Will Not Unduly Prejudice or Tactically Disadvantage Volterra

Vacating the scheduled trial date or staying the case for the short amount of time until the PTAB's institution decisions issue (in about a month) will not cause Volterra undue prejudice and will not place it at a clear tactical disadvantage. Although staying the case pending the institution of the IPR proceedings may prolong the scheduled final disposition of this dispute, "[p]otential delay does not in itself establish undue prejudice to the non-movant." *Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*, C.A. Nos. 12-1107, 12-1109, 12-1110, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014).

MPS filed its petitions well before the one-year deadline mandated by statute. *See* 35 U.S.C. § 315(b). "The more diligent a defendant is in seeking *inter partes* review, the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the IPR petition to be a dilatory tactic." *Bonutti*, 2014 WL 1369721, at *2. Volterra commenced the present action on December 9, 2019. D.I. 1. The IPR petitions were filed on July 28, 2020—nearly five months before the applicable deadline. MPS diligently filed this motion after both parties filed additional briefing at the PTAB to address the prejudice to MPS resulting from the PTAB's new practice. As evidenced by those prompt filings, the Court should find no improper dilatory motive behind Defendant's actions. Moreover, there is little tactical disadvantage to Volterra since the litigation is still at an early stage with a great deal of work left to be done, and any stay should the institution be denied will not last long and will be very short.

The PTAB will issue its institution decision for the Asserted Patents by March 9, 2021, at which time the parties could be directed to submit a joint status report. If the PTAB institutes review of the Asserted Patents (as MPS believes it will), the stay should remain in place (or be granted if the Court vacated the trial date). But if the PTAB denies review for procedural timing, despite the Court's granting this motion, MPS will seek reconsideration from the PTAB and the Court could consider the appropriateness of lifting the stay or rescheduling the trial date at that time. A short

pause to let this play out for about a month is fully justified here because the "relatively short" stay would not unduly prejudice Volterra. *Calamos Asset Mgmt., Inc.*, 2020 WL 3470473, at *6.

Furthermore, vacating the trial date will not prejudice Volterra's ability to obtain relief. To the extent Volterra complains about a delay in potential monetary relief, such delays rarely prejudice a plaintiff because they "will not diminish monetary damages to which [Volterra] will be entitled if it succeeds in its infringement suit." *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). If Volterra has claims to pursue after the IPRs are resolved, vacating the trial date or staying the case will not limit its ability to recover damages, provided it can show infringement.

Thus, this factor likewise weighs strongly in favor of granting MPS's motion.

## VI.   CONCLUSION

For the foregoing reasons, MPS respectfully requests that the Court vacate the scheduled trial date or, in the alternative, stay the case until the PTAB's institution decision for IPR. The parties should further be directed to file a joint status report five days following each decision by the PTAB regarding the Asserted Patents, so that the Court and the parties may revisit the appropriateness of a stay.

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Bob Steinberg
Matthew J. Moore
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2750

R. Benjamin Cassady
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: February 12, 2021

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER
## <u>REGARDING BRIEFING</u>

Pursuant to the November 6, 2019 Standing Order Regarding Briefing in All

Cases, I certify that the font of this brief is Times New Roman, the type is 14-point,

and the total word count is 4,928 words as calculated by the word-processing system

used to prepare the filing.

*/s/ Nathan R. Hoeschen*

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATION OF MEET AND CONFER

Pursuant to Local Rule 7.1.1., MPS certifies that a reasonable effort has been made to reach agreement with Volterra on the matters set forth in the above motion. The parties participated in a meet and confer via telephone conference on February 9, 2021.

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com

Dated: February 12, 2021                    *Attorneys for Defendant*

25