## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VOLTERRA SEMICONDUCTOR
LLC,

           Plaintiff,

    v.

MONOLITHIC POWER SYSTEMS,
INC.,

          Defendant.

C.A. No. 19-2240-CFC



**REDACTED VERSION**

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO
## SERVE AMENDED INFRINGEMENT CONTENTIONS

FISH & RICHARDSON P.C.
Robert M. Oakes (#5217)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Telephone: (302) 652-5070
oakes@fr.com

David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel:  (650) 839-5070
barkan@fr.com

Dated:  June 16, 2021

**TABLE OF CONTENTS**

I.     Introduction .................................................................................................... 1

II.    Nature and Stage of the Proceedings ............................................................. 3

III.   Summary of the Argument .............................................................................. 4

IV.    Statement of the Facts .................................................................................... 5

V.     Argument ........................................................................................................ 6

       A.     Volterra Diligently Pursued Evidence Regarding the Nvidia Power
              Solution Incorporated in the Proposed Amendment ............................. 7

       B.     The Amendment Does Not Unduly Prejudice MPS ............................. 12

VI.    Conclusion .................................................................................................... 15

CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1 ...................................... 17

CERTIFICATE OF COMPLIANCE WITH STANDING ORDER
REGARDING BRIEFING ........................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Hanmi USA, Inc., No*.
  CIV.A. 11-760 JAP, 2011 WL 5526009 (D.N.J. Nov. 14, 2011) ...............11, 15

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
  No. CV 10- 1045 (RMB/JS), 2012 WL 12904381 (D. Del. Feb. 27, 2012) ....6, 7

*Biodelivery Sciences Int'l Inc. v. Chemo Research S.L.*,
  No. 19-444- CFC, D.I. 257 (D. Del. 2020) ........................................................ 7

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  No. CV 18-366-WCB, 2020 WL 3047989 (D. Del. June 8, 2020)
  (Bryson, J.) .................................................................................................... 7

*Cochlear Ltd. v. Oticon Med. AB, No. CV 18-6684 BRM DEA*,
  2019 WL 3429610 (D.N.J. July 29, 2019) ...................................................... 15

*In re Fetzima*,
  Civil Action No. 2:17-cv-10230-ES-SCM (D.N.J. Jan. 28, 2020) ................... 12

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12-cv-03587-WHO, 2014 WL 491745 (N.D. Cal. Feb. 5, 2014) .............. 11

*Helsinn Healthcare S.A. v. Dr. Reddy's Lab'ys Ltd*.,
  No. CIV.A. 11-3962 MLC, 2013 WL 3336859 (D.N.J. July 2, 2013) ............. 11

*Janssen Pharms., Inc. v. Sandoz, Inc.*,
  *No*. CV 11-7247 (FLW), 2012 WL 12903176 (D.N.J. Oct. 25, 2012) ............. 11

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  No. 14-cv-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016)..... 11

*LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*,
  No. CIV. 10-4615, 2014 WL 284238 (D.N.J. Jan. 24, 2014).......................... 11

*OpenDNS, Inc. v. Select Notifications Media*,
  LLC, No. C11-05101 EJD (HRL), 2013 WL 2422623
  (N.D. Cal. Jun. 3, 2013) ................................................................................ 15

*Radware Ltd. v. F5 Networks, Inc.*,
   No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014) .............. 12

*TFH Publications, Inc. v. Doskocil Mfg. Co.*,
   705 F. Supp. 2d 361 (D.N.J. 2010) ........................................................11, 12

*Twilio, Inc. v. Telesign Corp.*,
   No.16-cv-06925-LHK (SVK), 2017 WL 3581186
   (N.D. Cal. Aug. 18, 2017) ................................................................................ 15

*Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*,
   No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ........ 12

## I.      Introduction

Pursuant to Pursuant to ¶ 7 of the Scheduling Order (D.I. 69), Volterra

Semiconductor LLC ("Volterra") respectfully moves this Court for leave to serve

Amended Infringement Contentions on Monolithic Power Systems, Inc. ("MPS").

Good cause for the proposed amendment arises from the "recent discovery of

nonpublic information about the Accused Instrumentality which was not discovered,

despite diligent efforts, before the service of the Infringement Contentions." (*Id.* at ¶

7.) More specifically, the proposed amendments address nonpublic technical details

relating to both of the accused products in this case: the 48V-1V Power Solution

demonstrated by MPS at APEC 2019 (the "APEC Power Solution") and the Nvidia

version of the 48V-1V Power Solution (the "Nvidia Power Solution") (collectively,

the "Accused Products"). These nonpublic details were identified in discovery and in

documents produced as recently as April and May 2021. Volterra's Initial

Infringement Contentions encompassed both the APEC Power Solution and

"substantially similar products," which both parties understood to include the Nvidia

Power Solution, as illustrated by correspondence from MPS's counsel.

MPS's initial productions of technical documents on October 10 through

December 11, 2020, pursuant to ¶ 6 of the Scheduling Order, included documents

that MPS' counsel at first identified as related to the Nvidia Power Solution but later

clarified related to the APEC Power Solution. Volterra promptly served requests for

documents seeking technical documents specific to both products. After various

1

meet and confers, MPS eventually produced technical documents relating to the

Nvidia Power Solution and previously undisclosed coupled inductors in April and

May 2021.  The bulk of these documents related to communications with MPS, its

customer Nvidia, and coupled inductor manufacturers ██████████████████

████  The documents described the technical details of the Nvidia Power Solution

and its coupled inductors.  The timing of MPS' production arose largely due to

████████████████████████████████████████████████████████████████

████████████████████████████████████.  On May 28, 2021,

mere weeks after receiving these documents, Volterra served MPS with its proposed

amended contentions.  On June 4, 2021, the parties met and conferred, and MPS

stated that it intends to oppose this motion.

Volterra was diligent both in its pursuit of the information its amendment relies

on and in moving to amend after obtaining the information.  Volterra's infringement

theories are directed to MPS' 48V-1V Power Solutions, and Volterra diligently

pursued discovery related to these products.  Volterra could not have prepared the

amended contentions any sooner because MPS gave conflicting answers as to what

products its technical documents related to and because MPS' prior productions

lacked the level of detail provided in the April and May productions.  Volterra's

Amended Infringement Contentions rely on these recently produced documents.

MPS would not be prejudiced from Volterra's amendment.  There is no

question that MPS has long known that the Nvidia Power Solution is an Accused

Product.  Indeed, MPS' counsel admitted the Nvidia Power Solution was an Accused

Product in correspondence dated December 23, 2020.  (Ex. A, Letter fr. Lavanue to

Oakes (" ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ ").)

Moreover, the majority of the new technical details cited in the amended contentions

rely on documents that were recently produced, owing to ██████████████████

██████████████████ .  The amendment presents no new patents, no new

asserted claims, and no new accused products.

Volterra respectfully requests that the Court grant it leave to serve Amended

Infringement Contentions based upon this information obtained in discovery.

## II.    Nature and Stage of the Proceedings

On December 9, 2019, Volterra filed its original complaint, alleging

infringement of three patents by MPS' "DC-to-DC power converters" including "the

48V-1V Power Solution for CPU, SoC or ASIC Controller that Monolithic

demonstrated at the 2019 IEEE Applied Power Electronics Conference and

Exposition."  (D.I. 1 at ¶ 18.)  MPS filed a motion to strike this recitation of the

accused products (D.I. 37), and during the scheduling conference on September 20,

2020, MPS suggested Volterra limit its accused products "to the 48 volt to one volt

power solution and substantially similar products with a different name."  (Ex. Q at

14:11-15:2.)  Volterra agreed to this suggestion, noting that "these things may have

different names and they may be somewhat customized for each customer." (*Id.* at 15:23-24.)

On September 17, 2020, Volterra amended its complaint to limit the Accused Products to the APEC Power Solution "as well as any other substantially similar products." (D.I. 71 at ¶ 18.) Volterra further elaborated that "during the course of Monolithic's work with potential customer ███████ in 2018, an ███████ engineer raised Volterra's coupled inductor patents with Monolithic." (*Id.* at ¶¶ 23(c), 45(c), 63(c).) On October 14, 2020, Volterra served its Infringement Contentions and once again defined the Accused Products as MPS' APEC Power Solution "as well as any other substantially similar products." (Ex. B (Volterra's Disclosures of Asserted Claims and Infringement Contentions) at 2.)

Fact discovery is scheduled to close on August 6, 2021, and opening and rebuttal expert reports are due on August 27 and September 24, 2021, respectively. (D.I. 69 at ¶ 19.) The deadline for dispositive motions is October 19, 2021. (*Id.* at ¶ 20.) Trial is set for February 14, 2022. (*Id.* at ¶ 26.)

## III. Summary of the Argument

Good cause to amend exists for several reasons:

1) Volterra acted diligently to discover the information cited in its proposed amendment. On October 30, 2020, MPS produced documents which suggested the existence of a Power Solution customized for Nvidia, and Volterra promptly sought additional discovery related to this product. MPS produced technical documentation and correspondence related to this product—the Nvidia Power Solution—in April and May of 2021. These productions also identified previously ███████ ███████

4

▇▇▇▇▇▇ that are relied upon in the proposed amended contentions.

2)    Volterra promptly moved to amend its Infringement Contentions.  On May 28, 2021, Volterra provided MPS with its proposed Amended Infringement Contentions that relied heavily on documents produced in April and May 2021.  On June 4, 2021, MPS stated it opposed Volterra's proposed amendment.

3)    MPS is not prejudiced by the proposed amendment.  MPS itself identified the Nvidia Power Solution as an Accused Product at least as early as December 17, 2020 and cannot feign surprise or the need to expend additional resources.  Nor will any delay result from the requested amendment, as the close of fact discovery is not for two months, a *Markman* hearing has not been held, and MPS' non-infringement expert report is not due until September 24, 2021.

## IV.   Statement of the Facts

The Asserted Patents generally relate to the field of coupled inductors.  The Accused Products are the 48V-1V Power Solution for CPU, SoC or ASIC Controller that MPS demonstrated at the 2019 IEEE Applied Power Electronics Conference and Exposition ("APEC 2019") in Anaheim, CA, as well as any other substantially similar products.  (D.I. 71 at ¶18.)  The Nvidia Power Solution is a version of the Accused Product designed by MPS specifically for Nvidia.  Counsel for MPS referred to the Nvidia Power Solution as an Accused Product in correspondence with Volterra's counsel as early as December 23, 2020.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Volterra received technical documents and correspondence related to components of the Accused Products in April and May 2021.  These productions also identified previously ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Upon receiving the technical documents and correspondence from MPS,

Volterra reviewed the materials and promptly prepared Amended Infringement Contentions. (Ex. R.)[1]  On May 28, 2021, Volterra informed MPS of its intention to amend its Infringement Contentions, attaching the proposed amendments.  On June 2, 2021, MPS responded and offered to meet and confer regarding the proposed amendments.  The meet and confer was conducted on June 4, 2021, at which MPS stated that it opposed the proposed amendments.  Volterra then prepared the instant motion seeking leave to amend.

## V.    Argument

Good cause exists for leave to amend Volterra's Infringement Contentions. The Scheduling Order expressly contemplates amendments to Infringement Contentions upon a timely showing of good cause.  (D.I. 69 at ¶ 7.)  Due to the "dearth of Delaware cases interpreting what 'good cause' means in th[e] context" of moving to amend contentions, Delaware courts apply the "good cause" standard as applied in New Jersey.  *Bayer Cropscience AG v. Dow AgroSciences LLC*, No. CV 10- 1045 (RMB/JS), 2012 WL 12904381, at *1 (D. Del. Feb. 27, 2012).   The Scheduling Order in this case provides non-exhaustive examples of good cause that are analogous to the circumstances here, including the "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before service of the Infringement Contentions."  (D.I. 69 at ¶ 7.)

_____

[1] The attached exhibit is the Amended Infringement Contentions presented as a redline showing additions to the Initial Infringement Contentions.

To show good cause, a party must establish diligence, and there must not be undue prejudice to the non-moving party. *Bayer Cropscience AG*, 2012 WL 12904381, at *1. Here, Volterra has been diligent and MPS would not be unduly prejudiced. Indeed, any prejudice would be of MPS' own making.

### A.   Volterra Diligently Pursued Evidence Regarding the Nvidia Power Solution Incorporated in the Proposed Amendment

"In determining whether a party has demonstrated good cause to amend its contentions, a key factor that courts have considered is whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *British Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020) (Bryson, J.) (citing *Bayer Cropscience AG*, 2012 WL 12904381, at *1.); *see also Biodelivery Sciences Int'l Inc. v. Chemo Research S.L.*, No. 19-444- CFC, D.I. 257 at 2 (D. Del. 2020). Diligence has two components. The first measures a moving party's actions to discover that an amendment is required. The second measures whether the moving party acted promptly upon discovering an amendment is required. *See Bayer Cropscience AG*, 2012 WL 12904381, at *2. A party need not, however, "demonstrate perfect diligence in order to show good cause for an amendment." *Id.*

### I.   *Volterra diligently sought information related to the Nvidia Power Solution.*

Volterra was diligent in seeking discovery related to the Accused Products, particularly the Nvidia Power Solution. The following timeline of events shows that

7

Volterra recently discovered nonpublic information despite its diligent efforts before serving its original Infringement Contentions:

| | |
|---|---|
| Sept. 10, 2020 | Telephonic Scheduling Conference |
| Sept. 14, 2020 | Volterra issued its First Set of Interrogatories and Requests for Production.  The first interrogatory requested MPS to identify each product that was "substantially similar to the 48V-1V Power Solution for CPU, SoC or ASIC Controller" demonstrated at APEC 2019.  (Ex. C at 1, 4.) |
| Oct. 14, 2020 | MPS replied to Volterra's interrogatory by only identifying "MPS's 48V-1V Power Solution for CPU, SoC or ASIC Controller."  (Ex. D at 6.)  MPS has not supplemented this response. |
| Oct. 14, 2020 | Volterra served its Initial Infringement Contentions. |
| Oct. 30, 2020 | ██████████████████████████████<br>██████████████████████████████<br>██████████████████████████████████<br>██████████████████████████████ |
| Dec. 1-11, 2020 | MPS claimed that it had completed producing its "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality."  (D.I. 69 at ¶ 6.) |
| Dec. 17, 2020 | Volterra cited ██████████████████████<br>█████████████████████████████████████<br>███████████████████████████████████ _<br>████████████████████████████████████<br>██████████████████████████ |
| Dec. 23, 2020 | MPS acknowledged █████████████████████<br>█████████████████████████████████<br>██████████████████████████████████████<br>██████████████████████████████████████<br>███████████████████████████████<br>██████████████████████████████████████<br>████████████████████████████████<br>█████████████████████ |

| | |
|---|---|
| Dec. 2020-<br>Jan. 2021 | Volterra and MPS exchanged correspondence related to document productions and the Nvidia Power Solution. ██<br>████████████████████████████<br>████████████████████████████<br>███████████████████████<br>████████████████████████████<br>██████████████████████████████<br>██████████████████████████<br>██████████████████████████<br>████████████████████████<br>███████████████ |
| Jan. 19, 2021 | Volterra issued its Second Set of Interrogatories and Requests for Production, explicitly targeting the "Nvidia Accused Product"—<br>████████████████████████████<br>██████████████████████████████<br>███████████████ |
| Jan. 25, 2021 | █████████████████████████<br>█████████████████████████<br>█████████████████████ |
| Feb. 18, 2021 | MPS responded to Volterra's Second Set of Interrogatories and Requests for Production, claiming ███████████████<br>████████████████████████████<br>████████████████████████████<br>███████████████████████<br>████████████████████████████<br>████████████████████████████<br>██████████████████████<br>██████████████ |
| Feb. 26, 2021 | MPS once again represented that █████████████████<br>██████████████████████████████<br>███████████████████████████<br>████████ |
| Mar. 24, 2021 | MPS stated that it will make the APEC Power Solution available for inspection. (*Id.*) |

| Apr. 10, 2021 | MPS informed Volterra that the APEC Power Solution was "lost."  (Ex. L.) |
|---|---|
| Apr. 14, 2021 | MPS produced new technical documents and correspondence with ███████████████████████████ ██████████████████████████████ ██████████████████████████ |
| Apr. 22, 2021 | MPS produced additional technical documents and correspondence related to ██████████████████ ████████████████████████████ █████████████████████ |
| May 12, 2021 | MPS produced what it represented was the last of its technical documents and correspondence related to ██████████ ██████████████████████████████ ████████████████████████ ██████████████████████████████ █████████████████ |
| May 13, 2021 | MPS identified a complete list ███████████████████ ████████████████████ |
| May 28, 2021 | Volterra served MPS with Amended Infringement Contentions. (Ex. R) |
| Jun. 4, 2021 | Meet and Confer regarding Amended Infringement Contentions |

In sum, Volterra diligently sought information related to the Accused Products, including the Nvidia Power Solution, much of which MPS only provided as of April-May 2021.

## II.    *Volterra timely moved to amend its Infringement Contentions*

Volterra diligently moved to amend its Infringement Contentions.  Volterra served MPS with its proposed amendments on May 28, 2021—a mere two weeks after MPS produced what it represented was the last set of technical documents

██████████████████████████████.  Volterra accepted MPS's representation

████████████████████████ and acted promptly once MPS finally produced

those central technical documents starting in mid-April and extending into mid-May.

The proposed amendments could not have been prepared until these technical

documents were produced by MPS.  On June 4, 2021, Volterra explained its need to

amend in a telephonic meet and confer, and MPS stated its intent to oppose.  Volterra

then promptly prepared this motion for leave to amend.

Volterra's diligence compares favorably to longer periods which courts found

diligent. *See*, *e.g.*, *LMT Mercer Grp., Inc. v. Maine Ornamental, LL*C, No. CIV. 10-

4615, 2014 WL 284238, at *7 (D.N.J. Jan. 24, 2014) (finding four months delay

demonstrated diligence); *Helsinn Healthcare S.A. v. Dr. Reddy's Lab'ys Ltd*., No.

CIV.A. 11-3962 MLC, 2013 WL 3336859, at *5 (D.N.J. July 2, 2013) (two month

delay held to be satisfy diligence); *AstraZeneca AB v. Hanmi USA, Inc., No*. CIV.A.

11-760 JAP, 2011 WL 5526009, at *3 (D.N.J. Nov. 14, 2011) (two and a half month

delay found diligent); *Janssen Pharms., Inc. v. Sandoz, Inc., No*. CV 11-7247

(FLW), 2012 WL 12903176, at *3 (D.N.J. Oct. 25, 2012) (finding one month delay

diligent); *TFH Publications, Inc. v. Doskocil Mfg. Co*., 705 F. Supp. 2d 361, 367

(D.N.J. 2010) (two months found to be diligent); *Karl Storz Endoscopy-Am., Inc. v.

Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *6 (N.D. Cal.

May 13, 2016) (finding 15 months diligent); *Fujifilm Corp. v. Motorola Mobility

LLC*, No. 12-cv-03587-WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014)

11

(eight months between discovery of the prior art and the motion to amend);

*Radware Ltd. v. F5 Networks, Inc.*, No. C-13-2024 RMW, 2014 WL 3728482, at *2

(N.D. Cal. July 28, 2014) (finding three months diligent); *Vasudevan Software, Inc.*

*v. Int'l Bus. Machs. Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263, at *3-4

(N.D. Cal. Feb. 18, 2011) (finding four months diligent).  Thus, Volterra has

demonstrated diligence in seeking amendment.

### B.     The Amendment Does Not Unduly Prejudice MPS

To evaluate whether an amendment would impose undue prejudice, courts

consider whether the amendment would require the plaintiff to (1) "expend

significant additional resources, or (2) significantly delay the resolution of the

dispute." *TFH Publ'ns, Inc. v. Doskocil Mfg. Co.*, 705 F. Supp. 2d 361, 366 (D.N.J.

2010).  "Denial of leave to amend requires that the additional work required be

substantial or undue." *In re Fetzima*, Civil Action No. 2:17-cv-10230-ES-SCM, at

*10 (D.N.J. Jan. 28, 2020).  Here, additional expense or delay would be minimal, and

the additional work, if any, would not be substantial or undue.

MPS has long known that the Nvidia Power Solution was an Accused

Product.  MPS itself identified the Nvidia Power Solution as a version of the

Accused Product in its December 23, 2021 correspondence.  (*See* Ex. A.)  Even

before this, MPS was aware that the suit encompassed 48V-1V Power Solutions,

including customer-specific versions.  Indeed, Volterra brought up this very issue at

the scheduling conference.  (*See* Ex. Q, Hr. Tr. at 15:23-24 ("these things may have

different names and they may be somewhat customized for each customer").)

During the conference, MPS agreed the accused products included substantially

similar products.  (*Id.* at 17:12-15 ("let's limit it to substantially similar parts,

whether or not they have the same name.  If we could amend the complaint that

way, that would solve the issues we're having.").)  The Court specifically asked

MPS to agree to the substantially similar language, and it did:

> THE COURT: Okay . . . Plaintiff goes ahead and files an amended
> complaint which narrows the scope of the complaint to the product that's
> currently identified in the operative complaint **plus products that are
> substantially similar to them**. I think it's clear from the conversation
> we've had today that that will moot the motion to disqualify. And,
> **defendant, you agree with that. Correct**?
>
> MR. STEINBERG: **Yes**.
>
> THE COURT: Okay.

(*Id.* at 28:7-18 (emphasis added).)

Pursuant to the agreement reached at the telephonic scheduling conference,

Volterra amended its complaint on September 17, 2020, accusing the APEC Power

Solution "as well as any other substantially similar products."  (D.I. 71 ¶ 18.)  On

October 14, 2020, Volterra served its Infringement Contentions, again identifying

the APEC Power Solution and "as well as any other substantially similar products."

Ex. B at 2.  Thus, while MPS is unlikely to expend any additional resources—much

less a "significant" amount—arising from the need to consider the supplemental

evidence related to the Nvidia Power Solution, any additional work would not be of

Volterra's doing, as MPS was well aware of the relevance of the Nvidia Power

Solution.  Additionally, granting leave to amend will not delay resolution of the dispute.  The Court has not yet held a *Markman* hearing, and fact discovery does not close until August 6, 2021.  (D.I. 69 at ¶ 9(a).)  Moreover, MPS' expert report concerning non-infringement is not due until September 24, 2021.  (*Id.* at ¶ 19(a).)

Furthermore, MPS has acknowledged that the Nvidia Power Solution is a *version* of the Accused Products, and Volterra's amendment does not alter its infringement theory.  (*See* Ex. A, Ltr. fr. Lavanue to Oaks, dated Dec. 23, 2020.)  MPS is thus not prejudiced by the explicit inclusion of the Nvidia Power Solution as an Accused Product, nor by the inclusion of activities surrounding the design, manufacture, and use of the Nvidia Power Solution.

Volterra's inclusion of additional information related to the APEC Power Solution similarly presents no prejudice.  Volterra intended to inspect the APEC Power Solution board and amend its contentions accordingly, but MPS delayed in informing Volterra that the board was "lost."  Volterra diligently and consistently sought to inspect the board.  (*See* Ex. K.)  And as recently as March 24, 2021, MPS' counsel represented that the APEC Power Solution would be made available for inspection.  (*Id.*)  It was not until April 10, 2021 that MPS indicated the board was lost, and it has failed to explain the circumstances of the loss or why it delayed communicating this information when Volterra first requested an inspection in September 2020.  (Ex. L.)

The absence of prejudice to MPS is a sufficient basis alone for granting leave

14

to amend.  *See Cochlear Ltd. v. Oticon Med. AB, No. CV 18-6684 BRM DEA, 2019 WL 3429610, at \*13* (D.N.J. July 29, 2019) (granting motion to amend based on lack of undue prejudice without commenting on diligence); *see also Twilio, Inc. v. Telesign Corp.*, No.16-cv-06925-LHK (SVK), 2017 WL 3581186, at\*4 (N.D. Cal. Aug. 18, 2017) (granting leave to amend contentions because of no prejudice, despite a lack of diligence by the movant); *OpenDNS, Inc. v. Select Notifications Media*, LLC, No. C11-05101 EJD (HRL), 2013 WL 2422623, at \*2 (N.D. Cal. Jun. 3, 2013) ("[E]ven if the movant was arguably not diligent, the court may still grant leave to amend."); *AstraZeneca AB v. Hanmi USA, Inc.*, No. 11-760 (JAP), 2011 WL 5526009, at \*7 (D.N.J. Nov. 14, 2011) ("[I]t would appear that much of the infringement and infringement analysis undertaken by Hanmi with respect to the earlier asserted independent claims will also apply to newly added dependent claims 3 and 10.").  Not only has MPS not suffered any undue prejudice, but to the extent any prejudice exists, it is of MPS' own making.

## VI.    Conclusion

Volterra respectfully requests that the Court grant its motion for leave to serve Amended Infringement Contentions.

Dated:  June 16, 2020                    FISH & RICHARDSON P.C.

By: */s/ Robert M. Oakes*
     Robert M. Oakes (#5217)
     222 Delaware Avenue, 17th Floor
     P.O. Box 1114
     Wilmington, DE 19899
     Telephone:  (302) 652-5070
     oakes@fr.com

     David M. Barkan
     500 Arguello Street, Suite 500
     Redwood City, CA 94063
     Tel:  (650) 839-5070
     barkan@fr.com

*Counsel for Plaintiff Volterra*
*Semiconductor Inc.*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

I, Robert M. Oakes, hereby certify that the subject of this motion was discussed with MPS' counsel. On June 4, 2021, MPS' counsel informed Volterra that MPS opposes this motion.

*/s/ Robert M. Oakes*        
Robert M. Oakes (#5217)

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER REGARDING BRIEFING

I hereby certify that this brief complies with the type, font, and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases entered on November 6, 2019. The word-processing system used to prepare the attached motion identifies the word count as 3,853 words.

*/s/ Robert M. Oakes*
Robert M. Oakes (#5217)

## CERTIFICATE OF SERVICE

I, Robert M. Oakes, hereby certify that on June 16, 2021, the foregoing

document was served on all counsel of record via electronic mail.

FISH & RICHARDSON P.C.

By: */s/ Robert M. Oakes*
        Robert M. Oakes (#5217)
        222 Delaware Avenue, 17th Floor
        Wilmington, DE 19801
        (302) 652-5070 (Telephone)
        (302) 652-0607 (Facsimile)
        oakes@fr.com

        David M. Barkan
        500 Arguello Street, Suite 500
        Redwood City, CA 94063
        (650) 839-5070
        barkan@fr.com

*COUNSEL FOR PLAINTIFF*
*VOLTERRA SEMICONDUCTOR LLC*