# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR LLC,<br><br>Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC.,<br><br>Defendant. | REDACTED - PUBLIC VERSION<br><br>C.A. No. 19-2240-CFC |

# PLAINTIFF VOLTERRA SEMICONDUCTOR LLC'S
# REPLY BRIEF IN SUPPORT OF PLANITIFF'S MOTION
# FOR LEAVE TO SERVE AMENDED INFRINGEMENT CONTENTIONS

FISH & RICHARDSON PC

Robert M. Oakes (#5217)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Tel: (302) 652-5070
oakes@fr.com

David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel:  (650) 839-5070
barkan@fr.com

Dated:  July 8, 2021

*Counsel for Plaintiff Volterra Semiconductor LLC*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................... 1

II. ARGUMENT ......................................................................................... 2

   A. MPS Misrepresents the Record ...................................................... 2

      1. MPS Misrepresents Volterra's Knowledge ............................. 2

      2. MPS Misrepresents Volterra's Contentions ............................ 5

      3. MPS Misrepresents ▇▇▇▇▇▇▇▇ ....................................................... 6

   B. MPS Faces No Prejudice ................................................................ 7

III. CONCLUSION ....................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Neomagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002) ......................................................................... 10

## I.  INTRODUCTION

MPS' Opposition depends on false premises, uncited allegations, and half-truths.  MPS points to numerous documents in its Opposition, but none identify what Volterra accuses in its amended contentions—MPS' decision to use coupled inductors in the design of the Nvidia Power Solution and its role developing those coupled inductors.  The documents disclosing those decisions only came to light in MPS' April and May 2021 productions.

MPS also  (D.I. 178-1 at Ex. D at MAXIM_00011579 (emphasis added).)  The ▇ and is no basis to oppose Volterra's amendment.

MPS further fails to identify any legitimate prejudice from Volterra's proposed amendment.  Indeed, in the September 10, 2020 Scheduling Conference, Volterra specifically called out "customer-specific" versions of the 48-volt-to-1-volt Power Solution as well as the inclusion of "substantially similar products" in the scope of Accused Products.  And the Nvidia Power Solution is indeed substantially similar as established by the discovery MPS produced in April and

May. Both power solutions are 48-volt-to-1-volt power converters that include the same model of coupled inductor, the same ▬▬▬▬▬▬▬▬▬▬ chips, and the same family of MPS controllers, which are interchangeable by MPS' own admission.

## II. ARGUMENT

### A. MPS Misrepresents the Record

#### 1. MPS Misrepresents Volterra's Knowledge

MPS inaccurately alleges that Volterra "knew about the very NVIDIA product (that called for a coupled inductor) that it now seeks to accuse well before this lawsuit." (Opp. at 11.) That is wrong for two reasons. The ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.* at 5 (citing D.I. 178-1 at Ex. C at NVIDIA_0000075-86).)

Indeed, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. T (MPS_DE-00010172); Ex. U (MPS_DE-00010161).) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.* at MPS_DE-00010171; D.I. 178-1 at Ex. C at NVIDIA_0000086.) In contrast, MPS' Opposition claims that the "coupled inductors used in the NVIDIA Power Solution" are described in a document with

2

███████████████████████████

███████████████████. (Opp. at 9; D.I. 178-1 at Ex. J at MPS_DE-00000915.) MPS is thus mistaken that this is an RFI for "the very NVIDIA product . . . that [Volterra] now seeks to accuse." (Opp. at 11.)

The ███████████████████████████████ (*Id.*) It contains ███████████████████████████████████████ ██████████ (D.I. 178-1 at Ex. C at Nvidia_0000086.) This ██████ could not have revealed MPS' decision to use coupled inductors in the Nvidia Accused Product—a decision which came to light when MPS produced its correspondence with Nvidia and coupled inductor manufacturers in April and May 2021. (D.I. 166-1 at Exs. M-O, R at 4-9.)

MPS further claims to have "produced technical documents detailing the specifications of the coupled inductors used in the NVIDIA Power Solution" on October 30, 2020 (Opp. at 9), but MPS cites to a single document that includes a mere *footnote* regarding ████████████████████████ ████████████ (D.I. 178-1 at Ex. J at MPS_DE-00000917). Even more significantly, as early as December 17, 2020, Volterra pointed out the footnote referencing ██████████████████████ and informed MPS that this power solution "would also be an Accused Product." (D.I. 178-1 at Ex. A at 1.) MPS' claim of surprise is untenable against this discovery record. The timing of

3

Volterra's proposed amendment was the result of one thing and one thing only—MPS taking an additional six months to produce the documents regarding the Nvidia Power Solution that Volterra had been demanding since December. (D.I. 166-1 at Exs. O, S at 7, 9.)[1]

MPS also changed its story throughout discovery. MPS first identified an ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ as describing the Nvidia Accused Product ***but then retracted that identification on January 25, 2021***. (*Id.* at Exs. G, J.) Volterra responded to MPS's change in position by requesting the "files for the Nvidia Power Solution" (Ex. V), but MPS asserted that it "does not possess, and cannot produce, any of the requested files for products other than the MPS Power Solution" (Ex. W). And despite Volterra's voluminous discovery requests, MPS has still not produced any schematics, assembly drawings, or bill of materials for the Nvidia Accused Product.

In contrast to the single document produced in October 2020, the April and May 2021 productions describe the design process of this coupled inductor as well as six other coupled inductors that MPS considered for use in the Nvidia Accused Product. For example, MPS produced an email on May 12, 2021 that describes

---

[1] The parties held numerous meet and confer sessions. (D.I. 166-1 at Ex. K (referencing meet and confers on February 11, February 26, March 24).) Volterra did not pursue a motion to compel based on MPS' representations that it was seeking consent from the relevant third parties to produce the documents. (*See id.* (referencing notice periods expiring in March and April).)

4

██████████████████████████████████████████████

██████████████████████████████████ (D.I. 166-1 at Ex. R at 4-5.) This is highly relevant to Claim 17 of the '986 Patent, which recites "A method for *reducing ripple* in a DC-to-DC converter." MPS also produced design specifications it provided to coupled inductor manufacturers and communications ██████████████████████████████████—evidencing its intent to induce infringement. (*Id.* at Exs. M-O, R at 5-6.) None of these documents were produced before April 2021.

### 2. MPS Misrepresents Volterra's Contentions

MPS inaccurately states that it "produced the technical information that Volterra's 'new' amendments now rely on at least as early as October 30, 2020." (Opp. at 17.) But the October 30, 2020 production included only a single document referencing ██████ obliquely in a footnote. (D.I. 178-1 at Ex. J at MPS_DE-00000917.) In contrast, MPS' April and May 2021 productions detailed MPS' design for the Nvidia Accused Product, including ████████████ ██████████████████████████████████. (D.I. 166-1 at Exs. M-O, R at 4-6.) Volterra's proposed amendment relies on these documents and is not limited to the October 30, 2020 specification. (*Id.* at Ex. R.)

Volterra's proposed amendment also relies on a host of other newly revealed details. For example, Volterra identifies ██████████████████████

5



████ to directly infringe the '408 and '955 Patents by ████ ████ (*id.* at Ex. R at 12, 19) and how MPS' ████ ████ (*id.* at Ex. R. at 8-9).

MPS' production delays and inconsistent answers concerning the Nvidia Power Solution prevented Volterra from amending its contentions earlier.  As MPS itself points out, "the Asserted Patents include detailed structural and operational claim limitations related to coupled inductors" and MPS has challenged Volterra's identification of those limitations by filing multiple motions to dismiss. (Opp. at 15.)  Volterra did not possess the information it now cites for those limitations prior to MPS' April and May 2021 productions.  And the information MPS did provide kept changing, with MPS first representing that certain documents and parts related to the Nvidia Power Solution only to then reverse course and state its representations were incorrect. (D.I. 166-1 at Exs. G, J.)

### 3.     MPS Misrepresents Volterra's ████



MPS misrepresents the contents of the ████. MPS incorrectly asserts that ████ (Opp. at 13.)  But ████

6



▇▇▇ (D.I. 178-1 at Ex. D at MAXIM_00011579.) And to ensure there was no confusion, Volterra elaborated that nothing in ▇▇▇ ▇▇▇ (*Id.*)

MPS also wrongly asserts that Volterra's case "hangs on a thread and [it] is left with no choice but to ▇▇▇ ▇▇▇ (Opp. at 14.) Volterra never agreed ▇▇▇ ▇▇▇—it only agreed ▇▇▇ ▇▇▇. (D.I. 178-1 at Ex. D at MAXIM_00011579.) Indeed, ▇▇▇ ▇▇▇ (*Id.* (emphasis added).)

### B. MPS Faces No Prejudice

MPS fails to identify any legitimate prejudice from Volterra's amendment. Instead, MPS alleges that "Volterra's late attempt to expand this case contradicts its representations to the Court and is meant to prevent MPS from adequately responding." (Opp. at 17.) Not so. Volterra's proposed amendment is entirely consistent with its representations to the Court, including counsel's specific

comments in the September 10, 2020 Scheduling Conference regarding "customer specific" versions of the accused products and the inclusion of "substantially similar products" in the scope of Accused Products. (D.I. 166-1 at Ex. Q at 15:17-16:2.) And even ***MPS described the Nvidia Power Solution as an Accused Product as early as December 23, 2020***. (D.I. 166-1 at Ex. A ███████████

███████████████████████████████████

███████████████████████████████████.)

The record shows that if anyone attempted "to gain a tactical advantage regarding the scope of [the] case," it was MPS—not Volterra. (Opp. at 3; *see also id.* at 17.) MPS moved to disqualify Volterra's counsel repeatedly, moved to strike Volterra's original Accused Product definition, and then offered to retract both motions if Volterra limited its accusations to "substantially similar products":

> Maybe the way to get around this so we can move forward is to say **the case is limited to the 48 volt to one volt power solution and substantially similar products with a different name**, . . . we give them the opportunity to be sure this is the only product we have, and **if there are others that are substantially similar, fine, they get discovery on that, too. Just because they're a different name, we'll agree with that**.

(D.I. 166-1 at Ex. Q at 14:11-15:2 (emphasis added).) Volterra agreed to MPS' suggestion but made clear that customer-specific power solutions were still Accused Products:

8

> That's really all we're seeking here, is the product that's in the complaint, and those that are essentially similar. **If it's the same architecture, the same design, that is the same universe of products and that's what we're seeking**. I think Mr. Steinberg correctly identified our concern, is that **these things may have different names and they may be somewhat customized for each customer**.

(*Id.* at Ex. Q at 15:17-16:2 (emphasis added).) MPS thus cannot feign surprise that Volterra's amended contentions target the customer-specific Nvidia Power Solution, which is a substantially similar product.

MPS' own document production and correspondence confirms the Nvidia Power Solution is a substantially similar product. Both the APEC Power Solution and the Nvidia Power Solution are 48-volt-to-1-volt power converters that use coupled inductors and MPS' ████████ chips. (Ex. X at U2-U3, UB1-UB8; D.I. 166-1 at Exs. P, R at 2.) The APEC Power Solution uses MPS' ████████ while the Nvidia Power Solution uses the ████████, but MPS admitted ████████████████████████████. (D.I. 166-6 at Ex. J at 3 ████████████████████████████████████████████████████████████████████████.)

MPS' Opposition also suggests that the APEC Power Solution and the Nvidia Power Solution include the same model of coupled inductor. MPS admits the ████████ coupled inductor is "used in the NVIDIA Power

9

Solution." (Opp. at 9 (citing D.I. 178-1 at Ex. J).) This is the only ▇▇▇▇ ▇▇▇▇ that MPS disclosed as of its deadline to produce "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality." (D.I. 69 at ¶ 6.) And the assembly drawing for the APEC Power Solution calls for ▇▇▇▇▇▇▇▇. (Ex. X at L2-L5.)

The use of the same coupled inductor further undercuts MPS' alleged prejudice regarding claim construction. (Opp. at 4, n.3, 17.) MPS ignores the fact that it did not produce the documents Volterra's amendment relies on until April and May 2021—in the midst of the claim construction process. MPS also does not explain why it failed to identify any such claim construction issues in its sur-reply brief, which it served on June 11, 2021—14 days *after* Volterra served its amended infringement contentions. The use of the same coupled inductor suggests one explanation—no such claim construction issues exist. Indeed, how could they when both power solutions are substantially similar products. And in any event, "[i]t is well settled that claims may not be construed by reference to the accused device." *Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002).

### III. CONCLUSION

Volterra respectfully requests that the Court grant its motion for leave to serve Amended Infringement Contentions.

Dated:  July 8, 2021                    FISH & RICHARDSON P.C.

By: */s/ Robert M. Oakes*
   Robert M. Oakes (#5217)
   222 Delaware Avenue, 17th Floor
   P.O. Box 1114
   Wilmington, DE 19899
   Telephone:  (302) 652-5070
   oakes@fr.com

   David M. Barkan
   500 Arguello Street, Suite 500
   Redwood City, CA 94063
   Tel:  (650) 839-5070
   barkan@fr.com

*Counsel for Plaintiff Volterra Semiconductor Inc.*

11

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER REGARDING BRIEFING

I hereby certify that this brief complies with the type, font, and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases entered on November 6, 2019. The word-processing system used to prepare the attached motion identifies the word count as 2,387 words.

                                            */s/ Robert M. Oakes*
                                              Robert M. Oakes (#5217)

## CERTIFICATE OF SERVICE

I, Robert M. Oakes, hereby certify that on July 8, 2021, the foregoing document was served on all counsel of record via electronic mail.

FISH & RICHARDSON P.C.

By: */s/ Robert M. Oakes*
Robert M. Oakes (#5217)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
oakes@fr.com

David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070
barkan@fr.com

***COUNSEL FOR PLAINTIFF***
***VOLTERRA SEMICONDUCTOR LLC***