# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR LLC,<br><br>Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC.,<br><br>Defendant. | PUBLIC VERSION<br><br>C.A. No. 19-2240-CFC-SRF<br><br>█████████████ |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (NO. 2) OF NO INDUCED OR WILLFUL INFRINGEMENT FOR THE '408 AND '955 PATENTS**

FISH & RICHARDSON PC
Robert M. Oakes (#5217)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Tel: (302) 652-5070
oakes@fr.com

David M. Barkan
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel:  (650) 839-5070
barkan@fr.com

Dated:  December 17, 2021

*Counsel for Plaintiff Volterra Semiconductor LLC*

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ............................................. 1

II. SUMMARY OF THE ARGUMENT ............................................................. 1

III. STATEMENT OF FACTS ............................................................................ 1

IV. LEGAL STANDARDS ................................................................................. 5

V. ARGUMENT ................................................................................................. 6

    A. A Reasonable Juror Could Conclude that MPS Had Actual Pre-suit Knowledge of the '408 and '955 Patents. ......................................6

    B. A Reasonable Juror Could Conclude that MPS Had Constructive Pre-suit Knowledge of the '408 and '955 Patents.........11

    C. MPS Also Knew It Infringed the '408 and '955 Patents....................13

VI. CONCLUSION ...........................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*bioMérieux, S.A. v. Hologic, Inc.*,
  No. 18-21-LPS, 2020 U.S. Dist. LEXIS 25318 (D. Del. Feb. 7,
  2020) ............................................................................................................................5

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  807 F.3d 1283 (Fed. Cir. 2015) ....................................................................................8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  986 F. Supp. 2d 574 (W.D. Pa. 2013) ........................................................................11

*Carrier Corp. v. Goodman Glob.*
  64 F. Supp. 3d 602 (D. Del. 2014) .............................................................................12

*Commil USA, LLC v. Cisco Sys.*,
  575 U.S. 632 (2015).....................................................................................................6

*GlaxoSmithKline LLC v. Glenmark Pharm., Inc.*,
  Civil Action No. 14-877-LPS-CJB, 2017 U.S. Dist. LEXIS 82534
  (D. Del. May 23, 2017) ................................................................................................5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...................................................................................................11

*Helios Software, LLC v. Spectorsoft Corp.*,
  No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379 at*39-40 (D. Del.
  Sep. 18, 2014) ............................................................................................................10

*Hologic, Inc. v. Minerva Surgical, Inc.*,
  325 F. Supp. 3d 507 (D. Del. 2018) .............................................................................9

*HSM Portfolio LLC v. Elpida Memory, Inc.*,
  160 F. Supp. 3d 708 (D. Del. 2016) ...........................................................................14

*Kaneka Corp. v. SKC Kolon PI, Inc.*
  198 F. Supp. 3d 1089 (C.D. Cal. 2016) ...................................................................7, 8

*Longitude Licensing v. Apple Inc.*
   No. C -14-04275-EDL, 2015 U.S. Dist. LEXIS 32066 (N.D. Cal.
   Mar. 13, 2015) ........................................................................................................9

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) ..............................................................................6

*Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*
   396 F. Supp. 3d 323 (S.D.N.Y. 2019) ....................................................................9

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
   330 F. Supp. 3d 574 (D. Mass. 2018) ................................................................6, 8

*Suprema, Inc. v. ITC*,
   626 F. App'x 273 (Fed. Cir. 2015) .......................................................................12

*Tarkus Imaging, Inc. v. Adobe Sys.*,
   No. 10-63-LPS, 2012 U.S. Dist. LEXIS 82477 (D. Del. June 14,
   2012) .....................................................................................................................12

*Viatech Tech. Inc. v. Microsoft Corp.*,
   No. 14-cv-1226 (RGA), 2017 U.S. Dist. LEXIS 89596 (D. Del.
   June 12, 2017) ......................................................................................................13

I.      **NATURE AND STAGE OF PROCEEDINGS**

MPS moved for summary judgment of no knowledge of the '408 and '955 Patents, and thus no induced or willful infringement. D.I. 274.

II.     **SUMMARY OF THE ARGUMENT**

The factual record is replete with admissible evidence from which a jury could conclude that MPS had pre-suit knowledge of the '408 and '955 Patents.

III.    **STATEMENT OF FACTS**

On April 22, 2005, MPS employee Dr. Jinghai Zhou submitted his PhD dissertation titled "High Frequency, High Current Density Voltage Regulators." SOF at ¶21. Dr. Zhou's dissertation cited to the '986 Patent and included a figure copied directly from a paper authored by the inventors of the '408 and '955 Patents. *Id.* Significantly, the Volterra paper made clear that this figure was taken from a pending patent application—the parent application that later produced the '955 and '408 Patents. *Id.*



Figure 4.15 A scalable multi-phase surface mount coupling inductor structure proposed by Volterra in [77]

[77] Jieli Li, Schultz, A., Stratakos, A., Sullivan, C.R., "Using Coupled Inductors to Enhance Transient Performance of Multi-Phase Buck Converters," APEC 2004. Seventeenth Annual IEEE, Volume: 2, 10-14

*Id.* at Ex. 4.

1



Figure 1. Illustration of scalable multi-phase surface mount coupled inductor [5], with one copper winding around the H-core in each phase

[5] Jieli Li, Angel Gentchev and C. R. Sullivan, "Method for making magnetic components with N-phase coupling, and related inductor structures", U. S. Patent, pending, Volterra Semiconductor Corp.

*Id.* at Ex. 5.

Dr. Zhou's dissertation required four years of reading papers and their cited references. *Id.* at ¶22. Dr. Zhou expected his younger self to have investigated the origins of the figures cited in his dissertation because the citations were important. *Id.* And after Dr. Zhou published his dissertation, he discussed Volterra's patents with third parties ▮▮▮▮▮▮▮▮▮▮▮—specifically in connection with MPS's work on the Accused Products. *Id.* at ¶23.

Dr. Zhou is currently the Vice President of Cloud Computing at MPS and previously held the positions of Senior Director of Cloud Solutions (2019-21) and Director of Cloud Solutions (2015-19). *Id.* at ¶24. Dr. Zhou was responsible for developing MPS's ▮▮▮▮▮▮▮▮, which was included in the Nvidia Accused Product. *Id.* at ¶25.

2

Former MPS employee Rohan Samsi similarly became aware of Volterra's coupled inductor patents from reading articles and having discussions with customers. *Id.* at ¶26. Indeed, "[t]here were requests from multiple people … [saying] coupled inductors, you know that there are patents from Volterra." *Id.* These concerns came through salespeople when MPS was "proposing some coupled inductor solutions." *Id.* "[B]ased on [Mr. Samsi's] understanding, Volterra's patents cover a certain subset of coupled inductors and their use, and not just coupled inductors at large." *Id.*

In March 2018, MPS reached out to ▇ "looking for [a] coupled inductor" for the Accused Products, and ▇ responded that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at ¶27. Afterwards, as MPS's experts explained, "MPS employees discussed the subject of Volterra's patents on June 27, 2018, in a face-to-face meeting with employees of ▇▇▇." *Id.* at ¶28.

On December 11, 2018, ▇ likewise responded to MPS's coupled inductor request by telling MPS that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ of the '986 patent. *Id.* at ¶29. And like ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in a subsequent meeting with MPS. *Id.* at ¶30. Mr. Samsi was not surprised by this because "every time the word 'coupled inductor,' … [came up] in the past 10-plus years,

3

it's been coupled inductor and then the next is, oh, Volterra's got some patents on coupled inductors." *Id.*

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████

In response to ██████ email, Dr. Zhou asked MPS's in-house counsel, Roland Tso, to investigate the '986 patent, ████████████████████████ *Id.* at ¶33. Mr. Tso "looked at the cited references" and used Google to conduct "an online search, searching for relevant keywords," including "coupled inductors." *Id.* Mr. Tso "surveyed a bunch" of Volterra's patents and concluded that "MPS had no concerns with any of Volterra's coupled inductor patents." *Id.* at ¶34. Moreover, the "Cited By" section of the Google Patents page for the '986 Patent lists other Volterra coupled inductor patents, including the parent of the '408 and '955 Patents:

| Cited By (210) | | | | |
|---|---|---|---|---|
| Publication number | Priority date | Publication date | Assignee | Title |
| US7352269B2 | 2002-12-13 | 2008-04-01 | Volterra Semiconductor Corporation | Method for making magnetic components with N-phase coupling, and related inductor structures |

*Id.* at ¶35.

During the design of the Nvidia Accused Product, Nvidia's Dr. Abou-Alfotouh asked MPS's Dawson Huang ████████████████████████████

4

███████████████████████████████████████

█████████████████████████████ referring to Volterra's or Maxim's patents. *Id.* at ¶36. Dr. Abou-Alfotouh reached out to Maxim regarding Volterra's coupled inductor patents and received a list of "all the patents on Coupled Inductor IP," including the '408 and '955 patents, on November 12, 2018. *Id.* at ¶37. On December 12, 2018, Dr. Abou-Alfotouh told MPS that he was ██████████ about "██████████████████████" *Id.* at ¶38.

In June 2019, ███ similarly raised concerns about Volterra's coupled inductor patents, and MPS responded that the use of coupled inductors was "only patented for certain characteristics, and some patent is expiring." *Id.* at ¶39. The '986 Patent expired on March 22, 2021, the '955 Patent expires on December 13, 2022, and the '408 Patent expires on April 22, 2023. *Id.* at ¶40.

## IV. LEGAL STANDARDS

"To prove willful infringement, a patentee must prove, by a preponderance of the evidence, that an accused infringer took actions, with knowledge of the patent, and with the intent of infringing the patent." *bioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2020 U.S. Dist. LEXIS 25318 at *30-31 (D. Del. Feb. 7, 2020). "Induced infringement is a question of fact that must be proved by the patentee by a preponderance of the evidence." *GlaxoSmithKline LLC v. Glenmark Pharm., Inc.*, Civil Action No. 14-877-LPS-CJB, 2017 U.S. Dist. LEXIS 82534 at

*25 (D. Del. May 23, 2017). Induced infringement "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632 (2015)

V. **ARGUMENT**

   A. **A Reasonable Juror Could Conclude that MPS Had Actual Pre-suit Knowledge of the '408 and '955 Patents.**

MPS ignores many facts to assert that "[t]here is no evidence with which Volterra can establish pre-suit knowledge of either the '408 or the '955 patents." D.I. 274 at 9. To the contrary, a reasonable juror could find that MPS possessed this knowledge from senior executive Dr. Zhou's knowledge of the patent application that became the '408 and '955 patents, or from the concerns that ▮ and ▮ expressed to MPS about Volterra's coupled inductor patents, or from the concerns that ▮ expressed to Volterra, or from the information that Mr. Tso encountered as part of his ▮ work on the '986 patent. SOF at ¶¶21-40. Any one of these facts, each of which is supported by admissible evidence, is sufficient for a jury to reasonably infer that MPS had pre-suit knowledge of the '408 and '955 Patents.

Indeed, MPS appears to mistakenly demand direct evidence of its knowledge, but circumstantial evidence is more than sufficient. *See Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) ("A patentee may prove … intent through circumstantial evidence"); *SiOnyx, LLC*

6

*v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018) ("[I]t appears that there is no bright-line rule as to what level of knowledge is sufficient. Like any question of intent, it must be inferred from all the evidence and circumstantial evidence can suffice.").

Other courts have found sufficient evidence in scenarios similar to this. In *Kaneka Corp. v. SKC Kolon PI, Inc.*, an employee of the defendant conducted searches for patents regarding a specific technology, including searches for the plaintiff's patents, but the searches took place twelve or thirteen years in the past while the employee worked for his prior employer. 198 F. Supp. 3d 1089, 1107 (C.D. Cal. 2016). Based on these facts, the court found that it was reasonable for the jury to infer knowledge of the asserted patents, which concerned the same technology, and also found the knowledge could be imputed to the defendant. *Id.* at 1108.

Here, the MPS employee in charge of the Nvidia Accused Product and its controller's development—Dr. Zhou—researched coupled inductors for his 2005 dissertation and analyzed Volterra's papers and its '986 patent, which shares an inventor with and is incorporated into the '408 and '955 patents. SOF at ¶¶ 21-25, 41. The dissertation also included a figure from the parent of the '408 and '955 patents, and Dr. Zhou testified that he would have expected his younger self to have investigated the origins of the cited figures. *Id.* at ¶¶21-22. Like the

7

employee's search in *Kaneka*, Dr. Zhou's research and analysis allows a reasonable juror to infer that he was aware of the '408 and '995 Patents and that this knowledge could be imputed to MPS.

MPS incorrectly asserts that Dr. Zhou "could not possibly have knowledge of [the patents]" because the "dissertation predates the '408 and '955 patents." D.I. 274 at 13. But the dissertation does not predate the publication of the parent patent application. SOF at ¶42; *see SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574 (D. Mass. 2018) (finding facts sufficient to support knowledge where the defendant cited "to two pending patent applications … that are great-grandparent and great-great-grandparent applications of the asserted '467 patent"). Moreover, Dr. Zhou's dissertation analyzed the '986 Patent, Volterra's papers, and the figure from the parent of the '408 and '955 Patents, and he subsequently discussed Volterra's patents with multiple third parties, including ▬,[1] which evinces his continued familiarity with Volterra's well-known coupled inductor patent portfolio. SOF at ¶¶21-23; *see Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1300 (Fed. Cir. 2015) (sufficient evidence supported knowledge where employee analyzed papers teaching the same material as the patents).

---

[1] MPS also told ▬ that Volterra "only patented for certain characteristics [of coupled inductors], and some patent is expiring," which suggests MPS was referring to the soon-to-expire Asserted Patents. SOF at ¶39.

8

MPS also incorrectly argues that its knowledge of "the earlier '986 patent… is woefully insufficient to meet the required knowledge standards" for the '408 and '955 Patents.  D.I. 274 at 10.  MPS cites to *Longitude Licensing v. Apple Inc.*, but that case granted a motion to dismiss where the plaintiff "simply allege[d] that Apple 'had knowledge of the Patents-in-Suit as part of the SanDisk patent portfolio' prior to the lawsuit."  No. C -14-04275-EDL, 2015 U.S. Dist. LEXIS 32066 at *7 (N.D. Cal. Mar. 13, 2015).  *Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd*. is more on point, as the court there rejected defendant's arguments that "a finding of willfulness cannot be based on conduct prior to … when the '689 Patent issued" and "that its knowledge of the '756 Patent cannot support an inference that it knew of the '689 Patent."  396 F. Supp. 3d 323, 334-35 (S.D.N.Y. 2019).  The court found the jury could reasonably infer that the defendant had pre-suit knowledge of the '689 Patent because the plaintiff established the "reasonable possibility that [defendant] might have learned of the application that would become the '689 Patent" and because the '756 and '689 Patents were more than "somewhat similar."  *Id*. (citing *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 n.4 (Fed. Cir. 2018)); *see also Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 534 (D. Del. 2018) (denying MSJ because "[t]here is no per se rule that a finding of willful infringement cannot stand

9

whenever manufacture of an accused device begins prior to the issuance of a patent, instead courts must look to the totality of the circumstances").

And even if the above facts were insufficient to reasonably infer pre-suit knowledge of the '408 and '955 patents, the following corroborating evidence provides further bases for such a finding:

- After MPS contacted ▮▮▮ regarding a coupled inductor to be used in the accused products, "MPS employees discussed the subject of Volterra's patents on June 27, 2018, in a face-to-face meeting" (SOF at ¶¶27-28);

- On October 29, 2018, MPS contacted ▮▮▮ about a coupled inductor to be included in the accused products, and ▮▮▮ informed MPS that its request might infringe the '986 Patent and also "mentioned that there were some coupled inductor patents" of Volterra (*Id.* at ¶¶29-30);

- After ▮▮▮ learned of ▮▮▮ communications, it reached out to Volterra, who sent ▮▮▮ a list that included the '986, '408, and '955 Patents on November 12, 2018, leading ▮▮▮ to tell MPS it was ▮▮▮ about ▮▮▮ on December 12, 2018 (*Id.* at ¶¶37-38);[2]

- MPS's in-house counsel "looked at the cited references" of the '986 Patent and performed a Google search for the word "coupled inductors," which would have revealed Volterra's work with coupled inductors, and the "Cited By" section of the Google Patents page for the '986 Patent lists other Volterra coupled inductor patents, including the parent of the '408 and '955 Patents (*Id.* at ¶¶33, 35);

---

[2] *See Helios Software, LLC v. Spectorsoft Corp.*, No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379 at*39-40 (D. Del. Sep. 18, 2014) (finding plaintiff's patent disclosure and other circumstantial evidence created a disputed fact as to defendant's knowledge).

10

- Afterwards, Mr. Tso told Mr. Samsi that he ▆▆▆▆▆ of Volterra's coupled inductor patents and concluded that ▆▆▆▆▆ (*Id.* at ¶34).

### B. A Reasonable Juror Could Conclude that MPS Had Constructive Pre-suit Knowledge of the '408 and '955 Patents.

At the very least, the evidence shows that MPS knew there was a high probability that the '408 and '955 Patents existed. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 756 (2011). MPS admits it knew of the '986 Patent, and MPS's in-house counsel examined its cited references and related patents, which would have revealed the '408 and '955 Patents' parent. SOF at ¶¶33-35. Volterra's coupled inductor patent portfolio is also well-known by both the industry and MPS's employees, and several third parties warned MPS of Volterra's patents. *Id.* at ¶¶21-39.

While the record evidence shows that MPS *did* know of the '408 and '955 patents, if MPS is found to have not known of those patents (or those specific patent numbers), it is only because MPS also took deliberate actions to avoid learning the details related to the patents. *See Glob.-Tech*, 563 U.S. at 756. While MPS had a ▆▆▆▆▆, and MPS deliberately ignored ▆▆▆▆▆ when various third parties warned MPS of Volterra's coupled inductor patents. SOF at ¶31; *see Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 986 F. Supp. 2d 574, 612 (W.D. Pa. 2013) (denying MSJ because "[o]nce presented with the patents, … [defendant] never looked at the

patents, never directed others to … , and never contacted Marvell's legal department," which supported willful blindness). Indeed, MPS's employees understood ███████████████████████████████████████ ███████████████████, and MPS's in-house counsel only pursued ████████ ██████ regarding the specific patent that █████ provided a number for. SOF at ¶¶32-33; *see Tarkus Imaging, Inc. v. Adobe Sys.*, No. 10-63-LPS, 2012 U.S. Dist. LEXIS 82477 at *15-16 (D. Del. June 14, 2012) (denying MSJ because "evidence of conversations, meetings, and emails" and "information … available on [USPTO] website" supported willful blindness). Moreover, MPS's in-house counsel analyzed the '986 Patent, which has similarities in content, inventorship, and ownership as the '408 and '955 Patents, and searched Google for "coupled inductors," which would have revealed Volterra's coupled inductor work. SOF at ¶¶33-35; *see Suprema, Inc. v. ITC*, 626 F. App'x 273, 281-82 (Fed. Cir. 2015) (affirming willful blindness where defendant researched other plaintiff patents with "similarities in content, inventorship, and ownership" and failed to obtain an opinion-of-counsel that would have uncovered the asserted patent).[3]

    The foregoing issues of fact require MPS's motion to be denied. *See Carrier Corp. v. Goodman Glob.*, Inc., 64 F. Supp. 3d 602, 614 (D. Del. 2014)

---

[3] MPS misquotes Appellant's argument in this case as if it were the Federal Circuit's holding. D.I. 274 at 13.

(finding willful blindness "presents issues of fact not appropriately addressed on summary judgment").

### C.     MPS Also Knew It Infringed the '408 and '955 Patents.

MPS does not dispute that if the evidence is sufficient to show knowledge of the Asserted Patents then it also sufficient to show knowledge of infringement. Instead, MPS spends its brief arguing that the facts do not support knowledge of the patents at all. *See Viatech Tech. Inc. v. Microsoft Corp.*, No. 14-cv-1226 (RGA), 2017 U.S. Dist. LEXIS 89596 at *21 (D. Del. June 12, 2017) ("arguments [] not raised in the opening brief [] were waived"). And the evidence shows that MPS was informed of both the patents and the corresponding infringement.

MPS knew that it infringed the '408 and '955 Patents because multiple third parties told MPS about Volterra's patents when MPS designed the Accused Products. For example, when MPS contacted ■ regarding a coupled inductor for the Accused Products, ■ indicated that the requested design would infringe the '986 Patent. SOF at ¶29. ■ also discussed Volterra's other coupled inductor patents with MPS. *Id.* at ¶30. And while the '986 Patent concerns a "Voltage converter with coupled inductive windings," the '408 and '955 Patents claim coupled inductors themselves. *Id.* at ¶41.

MPS's emails with ■ also show knowledge of infringement. ■ warned MPS about Volterra's 2-phase coupled inductor patents, but MPS forged

13

ahead and requested ▮ to manufacture 2-phase coupled inductors based on MPS's "detail specs." *Id.* at ¶27. Dr. Zhou—the MPS employee most familiar with the Asserted Patents—was involved in the Nvidia Power Solution design but did not attempt to avoid the patents. *Id.* at ¶¶21-25. MPS thus knew that the coupled inductors infringed the '408 and '955 Patents. *See also HSM Portfolio LLC v. Elpida Memory, Inc.*, 160 F. Supp. 3d 708 (D. Del. 2016) ("From this knowledge, a reasonable juror could conclude that Micron knew it was inducing [infringement]").

MPS's ▮ further support its knowledge of infringement. MPS's in-house counsel ▮ regarding the '986 Patent, but failed to ▮ for any of the Asserted Patents. SOF at ¶33. Moreover, MPS's counsel ▮ for all three Asserted Patents, but MPS never obtained any ▮ ▮, indicating that MPS has never held any meaningful belief that it did not infringe. *Id.* at ¶43.

## VI.   CONCLUSION

For the reasons set forth above, MPS's Motion should be denied.

Dated:  December 17, 2021        FISH & RICHARDSON P.C.

By: */s/ Robert M. Oakes*
    Robert M. Oakes (#5217)
    222 Delaware Avenue, 17th Floor
    P.O. Box 1114
    Wilmington, DE 19899
    Telephone:  (302) 652-5070
    oakes@fr.com

    David M. Barkan
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Tel:  (650) 839-5070
    barkan@fr.com

*Counsel for Plaintiff Volterra Semiconductor Inc.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that **Volterra's Answering Brief In Opposition to Monolithic Power Systems, Inc.'s Motion For Summary Judgment (No. 2) of No Induced or Willful Infringement for the '408 and '955 Patents** complies with the typeface requirements and word limits of Paragraph 20(c) of the Scheduling Order entered in this case (D.I. 69). This brief has been prepared in 14-Point Times New Roman and contains 3,077 words, excluding the cover page, table of contents, table of authorities, signature block, certificate of service, and this certificate of compliance.  Plaintiff's Opposition to Defendant's case dispositive motions and *Daubert* motions combined contain 12,500 words or less.

Dated: December 17, 2021                     */s/ Robert M. Oakes*
                                             Robert M. Oakes (#5217)