IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VOLTERRA SEMICONDUCTOR LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| MONOLITHIC POWER SYSTEMS, INC., | ) ) ) ) |
| Defendant. | ) ) |

**Redacted - Public Version**

C.A. No. 19-2240-CFC-SRF

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF THEIR *DAUBERT*
MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES
<u>EXPERT, DEFOREST MCDUFF, PH.D.</u>**

OF COUNSEL:
Bob Steinberg
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500

Matthew J. Moore
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

Surendra K. Ravula
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-6555

R. Benjamin Cassady
Forrest A. Jones
Chen Zang
Bradford C. Schulz
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: January 7, 2022

## TABLE OF CONTENTS

A.  Dr. McDuff's Apportionment Factor is Unreliable ..............................1

    1.  Maxim's VR14 Solution Is Not Tied To The Asserted Patents ........................................................................................1

    2.  The VR14 Price Analysis is Unreliable ......................................4

B.  Dr. McDuff's Royalty Base Includes Non-Infringing Sales.................6

C.  Dr. McDuff's Comparable License Analysis is Unreliable ..................7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Enzo Biochem., Inc. v. Gen-Probe Inc.*,
    424 F.3d 1276 (Fed. Cir. 2005) ..........................................................................3

**Index of Exhibits**

| Exhibit | Description |
|---|---|
| Ex. A | Expert Report of DeForest McDuff, Ph.D. (Sept. 17, 2021) |
| Ex. B | Reply Expert Report of DeForest McDuff, Ph.D. (Oct. 8, 2021) |
| Ex. C | Excerpt of MAXIM_00014151 |
| Ex. D | Excerpts from Transcript of DeForest McDuff, Ph.D.'s Deposition (Oct. 21, 2021) |
| Ex. E | Excerpts from Transcript of Alberto Viviani's Deposition (Oct. 19, 2021) |
| Ex. F | Excerpt from Transcript of Ahmed Abou-Alfotouh's Deposition (Sept. 9, 2021) |
| Ex. G | Excerpt from Transcript of Jeffrey Koch's Deposition (Sept. 10, 2021) |
| Ex. H | Volterra's Expert Disclosures |
| Ex. I | Excerpt from Volterra's Second Supplemental Responses to MPS's First Set of Interrogatories (Nos. 1-6) |
| Ex. J | Volterra International and Volterra Asia License Agreement (MAXIM_00014568) |
| Ex. K | MPS International and AIT Reseller Agreement (MPS_DE-00011034) |
| Ex. L | Excerpts from Transcript of Alberto Viviani's Deposition (Oct. 19, 2021) |

MPS' Motion should be granted because Volterra fails to carry its burden to demonstrate that Dr. McDuff's damages opinions are reliable.

### A. Dr. McDuff's Apportionment Factor is Unreliable

#### 1. Maxim's VR14 Solution Is Not Tied To The Asserted Patents

Volterra does not dispute that Dr. McDuff's "technology apportionment factor" hinges on the premise that Maxim's VR14 Solution practices the Asserted Patents. Volterra also does not dispute that its technical expert, Dr. Dickens, did not perform any analysis on Maxim's VR14 Solution or compare it to the claims of the Asserted Patents. These undisputed facts render Dr. McDuff's "technology apportionment factor" unreliable. This is not an issue of weight as Volterra claims; there is simply no evidence in the record that Maxim's VR14 Solution practices the Asserted Patents. Volterra nevertheless claims that "Dr. McDuff relied on substantial evidence that the Maxim VR14 Solution practices [the] patented technology" for three reasons. D.I. 308 at 7. All fail.

*First*, Volterra asserts that Dr. McDuff relied on his interview with Volterra's technical expert, Dr. Dickens, to support his assumption that Maxim's VR14 Solution practices the Asserted Patents. D.I. 308 at 7. But Dr. McDuff testified that his assumption that Maxim's VR14 Solution practices the Asserted Patents is based on Mr. Viviani, not Dr. Dickens. Ex. D at 174:14-177:19. And the quote that Volterra cites from Dr. McDuff's expert report about his conversations with Dr.

1

Dickens does not mention, identify, or reference VR14 at all. *Id.* at 7 (quoting D.I. 308, Ex. 1 at ¶ 73, n. 153). In fact, "VR14" does not appear anywhere in Dr. Dickens' expert report.

Volterra's reliance on a conversation with Dr. Dickens' about the Asserted Patents as "foundational" also fails because it is not in Dr. Dickens' expert report and does not say anything about VR14; the mere fact Volterra's lawyers claim that the Asserted Patents are "foundational" (which could mean any number of different things) is insufficient to establish that Maxim's VR14 Solution practices them.

***Second***, Volterra asserts that Dr. McDuff relied on "his interview with Mr. Viviani"—a fact witness—for his assumption that Maxim's VR14 Solution practices the Asserted Patents. D.I. 308 at 7. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

Volterra attempts to sidestep this deficiency by focusing on Mr. Viviani's background and experiences, asserting that he "is a trained engineer"; "has worked for Maxim for approximately 11 years"; "has worked for other companies within the field of integrated circuits"; and "has specialized knowledge with respect to Maxim's VR14 Solution." D.I. 308 at 8. But none of Mr. Viviani's experience is relevant to whether he compared the claims of the Asserted Patents to Maxim's

2

VR14 solution (he did not). Nor does it mean that Mr. Viviani is qualified to do so. Mr. Viviani's vague and general testimony that "the patents cover the use of coupled inductors inside multi-phase voltage regulators" says nothing about the *claims* of the Asserted Patents or whether any product (let alone Maxim's VR14 Solution) practices those claims.

**Third**, Volterra asserts that the "VR14 Price Analysis supports the conclusion that the Maxim VR14 Solution practices the patented technology" and points to various price and cost comparisons from that document. D.I. 308 at 9. But pricing and cost comparisons do not have any bearing on whether Maxim's VR14 Solution practices the claims of the Asserted Patents.

Volterra also asserts that Maxim's webpage "describes the Maxim VR14 Solution as relating to 'Boosted Coupled Inductors' and refers to such technology as 'patented technology' of Volterra." D.I. 308 at 9-10. This is also irrelevant. The mere fact that Maxim describes "Boosted Coupled Inductors" as "patented technology" is not evidence that Maxim's VR14 Solution practices the claims of the Asserted Patents (or any of Volterra's other 150 patents), none of which are identified.

Volterra's vague suggestion that Dr. McDuff somehow divined that Maxim's VR14 Solution practices the Asserted Patents through some (undisclosed) amalgamation of Dr. Dickens, Mr. Viviani, and Maxim's website is also incorrect.

3

D.I. 308 at 10.  This is pure attorney-argument, not evidence.  *Enzo Biochem., Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005).  It contravenes Dr. McDuff's testimony that he relied on the testimony of Mr. Viviani alone to support his assumption that Maxim's VR14 Solution practices the Asserted Patents.  Ex. D at 176:11-177:19.  Regardless, Dr. McDuff is not a technical expert and did not conclude that Maxim's VR14 Solution practices the Asserted Patents based on his own analysis.

### 2. The VR14 Price Analysis is Unreliable

Volterra does not dispute that the VR14 Price Analysis is comprised of price estimates of various components that Dr. McDuff relies on, but never independently verified.  This is dispositive and an independent reason why Dr. McDuff's apportionment opinions are unreliable.  *See* D.I. 280 at 10-11.

Volterra asserts that the VR Price Analysis is "tied to the facts" of this case and suggests that this is enough to show reliability.  But it is undisputed that Volterra produced no technical documents about the VR14 during fact discovery—no datasheets, technical specifications, or physical samples.  Thus, it is not possible to perform any technical comparability of Maxim's VR14 Solution with any of the

4

products in this case.[1]  No record evidence exists to tie Maxim's VR14 Solution to the Asserted Patents.  *See supra* § A.1.

Volterra suggests that the VR14 Price Analysis is reliable because it was "not created for litigation" and reflects analysis that is "routinely performed by companies within the industry."  D.I. 308 at 11.  This is irrelevant.  Neither argument supports a conclusion that the untested estimates in the VR14 Price Analysis are reliable.  Nor do they address the overwhelming evidence that the pricing estimates contained therein are unreliable—including unrebutted facts that the VR14 CPU and Maxim's VR14 Solution, ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

Finally, Volterra suggests that "the Maxim VR14 Price Analysis is used properly" because Dr. McDuff used it to "apportion *down* the royalty."  D.I. 308 at 11.  This is irrelevant as well.  Volterra cites no case law (as there is none) that holds

---

[1] ███████████████████████████████████████████████████████████████████████████████████████████████████.

an expert may rely on *un*reliable evidence if it is used to adjust down damages amounts. *See* D.I. 280 at 10-11.

### B. Dr. McDuff's Royalty Base Includes Non-Infringing Sales

Volterra does not dispute that Dr. McDuff's royalty base includes sales of MPS components that are manufactured abroad, sold abroad, and shipped to foreign locations and that it may only recover royalties for alleged acts of infringement occurring within the United States. Ex. A ¶ 17. Dr. McDuff cannot justify his failure to limit his damages analysis to domestic activities.

Dr. McDuff claims that he provided "further data" for the jury to allocate damages to "direct infringement by MPS in the United States only." D.I. 308 at 13-14. This concedes that Dr. McDuff's damages theory is not limited to direct infringement in the U.S., which is error. Moreover, Dr. McDuff does not opine on how the "further data" referenced in Volterra's opposition (D.I. 308 at 14) could be used to apportion his damages numbers to the infringing acts in the United States.[2] Merely stating that the "finder of fact could reasonably award the full apportioned amount" of damages does not mean that the jury can award extraterritorial damages, contradicting Federal Circuit case law. *See* D.I. 280 at 12-13.

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A ¶ 102-103. Neither Dr. McDuff or anyone else explains how ▮▮▮▮▮▮▮▮▮▮▮▮ have any bearing on the facts of this case, let alone tell the jury how to use this data to determine only infringing activities.

6

### C. Dr. McDuff's Comparable License Analysis is Unreliable

Volterra claims that the ████████ license is technically and economically comparable because it includes the '986 patent.  D.I. 308 at 15-16.  This is factually wrong. ████████████████████████████████████████████████████ Ex. J at 569-70.  By definition, it cannot (and does not) license the '986 patent.  The '986 patent is a U.S. patent with no foreign counterparts and therefore only confers the right to the engage in certain activities *in the United States*.  Volterra also does not dispute that the ████████████████████████████████████ ████████, yet Volterra relies on its company-wide margins, rather than those of the licensing subsidiaries, in an attempt to establish comparability, further confirming the license's *un*reliability.

| | |
|---|---|
| OF COUNSEL:<br>Bob Steinberg<br>LATHAM & WATKINS LLP<br>10250 Constellation Blvd., Suite 1100<br>Los Angeles, CA  90067<br>(424) 653-5500<br><br>Matthew J. Moore<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>(202) 637-2200 | /s/ Nathan R. Hoeschen<br>Karen E. Keller (No. 4489)<br>Andrew E. Russell (No. 5382)<br>Nathan R. Hoeschen (No. 6232)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>arussell@shawekeller.com<br>nhoeschen@shawkeller.com<br>*Attorneys for Defendant* |

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
Reston, VA 20190-5675
(571) 203-2750

Surendra K. Ravula
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-6555

R. Benjamin Cassady
Forrest A. Jones
Chen Zang
Bradford C. Schulz
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Dated: January 7, 2022

8

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 1,543 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables, or the counsel blocks.

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on January 7, 2022, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

Robert M. Oakes
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
(302) 652-5070
rmo@fr.com

Aaron P. Pirouznia
Noel F. Chakkalakal
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
pirouznia@fr.com
chakkalakal@fr.com

David M. Barkan
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070
barkan@fr.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawekeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

10